

Jon Webster (Cal. State Bar No. 138786)
Michael Devin (Cal. State Bar No. 107630)
THE LAW OFFICES OF JON WEBSTER
1985 Bonifacio Street, Suite 102
Concord, CA 94520-2264
Telephone:    (925) 686-8790
Facsimile:    (925) 686-8795

Attorneys for Plaintiff:
COURTNEY GORDON

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY GORDON, an individual, on behalf of herself and those similarly situated,<br><br>          Plaintiff-Petitioner,<br><br>v.<br><br>CITY OF OAKLAND, a Municipal Corporation<br><br>          Defendant-Respondent. | CASE NO. **C08-01543**<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**<br><br>**VIOLATION OF THE FEDERAL LABOR STANDARDS ACT [29 U.S.C. §§ 201 - 219, TO WIT 29 C.F.R. § 531.35]; VIOLATION OF CIVIL RIGHTS [42 U.S.C. §1983]; AND VIOLATIONS OF THE CALIFORNIA LABOR CODE §§ 221, 222, 223, 432.5, 450, 208 AND 2804; CALIFORNIA CIVIL CODE § 1667/1668; AND CALIFORNIA BUS. & PROF. CODE §§ 16600**<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

Plaintiff-Petitioner, COURTNEY GORDON, brings this action against the Defendant-Respondent, CITY OF OAKLAND, (hereinafter "the City") on behalf of herself and all those similarly situated, pursuant to Section 16(b) of the federal Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq*, hereinafter "FLSA"), and alleges as follows:

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §1331: The first and second causes of action present "federal questions," to wit: (a) Does the City 's policy of mandating a police trainee "reimburse" it for police academy costs violate the FLSA, and (b) does this policy create a unconstitutional condition cognizable under Section 1983.

2.    In the First Cause of Action, the Plaintiff alleges a violation of the anti-kickback provision of the FLSA, (29 C.F.R. §531.35). The violation occurs because the City requires -as a condition of employment for the position of Police Officer Trainee (POT)- that candidates agree in advance of their hiring to "reimburse" the City up to $8,000 should the candidate be hired and, after completing training as a POT and being promoted to the position of Police Officer, the candidate resigns from the City anytime within five years thereof. Plaintiff, on behalf of herself and others similarly situated, avers that this policy constitutes a *de facto deduction* in violation of Section 531.35's requirement that the City as an employer under the FLSA pay wages, "free and clear" and "unconditionally." Plaintiff seeks declaratory relief and the recovery of both actually withheld wages and "conditionally paid" wages and requests liquidated damages per Section 16(b) of the FLSA.

3.    In the Second Cause of Action, the Plaintiff avers that the City's reimbursement policy requiring her to either stay employed with the City for a period of five years or be penalized up to $8,000 constitutes an unconstitutional condition; The City is unlawfully hinging governmental employment as a POT on the Plaintiff's waiver of her right to receive wages free and clear and unconditionally, (a nonwaiveable interest under the FLSA), and thus a protected property interest under the Fifth and Fourteenth Amendments. Further, Plaintiff contends that the City's reimbursement scheme violates her First Amendment Right of freedom of association and her right to migrate, resettle, find a new job and start a new life, all fundamental rights guaranteed to her under Article IV, Section 2 of the Privileges and Immunities Clause of the U.S. Constitution.

4.    Finally, this Court has supplemental jurisdiction over the pendent state law claims arising under California Statute pursuant to and consistent with 29 U.S.C. §1367. Each of these claims arise from the same policy, practice and conduct of the City forming the basis of the federal causes of action stated herein and do not present novel issues of state law.

///

///

## SYNOPSIS OF CLAIM

5.     The City continuously recruits U.S. citizens from around the country to fill open positions for Police Officer Trainee. Once a candidate passes an initial written, physical agility and oral examination, the City extends a *"Conditional Offer of Position as a Police Officer Trainee"* ("the Conditional Offer," attached hereto as "Exhibit A") to the candidate. Plaintiff was recruited by the City, successfully competed for the position as a POT, and received the Conditional Offer.  Also, the OPOA, as the collective bargaining unit for both POTs and Police Officers for the City, negotiated a MOU containing Appendix A. In both the Conditional Offer and Appendix A (attached hereto as "Exhibit B,") , the City required the Plaintiff and similarly situated, i.e., candidates applying for a position as a POT to "reimburse" the City up to $8,000 plus collection fees should they leave the City's employment within five years after being promoted from a POT to a Police Officer.

6.     Plaintiff was required to sign the Conditional Offer agreeing to reimburse the City as stated above in order to be hired as a POT. She successfully completed her training at the Oakland Police Academy, and was promoted to the position of Police Officer. Plaintiff quit after approximately eighteen months of employment with the City. As a consequence, the City withheld $1,950.34 from Plaintiff's final paycheck, and presently has notified plaintiff that it is seeking $4,094.29 in unpaid "training costs" and an additional $834.28 in "collection costs."

7.     This complaint seeks a declaration that the "reimbursement policy" based on the Conditional Offer and/or Appendix A of the MOU is void as an unlawful waiver of the FLSA's requirement that the employer pay wages "free and clear" of any claims of the employer as required by 29 C.F.R. §531.35. Secondly, the Plaintiff seeks recovery of withheld wages in the amount of $1,950.34, and the recovery of unpaid wages paid conditionally in the amount of $$4,094.29, (the same amount the City claims Plaintiff owes it in "training reimbursement," plus an additional and equal amount ($6,044.63) as liquidated damages consistent with Section 16(b) of the FLSA.

