JOHN A. RUSSO, City Attorney, SBN 129729
RANDOLPH W. HALL, Assistant City Attorney, SBN 080142
CHRISTOPHER KEE, Deputy City Attorney, SBN 157758
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone:    (510) 238-7686
Facsimile:    (510) 238-6500
Email:  ckee@oaklandcityattorney.org
X03161/444502

Attorneys for Defendant
CITY OF OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY GORDON, an individual, on behalf of herself and those similarly situated,<br><br>　　　　　Plaintiff-Petitioner,<br><br>　　vs.<br><br>CITY OF OAKLAND, a Municipal Corporation,<br><br>　　　　　Defendant-Respondent. | Case No. C08-01543 WHA<br><br>**DEFENDANT CITY OF OAKLAND'S MOTION TO DISMISS AND/OR TO ABSTAIN: NOTICE OF MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    May 15, 2008<br>Time:    8:00 a.m.<br>Courtroom:    9 |

**TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 15, 2008 at 8:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 9 on the 19th Floor of the above captioned court, located at 450 Golden Gate Avenue in San Francisco, CA, defendant City of Oakland will and hereby does move the court for an order pursuant to Federal Rule of Civil Procedure 12(b) (6) dismissing plaintiff's complaint.  In addition, defendants will and hereby do seek an order that the court abstain from exercising jurisdiction over plaintiff's state law claims under the authority of <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976)

More specifically, the motion is made on the following grounds:

1.  Plaintiff's complaint fails to state a claim under the Fair Labor Standards Act (FLSA) because the complaint shows that plaintiff received the statutory minimum wage for her entire tenure with the Oakland Police Department.

2.  Plaintiff's claims made under the ostensible authority of 42 U.S. section 1983 must be dismissed because (a) they are not cognizable as actionable claims under section 1983 because Congress has provided a comprehensive enforcement mechanism under the FLSA and (b) they are not cognizable as actionable claims under section 1983 because they seek vindication of state law rights and (c) they are substantively defective.

3.  This court should abstain from exercising jurisdiction over plaintiff's state law claims because the identical claims are currently before the California Court of Appeal, First District, Division 2 in the case of <u>City of Oakland v. Hassey</u>, Court of Appeal Case No. 116360, scheduled for oral argument on May 13, 2008.

Dated:  April 9, 2008

JOHN A. RUSSO, City Attorney
RANDOLPH W. HALL, Assistant City Attorney
RACHEL WAGNER, Supervising Trial Attorney
CHRISTOPHER KEE, Deputy City Attorney

By:    /s/ Christopher Kee
       Attorneys for Defendant
       CITY OF OAKLAND

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3    Pursuant to a Memorandum of Understanding negotiated between the defendant

4    City of Oakland (the City) and the Oakland Police Officers' Association, individuals who

5    are hired as police officers with the Oakland Police Department may be required to

6    reimburse the City for the costs of their training in the Oakland Police Academy if they

7    leave their employment with the Department before they have served five years.

8    Complaint, paragraph 5; Exhibit B. Reimbursement costs are calculated on a pro-rata

9    basis—the longer you serve, the less you have to pay if you leave.  If you stay five

10    years, you owe nothing. Id.

11    Plaintiff Courtney Gordon signed a conditional offer of employment agreeing to

12    the reimbursement terms established under the MOU.  She was hired as a Police

13    Officer Trainee, paid a salary, and was trained to be a police officer in the Academy for

14    free.  Upon her successful completion of the Academy, she was hired as a sworn officer

15    at a salary of $33.50 an hour.

16    She only served 18 months.  By means of this lawsuit, she now seeks to avoid

17    her obligation to reimburse the City for the cost of her training—training for which she

18    was paid, and which is effectively free upon completion of the five years of service.  She

19    claims the Conditional Offer violates the Fair Labor Standards Act, various constitutional

20    rights, and a long list of state law provisions.