8.    The complaint further seeks a declaration that the City's policy and practice is in violation of various California Labor, Civil and Business and Professions Codes that also prohibit an employer from the following: (a) Receiving any part of the wages paid its employees, [Lab §221]; Withholding any part of the wages due an employee, [Lab §222]; Paying less than the contractual wages due, [Lab §223]; Creating an unlawful term and condition of employment, [Lab §432.5]; Coercion by employer to make employee buy from employer, [Lab §450]; Obtaining a waiver of indemnification from employee, [Lab §2804]; Engaging in unlawful contract of adhesion, [Civ. §§ 1667/1668]; and Creating a void contract restraining practice of one's trade or profession, [Bus. & Prof. §16600].

9.    This complaint is filed as a collective action as provided by 29 U.S.C.§§ 216(b), 256. The Plaintiff is jointly filing in this court and serving the City with her "Affidavit and Consent of Courtney Gordon to Opt-In to Complaint under the Federal Fair Labor Standards Act Pursuant to 29 U.S.C. §§ 216(b), 256 Filed by Courtney Gordon," ("Plaintiff's Opt-In") simultaneous with the filing and service of this complaint.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10.    In the Fall of 2005, the Plaintiff responded to recruiting efforts of the City for the position of a POT. Plaintiff applied to the City and successfully passed several civil service examinations, including a written test, a physical agility test and an oral interview. On or about November 3, 2005, the Plaintiff received a letter from Lieutenant Michael Johnson of the Oakland Police Department congratulating the Plaintiff on being selected by the City as a POT.

11.    Mr. Johnson stated in this November 3, 2005 letter, that upon "[S]uccessful completion of medical and psychological examinations, the remainder of the background investigation, acceptance of the training reimbursement provisions, and certification of your intention to reside within the City of Oakland's residency zone, a position will be reserved for you in the 156th Recruit Academy." (See, "Exhibit A,"to Plaintiff's Opt-In.)

///

///

12.    Enclosed with Lt. Johnson's letter was a two page document entitled, *"OAKLAND POLICE DEPARTMENT, Conditional Offer of Position as a Police Officer,"* ("the Conditional Offer"). This document stated that the plaintiff, "[M]ay be required to reimburse the City of Oakland for training expenses. Reimbursement would be required in the event [the Plaintiff] voluntarily terminate your employment with the Oakland Police Department, according to the following schedule." Thereafter, the document lists that if the Plaintiff were to quit, "Before the end of year 2 - 80% repayment of $8,000." See, "Exhibit B" to Plaintiff's Opt-In. The City would not negotiate the "reimbursement terms" with the Plaintiff.

13.    In order to gain employment as a POT for the City, Plaintiff executed the Conditional Offer on or about November 5, 2005. Plaintiff successfully completed her psychological, medical and background examinations, agreed to reside in the City's "residency zone," and was hired as a POT on or about November 28, 2005.

14.    In California, no law enforcement agency may employ any individual as a peace officer, i.e., a police officer, without that person having successfully completed a police academy that has been certified by the California Commission on Peace Officer Standards of Training ("POST"). The City owned and operated Oakland Police Academy is such one of many POST certified police academies.

15.    The City directed Plaintiff to attend the Oakland Police Academy. The City, pursuant to its policy, practice and/or custom, did not give the Plaintiff or anyone else the opportunity to attend any other POST certified police academy that may have been less expensive nor did the City offer any option to Plaintiff to avoid the $8,000 reimbursement requirement contained in the Conditional Offer or Appendix A of the MOU.

16.    On or about June 2, 2006, the Plaintiff successfully completed her training as a POT. She was promoted to the position of Police Officer. She served in this position with the City until late January, 2008.

///

17.    On or about January 22, 2008, the Plaintiff resigned from employment with the City as a Police Officer. On or about January 25, 2008, Jeanne Jew, Account III with the City, notified Plaintiff by letter of that date that the City was withholding $1,950.34 from her final paycheck as partial payment for the $6,400 the City was claiming in training reimbursement. A true and correct copy of this correspondence is attached to the Plaintiff's Opt-In and labeled, "Exhibit C," thereto.

18.    On or about March 7, 2008, the City sent Plaintiff a collections letter. Therein, the City demanded Plaintiff pay to the City the sum of $5,268.03 consisting of prorated uniform allowance, "[t]raining costs per MOU," and "collection fee" in the amount of $834.28. A true and correct copy of this correspondence is attached to the Plaintiff's Opt-In and labeled, "Exhibit D."