21    As developed below, there is no merit to any of these claims.  The City is not

22    alone in reaching that conclusion:  plaintiff's counsel, who has developed something of

23    ///

24    ///

25    ///

26    ///

1    a cottage industry in bringing these suits[1], made virtually identical allegations against

2    the City through defendant and cross-complainant Keith Hassey in the matter of City of

3    Oakland v. Hassey, Alameda County Case No. 2001-027607.  In that case, the state

4    court granted summary judgment to the City, and the matter is presently on appeal

5    before the First Appellate District of the California Court of Appeal.  See Defendant's

6    Request for Judicial Notice, Exhibits 1-3.

7                              **II.    STATEMENT OF FACTS**

8            Plaintiff's complaint asserts the following:

9            On November 5, 2005, plaintiff signed a conditional offer of employment with the

10   Oakland Police Department, accepting as a condition of employment a provision of the

11   MOU between the Oakland Police Officer's Association and the City of Oakland, that

12   she might be required to reimburse the City for training expenses.  The conditional offer

13   set out the pro-rata reimbursement schedule.  The offer contained a box that stated

14   "**Yes,** I accept this offer, and understand the conditions which attach to it."  Plaintiff

15   checked the "yes" box, signed, and dated the Conditional Offer.

16           Plaintiff was hired, successfully completed training, and became a sworn police

17   officer in June of 2006.  She resigned in January of 2008—less than five years after her

18   date of hire.  Upon her resignation, she was informed that she would be required to

19   reimburse the City some $6400 dollars for the cost of her training, in keeping with her

20   signed obligation to repay the City on a pro-rata basis should she leave her employment

21   within five years of being hired. The City allegedly withheld $1950.34 of her final

22

23           [1] See Morgan v. County of Yolo, 436 F. Supp. 2d 1152 (E.D.Cal. 2006); Morgan v.
24   County of Yolo, 2006 WL 2692872 (E.D. Cal. 2006); In Re Acknowledgment Cases,
     2008 WL 668205 (Cal. App. 2008). These cases involved allegations to those made
     here and in the Hassey case:  that employment agreements obligating law enforcement
25   officers to repay the costs of their training violated federal and state law. The City notes
     that in the second Morgan v. County of Yolo case, the District Court sanctioned counsel
26   for vexatiously pursuing his action after the County had dismissed its own action to
     recover the training costs with prejudice.

1  paycheck.

2      The MOU provides that trainees in the Academy receive a salary 10% less than

3  the base salary for a police officer.  Once plaintiff was hired as a police officer, she was

4  paid $33.50 an hour.  The complaint discloses no deductions from her paychecks for

5  training costs during her 18 months of employment, until the final paycheck.

6                          III.    **LEGAL ARGUMENT**

7      As a threshold matter, plaintiff's claims flow from the implied premise that there is

8  something inherently unfair about requiring police officers to reimburse the City for

9  training costs on a pro-rata basis.  There is not.

10     There are varied situations where employees are subject to a service

11  requirement in exchange for a benefit in the form of training, or payment for schooling.

12  See e.g.; Heder v. City of Two Rivers Wisconsin, 295 F.3d 777, 782-783 (7th Cir. 2002);

13  U.S. v. Williams, 994 F.2d 646, 649-650 (9th Cir. 1993); Wilson v. Clarke, 470 F.2d 1218

14  (1st Cir. 1972); see also Brandon S. Long, Note, Protecting Employer Investment in

15  Training: Noncompetes vs. Repayment Agreements, 54 Duke L.J. 1295, 1301 (2005).

16     This is a completely unremarkable practice. It is hardly unusual for an employer

17  to condition employment on specialized training.  Attorneys, for instance, must graduate

18  from law school before being admitted to practice and hired at a firm; doctors must

19  graduate from medical school.  No one could rationally consider that inequitable, or

20  imagine that it gives rise to an obligation on the part of the eventual employer to pay for

21  the cost of that training.  As Judge Easterbrook frames the question,  "If an employer

22  may require employees to pay up front, why can't an employer bear the expense but

23  require reimbursement if an early departure deprives the employer of the benefit of its

24  bargain?" Heder v. City of Two Rivers, 295 F.3d at 781.

25     That is precisely the question raised by plaintiff's suit here, with the added factor

26  that plaintiff was paid a salary to receive free training at one of the most highly

1  respected training facilities for police officers in the State of California, but bridles at

2  having to honor her reimbursement obligation now that she has changed her mind.