19.    The City has recruited and is now actively recruiting numerous other individuals for the position of Police Officer Trainee. In none of these recruitment drives does the City disclose the reimbursement requirement contained in the Conditional Offer nor Appendix A of the MOU. Indeed, until the Conditional offer was presented to the Plaintiff, she was unaware of any such requirement. The City required the Plaintiff and continues to require persons who are otherwise successful job candidates for the POT position to agree to reimburse the City through the use of the Conditional Offer. The City further is continuing to enforce the reimbursement terms contained in both the Conditional Offer and Appendix A of the MOU against the Plaintiff and those similarly situated to the Plaintiff who resign within five (5) years of graduating the Oakland Police Academy and being promoted to the position of Police Officer with the City. Further, the City is continuing to prosecute those persons who leave the City's employment as a Police Officer in order to recover the City's alleged costs of hiring and training the POT. The City has threatened to sue Plaintiff on or after March 21, 2008 if she does not pay it the amount it claims it is owed for training reimbursement and collection costs.

///

///

## MEMBERS OF THE PUTATIVE COLLECTIVE ACTION

20.    Plaintiff, by and through her counsel of record, avers that the putative members of any FLSA collective action by this complaint are employees and former employees who have the following characteristics:

(A)    They were hired on or after March 20, 2005 by the City, and

(B)    They were hired as Police Officer Trainees (POTs), and

(C)    They were required to reimburse the City up for the alleged costs of the police academy training pursuant to either or both of the following:

(1)    The Conditional Offer, and/or

(2)    Appendix A of the MOU.

## FIRST CAUSE OF ACTION
### Violation of the Fair Labor Standards Act
#### [29 U.S.C. 201, 216(b), 29 C.F.R. §531.35]

21.    Plaintiff incorporates paragraphs 1 through 20 of her complaint as though fully set forth herein.

22.    Pursuant to the FLSA, the City was required to pay Plaintiff and those similarly situated to Plaintiff a wage equal to the federal minimum wage then in effect, and overtime in an amount at least one and one-half the employees' "contractual rate of pay" in any work week the employee worked in excess of 40 hours. The City was to meet these federal wage requirements each work week the Plaintiff suffered or was permitted by the City to suffer for the benefit of the City.

23.    Consistent with the requirements of the FLSA, to wit, 29 C.F.R. §531.35, the City was required to pay to Plaintiff and those similarly situated to the Plaintiff, all wages they had earned fully, unconditionally or "free and clear" of any claim by the City to a set off, kickback or other recoupment. To the extent that the City paid the Plaintiff and those similarly situated to the Plaintiff a wage on the condition that the Plaintiff pay back training costs up to $8,000, those wages were paid conditionally, and not "free and clear" as required by the FLSA. Indeed, those wages remain unpaid per 29 C.F.R. §531.35.

24.     The first work week that Plaintiff graduated from the Oakland Police Academy and was promoted to Police Officer, Plaintiff worked a full forty hours at the hourly rate of $33.25. (See, "Exhibit C," attached hereto). However, that same week, the City paid her on the condition that should she resign, Plaintiff would pay to the City $8,000. Thus, the City deprived the Plaintiff of the minimum wage in this work week as the Plaintiff's gross wages, and then some, were entirely extinguished by the City's claim to $8,000 in training costs reimbursement.

25.     In each and every work week the Plaintiff worked for the City thereafter, the Plaintiff never earned the minimum wage for forty hours of work plus $8,000 or any proportional reduction of $8,000 as provided in the Conditional Offer. In her final work week employed by the City, the Plaintiff again worked a full forty hour work week. She was paid at the hourly rate of $34.92. (See, "Exhibit D," attached hereto). This resulted in a gross weekly wage of $1,396.80. However, for this same work week, the City held and asserted its claim for "reimbursement" in the amount of $6,400. Thus, there was a deprivation of the federal minimum wage pursuant to the requirement that the City pay Plaintiff "free and clear" and unconditionally pursuant to 29 C.F.R. §531.35 in each and every work week the Plaintiff worked for the City..

26.     Those similarly situated to the Plaintiff suffered and continue to suffer the same deprivation of their federally protected minimum wage because they are all paid at the same civil service rate the Plaintiff earned while employed by the City.

27.     Further, because the City required the Plaintiff and those similarly situated to Plaintiff to sign the Conditional Offer and/or to reimburse the City through the provisions of Appendix A of the MOU -in order to receive an appointment as a POT- the City violated and is continuing to violate the FLSA by seeking a waiver the FLSA rights inuring to these employees. By alleging the Plaintiff and other employees must pay up to $8,000 should they terminate employment with the City once they are promoted to the position of a Police Officer, the City creates a *de facto* deduction in the first work week the City avers the reimbursement obligation becomes effective.

WHEREFORE, Plaintiff and those similarly situated to Plaintiff pray for the relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
### DEPRIVATION OF CIVIL RIGHTS - UNCONSTITUTIONAL CONDITION
### [42 U.S.C. § 1983]

28.     Plaintiff incorporates paragraphs 1 through 27 of her complaint as though fully set forth herein.

29.     The right to receive wages free and clear and unconditional is guaranteed by 29 C.F.R. §531.35. Thus, the wage the City paid to Plaintiff and those similarly situated to the Plaintiff is a property interest. Pursuant to the strong public policy expressed and embraced by the FLSA, the protections to this property interest may not be waived either by the Plaintiff, those similarly situated as the Plaintiff, or by their union, the OPOA.

30.     Further, California Labor Code, §2802, requires the City to indemnify Plaintiff and those similarly situated to the Plaintiff "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." Like the protection afforded under the FLSA, this right cannot be waived by the employee (See, Cal. Lab. Code, §2804).