3      As developed below, the answer to Judge Easterbrook's question is yes--

4  employers can obtain the benefit of such an agreement. There is nothing inequitable,

5  and certainly nothing unlawful, about that arrangement.

6      Turning to the plaintiff's specific causes of action, there is no merit to her claims,

7  and the matter should be dismissed.

8  **A.    The Complaint Does Not State A Violation Of The FLSA Because On Its
       Face It Shows That Plaintiff Received The Minimum Wage For Each Pay
9       Period.**

10     Plaintiff's FLSA claims are based on the convoluted assertion that, because at

11  the time of her execution of a conditional offer, at some point in the future plaintiff might

12  have been obligated to repay the costs of her training, the conditional offer in actuality

13  was a de facto deduction of her wages beginning with her first paycheck in violation of

14  the FLSA.  This is so, evidently, even though plaintiff was paid in full during her entire

15  tenure as a police officer trainee, and as a sworn officer, up to the last paycheck, at

16  which point there was allegedly a deduction made. In other words, plaintiff claims the

17  FLSA is violated by the Conditional Offer because employees who may at some point

18  choose not to honor their agreement might be subject to some sort of deduction at

19  some time in the future.

20     Plaintiff's "de facto" deduction theory of fails to state a claim under the FLSA.

21  The FLSA merely requires employers, at the most basic level, to pay employees a

22  minimum wage. 29 U.S.C. section 206(a)(1); Adair v. City of Kirkland, 185 F.3d 1055,

23  1062 fn 6.  Here, the complaint expressly states that plaintiff was paid $33.50 an hour—

24  almost 6 times the $5.85 minimum wage established under the FLSA.  The face of the

25  complaint thus reveals that, in keeping with its obligations under the FLSA, plaintiff

26  received the minimum wage in each pay period—indeed, she received substantially

1 more.

2    Plaintiff does assert that $1950.00 was withheld from her last paycheck.  She

3 does not allege facts, though, showing that she wasn't paid the minimum wage in her

4 final paycheck; she alleges only that a specific amount was withheld.  This too is lawful

5 under the FLSA.  Nothing in the FLSA prevents an employer from conditioning recovery

6 of training costs from an employee on a period of service, so long as the employee is

7 paid a minimum wage. Heder v. City of Two Rivers Wisconsin, 295 F.3d 777, 782-783

8 (7th Cir. 2002); Chao v. Bauerly, 2002 WL 1923716 (D. Minn. 2005).  Aside from

9 plaintiff's peculiar "de facto" argument, there is nothing in the complaint to support a

10 claim that plaintiff did not receive the statutory minimum wage during her entire tenure

11 with OPD, even calculating in the amount withheld.

12    Finally, to the extent that plaintiff seeks injunctive relief under the FLSA against

13 future enforcement of the Conditional Offer, plaintiff, as an individual employee does not

14 have standing; only the Secretary of Labor is authorized to seek such relief. Barrentine

15 v. Arkansas-Best  Freight System, 750 F.2d 47, 51 (8th Cir. 1984).

16 **B.    Plaintiff Has Failed To State A Claim Under 42 U.S.C. Section 1983**

17    Section 1983 creates a right of action for vindicating federal rights.  Albright v.

18 Oliver, 510 U.S. 266, 271 (1994). Plaintiff's Second Cause of Action seeks relief for

19 alleged violations of her rights under (1) the FLSA (2) provisions of the California Labor

20 Code (3) the "free association" clause of the 1st Amendment of the U.S. Constitution (4)

21 The "privileges and immunities clause" found in Article IV, Section 2 of the U.S.

22 Constitution and (5) her rights under the 5th and 14th Amendments.  None of these is

23 sufficient to support a claim under section 1983.

24    **1.    Claims Under The FLSA Are Not Actionable Under Section 1983.**

25    Section 1983 is unavailable where the underlying federal statute contains its own

26 comprehensive enforcement mechanism.  Kendall v. City of Chesapeake, Virginia, 174

1  F.3d 437, 440 (4th Cir. 1999). The FLSA is such a statute. Id. at 440-442. It cannot also

2  serve as the underlying basis for a section 1983 claim, and plaintiff's claims in that

3  regard must be dismissed.  Id.