31.     Similarly, Cal. Lab. Code, §§ 221 and 222 prohibited the City from receiving any portion of wages paid to Plaintiff for itself, and preclude the City from withholding any portion of the wages due the Plaintiff. Because Labor Code §225 makes a violation of either statute a misdemeanor, these provisions also evidence a strong public policy which may not be waived by the Plaintiff or those similarly situated to the Plaintiff.

32.     The First Amendment to the United States Constitution provides the Plaintiff and those similarly situated with the right to associate freely. Article IV, Section 2 of the Privileges and Immunities Clause of the Constitution encompasses the right of Plaintiff to resettle and to find a new job. The Fifth and Fourteenth protect the Plaintiff's property interest in free and clear wage payment without just compensation.

///

///

33.  Despite these constitutional and statutory protections, it was and remains the City's policy, custom and practice -as a condition of employment as a Police Officer Trainee- to require the Plaintiff and those similarly situated POT candidates to execute the Conditional Offer containing the reimbursement guaranty. If the Plaintiff or any one similarly situated to the Plaintiff refused to execute the Conditional Offer, the City would have and, indeed, does refuse to hire such persons for the position of Police Officer Trainee.

34.  By reason of the City's conditioning of the Plaintiff's appointment as a Police Officer Trainee on the Plaintiff's execution of the Conditional Offer, the City is violating the unconstitutional conditions doctrine; The City unlawfully conditions its discretionary award of governmental employment on the condition that Plaintiff, and those similarly situated, relinquish their rights assured by the First, Fifth and Fourteenth Amendments and by Article IV, Section 2 of the Privileges and Immunities Clause of the United States Constitution.

35.  The City's policy of restraining the Plaintiff and those similarly situated for a period of five years to the City's employment is not narrowly tailored to meet any compelling governmental interest. Further, there is no approximate equality between the benefit conferred by the City to the Plaintiff and the burden imposed on the Plaintiff and those similarly situated through the restraint imposed via the Conditional Offer and Appendix A of the MOU. As a proximate result, the Plaintiff and those similarly situated have been damaged according to proof. This damage is cognizable under 42 U.S.C. §1983 and affords this Plaintiff the basis to enjoin the City from continuing this policy and practice.

WHEREFORE, Plaintiff and those similarly situated to Plaintiff pray for the relief as hereinafter set forth.

///

///

///

### THIRD CAUSE OF ACTION
### UNLAWFUL REPAYMENT OF WAGES TO EMPLOYER
### [California Labor Code § 221]

36.    Plaintiff incorporates paragraphs 1 through 35 of her complaint as though fully set forth herein.

37.    Plaintiff avers that both the Conditional Offer and Appendix A of the MOU violate California Labor Code §221 prohibiting an employer from taking back wages paid to the Plaintiff employee.

38.    Plaintiff further alleges that the City's withholding and/or seizure of $1,950.34 from her final paycheck ostensibly in partial satisfaction of the City's training reimbursement scheme also violates Cal. Lab. §221.

WHEREFORE, Plaintiff and those similarly situated to Plaintiff pray for the relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### UNLAWFUL WITHHOLDING OF WAGES
### [Cal. Labor Code § 222]

39.    Plaintiff incorporates paragraphs 1 through 35 of her complaint as though fully set forth herein.

40.    The City's withholding of $1,950.34 in wages from the final paycheck of the Plaintiff was wilful, unlawful, and/or fraudulent in contravention of the protections of Cal. Lab. Code, §222.

WHEREFORE, Plaintiff and those similarly situated to Plaintiff pray for the relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION
### [PAYMENT OF LESS THAN CONTRACTUAL WAGE SCALE
### [Cal. Labor Code, §223]

41.    Plaintiff incorporates paragraphs 1 through 35 of her complaint as though fully set forth herein.

42.    The wages for the civil service positions of "Police Officer Trainee" and for "Police Officer" were determined by the MOU between the City and the OPOA, the collective bargaining unit for the Plaintiff and those similarly situated to the Plaintiff.

43.   At all times relevant herein, and despite the existence and enforcement of the Conditional Offer and Appendix A of the MOU, the City continued to represent to the Plaintiff, the public, the state government and to interested applicants for the position of POT that they would be paid the wage designated in the MOU. This was false.

44.   The truth is that the City paid the Plaintiff and those similarly situated to the Plaintiff less than the wage bargained for by deducting and/or withholding from wages the training reimbursement and by suing Plaintiff and others for the balance alleged due.

WHEREFORE, Plaintiff and those similarly situated to Plaintiff pray for the relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**UNLAWFUL TERMS AND CONDITIONS**
**[Labor Code § 432.5]**

45.   Plaintiff incorporates paragraphs 1 through 35 of her complaint as though fully set forth herein.

46.   Plaintiff contends on behalf of herself and those similarly situated that the City required Plaintiff and those similarly situated to the Plaintiff to execute the Conditional Offer, all the while knowing that the provisions contained therein violated 29 C.F.R. §531.35, Cal. Labor Codes §§ 221, 222, 223, 450, 2802, 2804, California Civil Code §§ 1667, 1668 and California Business and Professions Code, §16600.

47.   The conduct of the City in mandating Plaintiff to execute the Conditional Offer while knowing the Conditional Offer violated both the protections accorded to the Plaintiff under federal and state law contravenes Cal. Labor Code, Section 432.5.