4          **2.    State Law Claims Are Not Actionable Under Section 1983.**

5          Section 1983 is only available to vindicate violations of federal laws; claims

6  based on state law are not cognizable.  See e.g. Sweaney v. Ada County Idaho, 119

7  F.3d 1385, 1391 (9th Cir. 1997); Barry v. Fowler, 902 F2d 770, 772-773 (9th Cir. 1990).

8  To the extent plaintiff's complaint rests on violations of state law, it is not a viable

9  section 1983 action.

10         **3.    There Are No Sufficient Allegations Supporting A Claim Under The**
11              **First Amendment Right Of Free Association.**

12         Plaintiff's complaint avers in the most general terms that, by requiring her to sign

13  a conditional offer that includes a promise to repay the cost of her training on a pro-rata

14  basis should she leave the department after 5 years, the City has violated her rights of

15  free association under the First Amendment.  How this is accomplished, plaintiff does

16  not say.  There is indeed nothing in the complaint that suggests any action of the City

17  has impaired plaintiff from associating with anyone.  As noted bove, the possibility that a

18  recipient of a government benefit (and being paid a salary to receive POST certified

19  training certainly qualifies as a government benefit) may be required to fulfill a

20  contractual obligation, or else repay the cost of the benefit, is hardly unusual.  See e.g.

21  U.S. v. Williams, 994 F.2d at 649-650 (recipient of federal scholarship liable for treble

22  damages for failure to complete service requirement).

23         Plaintiff was of course free to decline the conditional offer, premised as it was on

24  repayment of a pro-rata portion of the costs of training should she leave OPD before

25  serving 5 years, and seek employment elsewhere.  Plaintiff obviously thought the deal

26  was attractive at the time—the fact that she now seeks to shirk her contractual

1   obligation is hardly a constitutional injury.

2       Moreover, there was nothing unduly coercive about the conditional offer.  It  was

3   clearly mutually advantageous—plaintiff was paid to receive premium POST certified

4   training to be a police officer for free, in exchange for which she agreed to work for a

5   minimum of five years, or else repay the city on a pro-rated basis for those costs.  There

6   is no hint of a restraint on plaintiff's First Amendment rights to freely associate.

7       **4.    There Are No Allegations Implicating The Privileges and Immunities
            Clause.**

8

9       The purpose of the privileges and immunities clause is to "place the citizens of

10  each State upon the same footing with citizens of other States, so far as the advantages

11  resulting from citizenship in those States are concerned." International Organization of

12  Masters, Mates & Pilots v. Andrews, 831 F. 2d 843, 845 (9th Cir. 1987). It seeks "to

13  ensure the unity of the several states by protecting those interests of nonresidents

14  which are fundamental to the promotion of interstate harmony." Id.  There is nothing at

15  all in plaintiff's complaint that implicates the scope and purpose of the privileges and

16  immunities clause, and those claims must be dismissed as well.

17      **5.    The Complaint Fails To Sufficiently Allege A "Taking" Under The
            Fifth and Fourteenth Amendments.**

18

19      Plaintiff claims that in signing the Conditional Offer, she has suffered an injury

20  under the Fifth and Fourteenth Amendments of the U.S. Constitution.  Here again, the

21  basis for that claim is not entirely clear.  While she asserts confusingly that those

22  amendments protect her "property interest in free and clear wage payment without just

23  compensation", the City presumes that she meant to assert that the conditional offer

24  somehow constitutes a "taking."  If that is in fact what plaintiff meant to say, it is hard to

25  see how signing a conditional offer of employment—which is the express basis for the

26  claim (see Complaint, paragraphs 33-34)—works any deprivation at all.  Indeed, under

1    that agreement she is merely obligated to repay, on a pro-rated basis, the substantial

2    investment in time and materials that the City has made in her training to be a police

3    officer—training that will serve her well should she choose (as she evidently has) to

4    work elsewhere in law enforcement.  Repayment of a contractual obligation does not

5    constitute a taking under any law that the City is aware of. Plaintiff certainly can claim

6    no property interest in breaching a contract.