WHEREFORE, Plaintiff and those similarly situated to Plaintiff pray for the relief as hereinafter set forth.

///

///

///

///

///

## SEVENTH CAUSE OF ACTION
## COERCION
### [Labor Code § 450]

48.    Plaintiff incorporates paragraphs 1 through 35 of her complaint as though fully set forth herein.

49.    There were and remain other, less expensive police academies that are POST certified to which the City could have sent the Plaintiff and others similarly situated to the Plaintiff. In lieu of making this option available, so as to permit the Plaintiff to avoid liability for the alleged $8,000 in training costs arising from its own city owned, city operated academy, the City sent Plaintiff to its own academy. Indeed, it still has a standing policy, practice and custom of sending all of its employees like the Plaintiff to the Oakland Police Academy.

50.    By instituting and enforcing this policy, and collecting "reimbursement" the City coerced the Plaintiff and those similarly situated to the Plaintiff into purchasing police academy training from the City. Plaintiffs and those similarly situated to Plaintiff consequently incur damage according to the City's reimbursement schedule.

WHEREFORE, Plaintiff and those similarly situated to Plaintiff pray for the relief as hereinafter set forth.

## EIGHTH CAUSE OF ACTION
## UNLAWFUL CONTRACT
### [Civil Code § § 1667/1668]

51.    Plaintiff incorporates paragraphs 1 through 35 of her complaint as though fully set forth herein.

52.    The Conditional Offer and Appendix A of the MOU constitutes an "unlawful contract" of adhesion within the meaning of California Civil Code, Section 1667 and 1668 in that it is contrary to the express provisions of 29 CFR 531.35, Cal. Labor Code, Sections 221, 223, 432.5, 450, 2802, 2804 and/or is contrary to the public policy considerations embodied by those provisions or expressed in Cal. Labor Code 224 (Authorized Deductions), and Cal. Bus. & Prof. Code, Section 16600 (Void Contracts). Plaintiff nor anyone similarly situated to the Plaintiff is ever given the opportunity to negotiate or avoid

1    the penalty provisions of the Conditional Offer or Appendix A of the MOU.

2    53.    Further, neither the Conditional Offer nor Appendix A is supported by lawful

3    consideration. As a proximate result of the conduct of defendants and each of them, the

4    complainant has been damaged in an amount to be determined according to proof.

5    WHEREFORE, Plaintiff and those similarly situated to Plaintiff pray for the relief

6    as hereinafter set forth.

7                          **NINTH CAUSE OF ACTION**
                              **VOID CONTRACT**
8                        **[Bus. & Prof. Code § 16600]**

9    54.    Plaintiff incorporates paragraphs 1 through 35 of her complaint as though

10   fully set forth herein.

11   55.    The City's Conditional Offer is a "void contract" within the meaning of

12   California Business and Professions Code, Section 16600 in that the repayment provisions

13   contained therein violate the free and clear and unconditional wage payment requirements

14   of the FLSA, contravene the requirements of Cal. Lab. Code, §§ 221, 222, 223, 432.5, 450

15   2802, 2804 and Cal. Civ. Code 1667/1668, are punitive in nature and restrain Plaintiff and

16   those similarly situated from even leaving the employment of the City let alone engaging

17   in their lawful profession and/or trade. All the while, the City retains the right and privilege

18   to terminate the Plaintiff and those similarly situated.

19   56.    As a proximate result of the conduct of defendants and each of them, the

20   complainant has been damaged in an amount to be determined according to proof.

21   WHEREFORE, Plaintiff and those similarly situated to Plaintiff pray for the relief

22   as hereinafter set forth.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

## TENTH CAUSE OF ACTION
### INVALID WAIVER OF EMPLOYEE'S RIGHT TO INDEMNITY
[Cal. Lab. §2804]

57.     Plaintiff incorporates paragraphs 1 through 35 of her complaint as though fully set forth herein.

58.     California Labor Code §2802(a) provides in pertinent part:

An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties , or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

59.     California Labor Code, §2804 states:

Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State.

60.     The reimbursement provisions contained in the Conditional Offer and Appendix A of the MOU contravene Cal. Lab. Code §2804 because each constitute a waiver of the employer's duty to indemnify the employee for all necessary costs of their employment. Here, the City hired the Plaintiff to attend the Oakland Police Academy. Plaintiff was entirely subject to the direction of the City. The City did this because California requires the City to only deploy only those persons who have successfully completed a POST certified police academy as police officers. However, this cost of doing business is passed on to the Plaintiff and others similarly situated.

WHEREFORE, Plaintiff and those similarly situated to Plaintiff pray for the relief as hereinafter set forth.