7    **C.    This Court Should Abstain From Exercising Jurisdiction Over Plaintiff's
        State Law Claims, Because The Identical Issues Are Presently On Appeal In
8        State Court.**

9        Plaintiff's Third through Tenth Causes of Action are state law claims arising

10   under the California Labor Code, Civil Code, and Business and Professions Code.  As

11   explained above, these same claims were brought unsuccessfully against the City of

12   Oakland by means of a cross-complaint filed by plaintiff's counsel in the case of <u>City of

13   Oakland. v. Hassey</u>.  That case is currently before the First District of the California

14   Court of Appeal, and scheduled for oral argument on May 13, 2008.  Thus, the identical

15   legal theories advanced here will be considered by the state court in plaintiff's appeal.

16       Given the fact that these issues of state law are presently before a state

17   appellate court, this court should exercise its discretion and abstain from considering

18   plaintiff's state law claims in this action.  <u>Colorado River Water Conservation District v.

19   United States</u>, 424 U.S. 800, 818-819 (1976).

20       The Ninth Circuit has concluded that abstention under the <u>Colorado River</u>

21   doctrine rests on considerations of "wise judicial administration, conservation of judicial

22   resources and comprehensive disposition of litigation."  <u>Fireman's Fund Insurance

23   Company v. Quackenbush</u>, 87 F.3d 290, 297 (9th Cir. 1996).  A district court may

24   consider several factors, including such questions as whether the state court first

25   assumed jurisdiction over the property in question, the order in which jurisdiction was

26   obtained by the concurrent forums, whether federal or state law provides the rule of

1   decision on the merits, whether the state court proceedings are inadequate to protect

2   the federal litigants rights and the prevention of forum shopping.  See Colorado River,

3   424 U.S. at 818-819; Moses H. Cone Mem'l. Hosp. v. Mercury Const. Corp., 460 U.S. 1,

4   23, 26; Travelers' Indem. Co. v. Madonna, 914 F.2d 1364, 1371 (9th Cir. 1990).

5       Here these factors support abstention with respect to plaintiff's state law causes

6   of action.  The identical state law claims at issue here are presently before the First

7   District Court of Appeal, and were first raised in the state forum.  State law will obviously

8   provide the rule of decision on the merits of those claims.  The state court cannot in any

9   way be deemed an inadequate forum for interpretation of the state law issues that

10  plaintiff raises here.  And finally, to the extent that plaintiff's counsel here is also counsel

11  in the Hassey case, there is certainly at least the inference of forum shopping[2]—having

12  been unsuccessful in state court, plaintiff's counsel now seeks a more favorable airing

13  in federal court.

14      These factors support abstention in this case with respect to plaintiff's state law

15  claims, and this court should dismiss the Third through Tenth causes of action.

16                      **IV.   CONCLUSION**

17      Plaintiff entered into an agreement with the City that by any measure was highly

18  advantageous to her:  she got paid to learn to be a police officer.  As part of that

19  agreement, she was obliged to work for the City for a period of time or else repay the

20  training costs on a pro-rata basis—an obligation established through a negotiated MOU in

21  recognition of the fact that "a substantial number of persons" in the past had accepted the

22  benefit of the paid training program, and then left the City.  She was happy to accept the

23  benefit, but unwilling to accept the responsibility.  She now seeks relief from this court,

24  based on legal theories that have no merit, and are under concurrent consideration in the

25

26      [2] As noted in footnote 1 above, plaintiff's counsel has brought similar suits in several
        other jurisdictions in the state, to date, as far as it appears, unsuccessfully.

1   state appellate court.  Under these circumstances, the City respectfully urges the court to

2   grant its motion, and dismiss this case.

3   Dated:  April 9, 2008

4                                    JOHN A. RUSSO, City Attorney

5                                    RANDOLPH W. HALL, Assistant City Attorney
                                     RACHEL WAGNER, Supervising Trial Attorney
6                                    CHRISTOPHER KEE, Deputy City Attorney

7

8                      By:    /s/ Christopher Kee

9                                    Attorneys for Defendant
                                     CITY OF OAKLAND

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26