///

///

///

///

///

///

## PLAINTIFF'S PRAYER FOR RELIEF

**As to the First Cause of Action:**

1.   For a declaration that the reimbursement clauses contained in both the Conditional Offer and Appendix A of the MOU are void 'ab initio' and in contravention to rights accorded the Plaintiff and those similarly situated under the Fair Labor Standards Act, and

2.   For restitution of all back wages, and or sums seized or otherwise recovered, and

3.   For liquidated damages according to Section 16(b) of the FLSA;

**As to the Second through Ninth Causes of Action:**

1.   For a temporary and permanent restraining order enjoining the City from seeking "reimbursement" from the Plaintiff or from any party similarly situated to the Plaintiff, and

2.   For a temporary and permanent restraining order enjoining the City from requiring any person applying for the position with the City as a POT from being required to sign the Conditional Offer containing the reimbursement clause, and

3.   For a temporary and permanent restraining order enjoining the City from enforcing the reimbursement provisions contained in either the Conditional Offer or Appendix A of the MOU, and

4.   For restitution of all back wages, and/or sums seized, withheld or otherwise recovered by the City from the Plaintiff or anyone similarly situated to the Plaintiff pursuant to the Conditional Offer or Appendix A of the MOU, and;

**As to All Causes of Action:**

For costs of suit, expert witness fees, attorneys fees, and such other and further relief as the Court deems proper.

DATED: March 20, 2008

JON WEBSTER
Attorney for Plaintiff
COURTNEY GORDON

EXHIBIT A

# OAKLAND POLICE DEPARTMENT

## CONDITIONAL OFFER OF POSITION AS A POLICE OFFICER TRAINEE

**Candidate:** Gordon, Courtney

**Social Security Number:** 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

The City of Oakland Police Department hereby notifies you that you have been selected for a position as a Police Officer Trainee, subject to the following conditions: You must pass the required psychological test(s), medical examination(s), the remainder of the background investigation, and accept the training reimbursement provisions as specified below.

**Reimbursement provisions:** You may be required to reimburse the City of Oakland for training expenses. Reimbursement would be required in the event you voluntarily terminate your employment with the Oakland Police Department, according to the following schedule:

Before the end of year 1 - 100% repayment of $8,000.
Before the end of year 2 - 80% repayment of $8,000.
Before the end of year 3 - 60% repayment of $8,000.
Before the end of year 4 - 40% repayment of $8,000.
Before the end of year 5 - 20% repayment of $8,000.

**Additionally:** Police Officer Trainees shall be required, on or before the first day of employment, to reside within a geographic emergency zone that allows quick response from home to work. Individuals selected for hire will be required to certify and verify by declaration, under the penalty of perjury and risk of removal from consideration for employment, their knowledge of and compliance with this City of Oakland policy. (A list of the cities within the established residency zone is enclosed for your information.) Your signature acknowledges your understanding of this policy and your intention to comply with its provisions.

# CONDITIONAL OFFER OF POSITION AS A POLICE OFFICER TRAINEE

**Candidate:** Gordon, Courtney

**Social Security Number:** 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

Please advise whether you accept this conditional offer:

☑ **Yes, I accept this offer, and understand the conditions which attach to it.**

☐ **No, I am no longer interested in the position of Police Officer Trainee.**

**Signature:** _____  **Date:** 11/5/05

**Print Name:** Gordon          Courtney          E
                (Last Name)     (First Name)      (Middle Initial)

**Signature:** _____  **Date:** 8 Nov 05
                Deputy Chief of Police

Keep one copy of this form for your records. Indicate your response, then sign the form and return the signed original within 7 working days of receipt. Failure to return the form will be considered a rejection of this offer and will result in your removal from further consideration for the position of Police Officer Trainee. Return the original to:

Personnel Section Commander
455 - 7th Street, Room 514
Oakland, California 94607

If you have questions, please contact the Recruiting and Background Investigations Unit Supervisor at (510) 238-3339.

EXHIBIT B

## APPENDIX A

UNIT PT BENEFITS/EXCLUSIONS

The City of Oakland, hereinafter referred to as "City", and the Oakland Police Officers' Association, hereinafter referred to as "OPOA", hereby agree that the provisions of this Memorandum of Understanding which apply to employees in Unit PT are as follows:

Preamble

Article I - <u>General Provisions</u> - Entire Article.

Article II - <u>Direct Pay for Services</u>.

A.    <u>Salary</u>   Persons employed as Police Officer Trainees will receive a salary that is ten percent (10%) less than the base salary attached to the entry level, A salary step for Police Officers on the PERS retirement system.

E.    <u>Overtime</u>.   Police Officer Trainees shall receive overtime in accordance with the provisions of the Fair Labor Standards Act. Accordingly, overtime shall be paid on all hours worked over one hundred and seventy-one (171) in the established twenty-eight (28) day work period. All overtime shall be paid in cash.

Article IV   <u>Insurance Programs</u>

A.    <u>Insurance Programs</u>.

1.    <u>Health Insurance</u>.

2.    <u>Dental Insurance</u>.

4.    <u>Life Insurance</u>.

Article V   <u>Leaves and Holidays</u>

C.    <u>Leaves of Absence</u>.

D.    <u>Family Death Leave</u>.

1.    <u>Definition of Immediate Family</u>.

2.    Entitlement.

Upon Approval of the department head or his/her designated representative, a Police Officer Trainee may be granted family death leave without pay up to an amount not to exceed five (5) working days.

ARTICLE VI  ALLOWANCES

A     Uniform Allowance.

1.    Initial Uniform Allowance.

2.    Annual Uniform Allowance.

Article VII - Self Improvement Incentive.  Nothing shall apply.

Article VIII - Special Provisions.  Nothing shall apply.

Article IX - Grievance Procedure.  Entire Article.

Article X - Resolution - Full Understanding - Non-Nullification and Duration. Entire Article.

Deferred Compensation.
In addition, City and the OPOA, in accordance with Treasury Regulations, Section 31.3121 (b) (7), hereby agree to adopt a deferred compensation plan for employees in Representation Unit T; such plan to be in accordance with the guidelines set forth in Internal Revenue Code Section 457.  Under this plan, the City will contribute 3.75% of each participating employee's wages including overtime to a deferred compensation plan administered by Great Western Savings and referred to by the administrator as an "Index Account".  Each participating employee will contribute an equivalent 3.75% of "wages", as that term is described above.  An employee will be immediately one hundred percent (100.0%) vested as to all contributions made on his/her behalf, whether by the employee or by the City.

Police Office Trainee Training Costs.  The parties recognize that in the past a substantial number of persons have accepted the benefit of training at the Oakland Police Academy and then have voluntarily separated from service to join other safety agencies or have decided for personal reasons that police work is not their preference.  The purpose of this provision is to insure that the recruit either accept a commitment of service to the City or be responsible for costs associated with Academy training.  Thus the parties agree that any member who,

34

prior to completing five years of service, voluntarily separates from service ` with the department shall be responsible for reimbursing the City, on a full or prorata basis, for the $8000. cost of his or her training at the Police Academy.   A schedule of the member's reimbursement responsibility is set forth as follows:

| Length of Service | % of Repayment Due |
|---|---|
| Separation prior to 1 year. | 100% repayment of the $8,000. |
| Separation after I year but before completing the second year | 80% repayment of the $8,000. |
| Separation after 2 years but before completing the third year | 60% repayment of the $8,000. |
| Separation after 3 years but before completing the fourth year | 40% repayment of the $8,000. |
| Separation after 4 years but before completing the fifth year | 20°/a repayment of the $8,000. |
| Separation after 5 years | 0% repayment |

Repayment shall be due and payable at the time of separation and the City shall deduct any amounts owed under this provision from the employee's final paycheck.  If said deduction does not fully reimburse the City for outstanding costs, the balance shall thereupon be due and owing.

1

*A member shall not be deemed to have voluntarily separated under this provision if the member can demonstrate that at the time of separation a personal emergency or other extreme facts requiring an absence from service which could not be reasonably accommodated by either a leave of absence or a request for re-employment upon cessation of the emergency or extreme facts. A demonstrated health problem of member or of a person in the member's immediate family is an example of such an emergency.*

EXHIBIT C

Courtney E. Gordon

Employee No. 16039            Pay Period End Date  30-JUN-2006      SSN      XXX-XX-7660            Advice Date 06-JUL-2006

| Earnings | Hours | Rate | Current | YTD | Deductions | Current | YTD |
|---|---|---|---|---|---|---|---|
| OTSX OPD Swn | 1.00 | 49.88 | 49.88 | 139.62 | FIT | 533.94 | 5923.27 |
| Reg Sworn | 80.00 | 33.25 | 2660.16 | 3856.68 | MEDICARE | 41.71 | 521.45 |
| Shift  Pay  3P | 80.00 | 2.08 | 166.32 | 315.92 | (CA) SIT | 174.39 | 1850.32 |
| ML Meal Allo | 1.00 | 9.25 | 9.25 | 9.25 | OPOA LT Disab | 0.00 | 45.00 |
| Imputed Life | 0.00 | 0.00 | 0.44 | 0.88 | OPOA Widow Orph | 0.00 | 5.00 |
|  |  |  |  |  | Union Due OPOA | 0.00 | 435.04 |

| Totals | Hours | Current | Year-to-Date |
|---|---|---|---|
| Gross Pay |  | 2886.05 | 35971.66 |
| Pre Tax Dedn |  | 0.00 | 1190.81 |
| Tax Dedn |  | 750.04 | 8295.04 |
| Other Dedn |  | 0.00 | 485.04 |
| Net Pay |  | 2135.57 | 25999.89 |

| Leave Balances | Hours |
|---|---|
| Comp Time | 4.50 |
| Comp Day | 0.00 |
| Vacation | 30.00 |
| Settlement Leave | 0.00 |
| Sick Leave | 0.00 |
| Floating Holiday | 0.00 |
| Management Leave | 0.00 |
| Special Recognition Leave | 0.00 |
| Special Supervisors Leave | 0.00 |
| Executive  Vacation Leave | 0.00 |
| Extra Vacation Day | 0.00 |
| Deferred OPOA OT | 0.00 |

| Information Elements | Current | YTD | Information Elements | Current | YTD |
|---|---|---|---|---|---|
| Authorize LWOP | 0 | 0 | Holiday Vacation Accrual | 0 | 0 |
| Comp Time Holiday Earned | 0 | 0 | Maternity LWOP | 0 | 0 |
| CTC Comp Time Court Earne | 0 | 0 | Military LWOP | 0 | 0 |
| CTE Comp Time Earned | 0 | 0 | OPD Court Deferred OT | 0 | 0 |
| CTR CT Earned Straight | 0 | 0 | SLV Sick LWOP | 0 | 0 |
| DCAP Reimburse CY | 0 | 0 | STW Shift Trade Worked | 0 | 0 |
| DCAP Reimburse PY | 0 | 0 | SNP Suspension LWOP | 0 | 0 |
| Deferred OT OPOA Payout | 0 | 0 | UNP Unauthorized LWOP | 0 | 0 |
| Family Care LWOP | 0 | 0 | VTN Voluntary LWOP | 0 | 0 |
| Family Death LWOP | 0 | 0 | LV1 Workers Comp LWOP | 0 | 0 |
| FMLA LWOP | 0 | 0 | CCB CT Court NonSworn | 0 | 0 |
| HGT Comp Time Hol Straigh | 0 | 0 |  |  |  |

| Accumulators |  |
|---|---|
| Annual Hours Worked | 1143.50 |
| Fiscal Year Hours | 85.50 |
| Life To Date Hours | 1264.50 |

CITY OF OAKLAND
ONE FRANK H. OGAWA PLAZA
OAKLAND, CA  94612

**ADVICE DATE**        06-JUL-2006

**Deposit** *Two thousand one hundred thirty five and 57/100 Dollars*

**To the**

**Account of Courtney E. Gordon**

    Checking Account    XXXXXX2794    2135.57

******$2,135.57

## ***VOID***NON-NEGOTIABLE***VOID**

## ***THIS IS NOT A CHECK***

EXHIBIT D

**Courtney E. Gordon**

Employee No. 16039  Pay Period End Date 25-JAN-2008  SSN  XXX-XX-7660  Advice Date 31-JAN-2008

| Earnings | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| Reg Sworn | 48.00 | 34.92 | 1676.20 | 4469.88 |
| IN2 Educ PER | 0.00 | 0.00 | 117.33 | 340.83 |
| Shift_Pay_1s | 60.00 | 2.88 | 172.90 | 633.86 |
| HDP Holiday | 12.00 | 34.92 | 419.05 | 1117.47 |

| Deductions | Current | YTD |
|---|---|---|
| FIT | 253.06 | 2200.22 |
| MEDICARE | 34.59 | 197.81 |
| SIT | 66.71 | 700.90 |
| Blue Shield | 0.00 | 62.26 |
| Deferred Comp | 596.15 | 1788.45 |
| OPOA LT Disab | 0.00 | 7.50 |
| OPOA Life | 36.00 | 108.00 |
| OPOA Widow Orph | 5.00 | 10.00 |
| Parking OPOA | 10.00 | 20.00 |
| Union Due OPOA | 114.19 | 228.38 |

| Totals | Hours | Current | Year-to-Date |
|---|---|---|---|
| Gross Pay | | 2385.48 | 13688.50 |
| Pre Tax Dedn | | 596.15 | 1788.45 |
| Tax Dedn | | 354.36 | 3098.93 |
| Other Dedn | | 165.19 | 436.14 |
| Net Pay | | 1269.78 | 8364.98 |

| Leave Balances | Hours |
|---|---|
| Comp Time | 26.75 |
| Comp Day | 0.00 |
| Vacation | 150.00 |
| Settlement Leave | 0.00 |
| Sick Leave | 0.00 |
| Floating Holiday | 0.00 |
| Management Leave | 0.00 |
| Special Recognition Leave | 0.00 |
| Special Supervisors Leave | 0.00 |
| Executive Vacation Leave | 0.00 |
| Extra Vacation Day | 0.00 |
| Deferred OPOA OT | 0.00 |

| Information Elements | Current | YTD | Information Elements | Current | YTD |
|---|---|---|---|---|---|
| Authorize LWOP | 0 | 0 | Holiday Vacation Accrual | 0 | 0 |
| Comp Time Holiday Earned | 0 | 0 | Maternity LWOP | 0 | 0 |
| CTC Comp Time Court Earne | 0 | 0 | Military LWOP | 0 | 0 |
| CTE Comp Time Earned | 0 | 0 | OCD Court Deferred OT | 0 | 0 |
| CTR CT Earned Straight | 0 | 0 | SLV Sick LWOP | 0 | 0 |
| DCAP Reimburse CY | 0 | 0 | STW Shift Trade Worked | 0 | 0 |
| DCAP Reimburse PY | 0 | 0 | SNP Suspension LWOP | 0 | 0 |
| Deferred OT OPOA Payout | 0 | 0 | UNP Unauthorized LWOP | 0 | 0 |
| Family Care LWOP | 0 | 0 | VTN Voluntary LWOP | 0 | 0 |
| Family Death LWOP | 0 | 0 | LV1 Workers Comp LWOP | 0 | 0 |
| FMLA LWOP | 0 | 0 | CCB CT Court NonSworn | 0 | 0 |
| HCT Comp Time Hol Straigh | 0 | 0 | | | |

| Accumulators | |
|---|---|
| Annual Hours Worked | 159.00 |
| Fiscal Year Hours | 1181.75 |
| Life To Date Hours | 4799.25 |

CITY OF OAKLAND
ONE FRANK H. OGAWA PLAZA
OAKLAND, CA 94612

ADVICE DATE          31-JAN-2008

**Deposit** *One thousand two hundred sixty nine and 78/100 Dollars*

******$1,269.78

**To the**

**Account of Courtney E. Gordon**

Checking Account     XXXXXX2794     1269.78

## ***VOID***NON-NEGOTIABLE***VOID**

## ***THIS IS NOT A CHECK***