1    Jon Webster (Cal. State Bar No. 138786)
     Michael Devin (Cal. State Bar No. 107630)
2    THE LAW OFFICES OF JON WEBSTER
     1985 Bonifacio Street, Suite 102
3    Concord, CA 94520-2264
     Telephone:    (925) 686-8790
4    Facsimile:    (925) 686-8795

5

     Attorneys for Plaintiff:
6    COURTNEY GORDON

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11   COURTNEY GORDON, an individual, on        CASE NO. C08-01543 WHA
     behalf of herself and those similarly
     situated,                                 **OPPOSITION TO DEFENDANT,**
12                                             **CITY OF OAKLAND'S MOTION**
                                               **TO**
13                Plaintiff-Petitioner,        **DISMISS AND/OR TO ABSTAIN**

14           v.

15   CITY OF OAKLAND, a Municipal
     Corporation, and DOES 1 through 50,       Date:       May 15, 2008
16   inclusive,                                Time:       8:00 a.m.
                                               Courtroom:  9
17                Defendant-Respondent.

18

19

20

21

22                      OPPOSITION TO

23          DEFENDANT, CITY OF OAKLAND'S

24        MOTION TO DISMISS AND/OR TO ABSTAIN

25

26

27

28

1

# TABLE OF CONTENTS

2

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3

II.     ARGUMENT IN OPPOSITION TO MOTION. . . . . . . . . . . . . . . . . . . . . . . 2

4

      A.      *Colorado River* Abstention is Inappropriate. . . . . . . . . . . . . . . . . . . . . . 2

5

6
            1.      Plaintiff Was Not a Party to Any State Suit
                and Should Not Be Denied Her Due Process
                Right to Petition Before This Court. . . . . . . . . . . . . . . . . . . . . . . 2

7

8
            2.      An Abstention Based on the Principle of "Wise
                Judicial Administration" May Only be Sustained
9
                Where *Colorado River* "Exceptional Circumstances"
                are Shown. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10
                  (A)     Jurisdiction over the Res. . . . . . . . . . . . . . . . . . . . . . . . . . 4

11
                  (B)     Inconvenience of Federal Forum. . . . . . . . . . . . . . . . . . . . 5

12
                  ©       The Desirability of Avoiding
                        Piecemeal Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
13
                  (D)     The Order in which Jurisdiction was Obtained. . . . . . . . . 5

14
                  (E)     The Rule of Decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
15
                  (F)     Inadequacy of State Court
16
                          Proceedings to Protect Federal
                        Litigants Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17
      B.      Plaintiff Has Stated a Cognizable Deprivation of
18
          Her Right to The Federal Minimum Wage. . . . . . . . . . . . . . . . . . . . . . . 7

19
            1.      Payment Above the Federal Minimum Wage
                 is Not Controlling and There Can Be No
20
                 Averaging of Wages Earned. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

21
            2.      US Dept of Labor Denounces Repayment
                 Agreements As Offensive of FLSA
22
                 Protections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

23
            3.      City's Reliance on "Repayment Cases" is Misplaced. . . . . . . . 11

24
            4.      The Protections Afforded Under the FLSA
                 Cannot Be Waived By The City's Repayment
25
                 Obligations Contained in Its Conditional Offer
                 and Its CBA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26

27
      C.      Plaintiff Has Stated A Cognizable Injury Under the
          "Unconstitutional Conditions Doctrine" Where
          Relief is Properly Addressed as a Deprivation of
28
          Her Civil Rights Pursuant to 42 U.S.C. §1983. . . . . . . . . . . . . . . . . . 14

1

**TABLE OF CONTENTS**
**(Continued)**

1.   The City of Oakland "Unconstitutionally
     Conditioned " Plaintiff's Government
     Employment on the Waiver of Her Property
     and Liberty Rights Created and Defined by the
     FLSA and State Law.................................   16

2.   The Unconstitutional Conditions Doctrine
     Precludes The Extraction of Waivers of Rights..............   17

III   CONCLUSION.................................................   17

1

# TABLE OF AUTHORITIES

2

## Federal Cases

3

4

*Alexander v. Gardner--Denver Co.,*
    415 U.S. 36 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

5

*American Int'l Underwriters, Inc., v. Continental Insurance Co.,*
    843 F.2d 1253 (9th Cir., 1989).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

6

7

*AmerisourceBergen Corp. v. Roden*
    495 F.3d 1143 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

8

*Arpin v. Santa Clara Valley Transportation Agency,*
    261 F.3d 912 (9th Cir 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

9

10

*Arriaga v. Florida Pacific Farms, LLC,*
    305 F.3d 1228 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10,11

11

*Auer v. Robbins,*
    519 U.S. 452 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

12

13

*Ayres v. 127 Rest. Corp.,*
    12 F.Supp.2d 305 (S.D.N.Y.1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

14

*Baker v. McCollan,*
    443 U.S. 137 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

15

16

*Barrentine v. Arkansas--Best Freight System, Inc.,*
    450 U.S. 728 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9,13

17

*Board of Regents of State Colleges v. Roth,*
    408 U.S. 564, 577 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

18

19

*Bothell v. Phase Metrics, Inc.,*
    299 F.3d 1120 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

20

*Brooklyn Savings Bank v. O'Neil,*
    324 U.S. 697 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9,13

21

22

*Caserta v. Home Lines Agency, Inc.,*
    273 F.2d 943, 946 (2nd Cir. 1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

23

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

24

25

*Colorado River Water Conservancy District v. United States,*
    424 U.S. 800 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 3,4

26

*C-Y Develop. Co., v. City of Redlands,*
    703 F.2d 375 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

27

28

*Dolan v. City of Tigard,*
    512 U.S. 374 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

**TABLE OF AUTHORITIES**
(Continued)

**Federal Cases**

*Evanston Ins. Co., v. Jimco Inc.*,
    944 F.2d 1185 (5th Cir., 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Fireman's Fund Insurance Co., v. Quakenbush*,
    87 F.3d 290 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2,

*Davis v. Sherer*,
    468 U.S. 183 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Graham v. Connor*,
    490 U.S. 386 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Green v. City of Tucson*
    255 F.3d 1086 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3,6

*Hallstrom v. City of Garden City*,
    991 F.2d 1473 (9th Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Handler v. Thrasher*,
    191 F.2d 120 (10th Cir. 1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Heder v. City of Two Rivers Wisconsin*,
    295 F.3d 777 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Herrington v. County of Sonoma*,
    706 F.2d 938 (9th Cir., 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*International Organization of Masters, Mates, & Pilots v. Andrews*,
    831 F.2d 843 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Irizarry Perez v. Mitsubishi Motors Corp.*,
    758 F.Supp. 100 (D.Puerto Rico,1991). . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Jones v. Williams*,
    297 F.3d 930 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Kendall v. City of Chesapeake, Virginia*,
    174 F.3d 437 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Mayhue's Super Liquor Stores, Inc., v. Hodgson*,
    464 F.2d 1196 (5th Cir., 1972).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,13

*Mendoza v. Blodgett*,
    960 F.2d 1425 (9th Cir. 1992), cert. den. 506 U.S. 1063.. . . . . . . . . . . . . . . .  14

*Mitchell v. Greinetz*,
    235 F.2d 621(10th Cir. 1956). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Mitchell v. Turner*,
    286 F.2d 104 (5th Cir. 1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

1
2

# TABLE OF AUTHORITIES
## (Continued)

3

## Federal Cases

4    *Moses H Cone Memorial Hospital v. Mercury Construction Corp,*
        460 U.S. 1 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,7

5    *Nakash v. Marciano,*
6        882 F.2d 1411 (9th Cir.1989).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4

7    *Travelers Indemnity Co., v. Madonna,*
        914 F.2d 1364 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,7

8    *U.S. v. Scott,*
9        450 F.3d 863 (9th Cir 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

10   *U.S. v. Williams,*
        994 F.2d 646 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11   *Webster v. Public School Employees of Washington*, Inc.,
12       247 F.3d 910 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

13   *Wilson v. Clarke,*
        470 F.2d 1218 (1st Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

14   *Wood v. Meier,*
15       218 F.2d 419 (5th Cir. 1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16

## U.S. Department of Labor

17   Wage and Hour, Opinion Letter,
18       October 21, 1992 (1992 WL 845111).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

19   Wage and Hour, Opinion Letter,
         September 30, 1999 (1999 WL 1788162). . . . . . . . . . . . . . . . . . . . . . . . . . 9

20   Wage and Hour, Opinion Letter,
21       March 31, 2005, (2005 WL 2086807). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22

## United States Code

23   29 U.S.C. §201, et seq... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,
24   29 U.S.C. §206(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
25   29 U.S.C. §216(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
26   42 U.S.C. §1983.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

27
28

**TABLE OF AUTHORITIES**
**(Continued)**

### Code of Federal Regulations

29 C.F.R. §531.35. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,6,8

29 C.F.R. §778.104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

29 C.F.R. §776.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### California Statutes

Bus. & Prof. Code §16600. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Govt Code §1031(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lab. Code §221. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lab. Code §222. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lab. Code §406. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lab. Code §408. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lab. Code §2802(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lab. Code §2804. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

### California Code of Regulations

11 Cal. Code of Regs. 1002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

11 Cal. Code of Regs. 1005 (a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

### Other Authorities

*Note, Protecting Employer Investment in Training:*
*Noncompetes v. Repayment Agreements,*
   54 Duke L.J. 1295 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1

## I.    INTRODUCTION:

2

3      Plaintiff opposes the City of Oakland's (hereinafter "City") Motion to Dismiss

4   and/or to Abstain on the following basis: First, abstention under the *Colorado

5   River* doctrine is misplaced. Jurisdiction is the rule for federal courts, and the City has

6   failed to show that this plaintiff is a party in a parallel action or that the factors supporting

7   "wise judicial administration" discussed in *Colorado River* are present.

8      Second, abstention would deprive this plaintiff of her day in court. The plaintiff

9   brought this suit in federal court so that this district court could  render an opinion of first

10  impression in this District and in this Circuit on two significant federal statutory schemes:

11  The Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq*., "FLSA") and the

12  "Unconstitutional Conditions Doctrine" cognizable under 42 U.S.C. §1983.

13     The two issues plaintiff for which plaintiff seeks a determination are the following:

14  (1) Does the City's claim to $8,000 for "training reimbursement" contained in the

15  *Conditional Offer of Employment as a Police Officer Trainee* ("Conditional Offer," see

16  "Exhibit A" of the complaint) and Collective Bargaining Agreement between the City and

17  the Oakland Police Officers Association ("CBA," "Exhibit B" of the complaint), and the

18  City's subsequent seizure of the plaintiff's last pay check violate the FLSA's requirement

19  that the plaintiff receive the federal minimum wage and that she be paid  "free and clear"

20  or "unconditionally" pursuant to 29 C.F.R. §531.35; and (2) Does the City's conditioning

21  of governmental employment as a Police Officer Trainee/Police Officer impermissibly

22  hinge governmental such employment on the waiver of constitutional rights to (a) a

23  protected property interest, i.e. wages, and (b) the right to free association and to migrate.

24     Because precedent answers these issues in the affirmative, it would be manifest error

25  to dismiss the complaint based on the City's motion. Plaintiff has stated viable, justiciable

26  federal claims of paramount importance.

///

27  ///

28  ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    ARGUMENT IN OPPOSITION TO MOTION

### A.    *Colorado River* Abstention is Inappropriate

The United States Supreme Court in *Colorado River Water Conservancy District v. United States*, 424 U.S. 800 (1976) acknowledged the existence of three theories of federal abstention: (1) "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law," [Pullman Abstention]; (2) "[W] here there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," [Burford Abstention]; and (3) "[W]here, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings," [Younger Abstention] *Id.*, pg 814-816. However, the Supreme Court thereafter recognized a fourth exception based not on principles of judicial comity, but on "wise judicial administration." *Id.*, pg. 817.

The Supreme Court in *Colorado River* specifically stated that cases where "wise judicial administration" pressed for abstention, such cases were exceptions to the district court's "virtually unflagging obligation" to exercise jurisdiction conferred upon them." *Id.*, pg. 817. Indeed, the Supreme Court termed these cases, "exceptional." *Id.*, pg 818.

#### 1.    Plaintiff Was Not a Party to Any State Suit and Should Not Be Denied Her Due Process Right to Petition Before This Court

The City's motion ignores the undisputed fact that this plaintiff never was a party to any parallel state court proceeding, thus this case is unlike *Colorado River* where the United States was a party to both state and federal actions. While it is true that the Ninth Circuit has held that "[E]xact parallelism ... is not required. It is enough if the two proceedings are 'substantially similar." *Fireman's Fund Insurance Co., v. Quakenbush*, 87 F.3d 290, 297 (1976), citing: *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.1989), the Ninth Circuit has more recently observed:

1     "[A]bsent extraordinary circumstances, each plaintiff is entitled to his own day in court, and that therefore the mere existence of litigation brought by other parties with similar interests does not bar a plaintiff from pursuing his own litigation." *Green v. City of Tucson* 255 F.3d 1086, 1100 (9th Cir. 2001), overruled on other grounds.

2

3

4     The Court in *Green* was determining the appropriateness of Younger abstention

5 where four taxpayers had filed suit to challenge the constitutionality of a statute. The

6 constitutionality of that same statute had been challenged in a state lawsuit by other parties,

7 and, like this case, all parties were represented by the same attorney. In overruling the

8 district court's decision to abstain, the Ninth Circuit explained that where a federal plaintiff

9 is not a party to an ongoing state court proceeding, "congruence of interests" with the state

10 parties is not enough to trigger application of Younger abstention, "nor is identity of

11 counsel." *Id.*, pg 1100.

12     There is no doubt but that once a final decision is rendered by the California Court

13 of Appeal arising from the action entitled, *City of Oakland v. Hassey*, either party may elect

14 to use the appellate decision as authority for some aspect of this case. However, both the

15 Supreme Court in *Colorado River* and the Circuit Courts of Appeal have always understood

16 that precedent decisions made in the course of pending litigation occur, but that this simple

17 fact does not dictate against the exercise of federal jurisdiction. "[T]he possibility of a race

18 to judgment is inherent in a system of dual sovereigns and, in the absence of "exceptional"

19 circumstances, [*Colorado River*, 424 U.S. 800] at 818, ... that possibility alone is

20 insufficient to overcome the weighty interest in the federal courts exercising their

21 jurisdiction over cases properly before them." *AmerisourceBergen Corp. v. Roden* 495 F.3d

22 1143, 1151 (9th Cir. 2007). Yet these very same factors underpin the City's motion.

23     Simply put, there is no parallel action upon which to base a motion for abstention

24 under the *Colorado River* doctrine.

25 ///

26 ///

27 ///

28 ///

1

**2.    An Abstention Based on the Principle of "Wise Judicial Administration" may only be Sustained where *Colorado River* "Exceptional Circumstances" are Shown**

2

3    Should this Court find that the *Hassey* action is, indeed, "parallel" or "substantially

4    similar" that it would not deprive this plaintiff of her due process rights to consider

5    abstention, this court must determine that 'exceptional circumstances' exist to permit

6    application of the *Colorado River* abstention doctrine. *Nakash v. Marciano,* 882 F.2d 1411,

7    1413 (9th Cir. 1989), quoting *C-Y Develop. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th

8    Cir., 1983).

9    The Supreme Court established four factors in *Colorado River* "to determine

10    whether staying the federal proceedings was appropriate. Those factors were (1) whether

11    the state or federal court had assumed jurisdiction over a res; (2) the relative convenience

12    of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order

13    in which the forums obtained jurisdiction" *Colorado River* at 818.

14    In *Moses H Cone Memorial Hospital v. Mercury Construction Corp,* 460 U.S. 1, 23-

15    26 (1983), the Supreme Court articulated two more considerations for determining

16    abstention under *Colorado River*. These included whether state or federal law supplies the

17    rule of decision and whether the state proceeding is adequate to protect the parties' rights

18    *See, Cone, supra,* 25-26, and see also, *Nakash ,* supra, at 1415. The decision whether to

19    stay or dismiss a federal action because of parallel state-court litigation does not rest on a

20    mechanical checklist, but on a careful balancing of the important factors as they apply in

21    a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.

22    **(A)    Jurisdiction over the Res**

23    This case involves no tangible property and therefore it can weigh neither in favor

24    of nor against a stay. "Money . . . is not the sort of tangible physical property referred to in

25    *Colorado River." Travelers Indemnity Co., v. Madonna* 914 F.2d 1364, 1368 (9th Cir.

26    1990), quoting *American Int'l Underwriters, Inc., v. Continental Insurance Co.,* 843 F.2d

27    1253 (9th Cir., 1989).

28

1

**(B)    Inconvenience of Federal Forum**

2     To properly weigh this factor, it is essential to determine if "the inconvenience of

3   the federal forum is so great that this factor points toward abstention."*Travelers,* supra, at

4   1368 quoting *Evanston Ins. Co., v. Jimco Inc.,* 944 F.2d 1185, 1192 (5th Cir., 1988). The

5   court in *Travelers* determined that a distance of 200 miles was "not sufficiently great that

6   this factor [would point] toward abstention," it certainly cannot be argued

7     Here, the City and any of its witnesses would literally have to travel across the Bay

8   Bridge to attend this court. While this is a fact many travelers would stipulate is daunting,

9   this certainly does not approach the two hundred miles in *Traveler's*. Thus, this factor

10  favors the exercise of federal jurisdiction.

11

**(C)    The Desirability of Avoiding Piecemeal Litigation**

12    The third factor to be evaluated is the avoidance of piecemeal litigation. This factor

13  weighs strongly in favor of the exercise of federal jurisdiction. Not only can this plaintiff

14  obtain a complete determination of her rights and any relief due for herself, since she has

15  brought this suit as a collective action under 29 U.S.C. 216(b), the federal court is the only

16  a forum in which any similarly situated "opt-in" plaintiff may join. Indeed, the time period

17  for any other similarly situated individual to join the *Hassey* litigation has long since

18  closed.

19    Moreover, the City too can obtain relief if the district court determines that the

20  Conditional Offer and provision in the CBA challenged by way of this plaintiff's suit is

21  enforceable. The supplemental state claims of this plaintiff would also be disposed of in

22  a single proceeding. Thus, in the single federal forum, piecemeal litigation which might

23  otherwise arise in various superior courts and/or district courts would be avoided.

24

**(D)    The Order in which Jurisdiction was Obtained**

25    Assuming -arguendo- that this Court were to believe the *Hassey* suit was "parallel"

26  it is important to note that Ninth Circuit in *Travelers* observed:

27    "'[P]riority should not be measured exclusively by which complaint was filed first,

28  but rather in terms of how much progress has been made in the two actions. *Cone,* 460 U.S.

1    at 21, 103 S.Ct. at 939. 'The mere existence of a case on the state docket in no way causes

2    a substantial waste of judicial resources nor imposes a burden on the defendant which

3    would justify abstention.' *Herrington v. County of Sonoma*, 706 F.2d 938, 940 (9th Cir.,

4    1983) (quoting J. Moore, Moore's Federal Practice, vol. 1A, pt. 2, ¶ 203 [4], p. 2141 (2d

5    ed. 1948, 1982 update)). *Id.,* at 1370.

6        While the *Hassey* matter, being pending appeal, is clearly more developed, and a

7    factor that would, standing alone favor abstention, it would be a deprivation of this

8    plaintiff's rights to due process to decline to exercise jurisdiction. *Green*, pg. 1100.

9                        **(E)    The Rule of Decision**

10       The Supreme Court in *Cone*, stated in pertinent part, "The presence of federal law

11   issues must always be a major consideration weighing against surrender [of jurisdiction]"

12   while the "presence of state-law issues may weigh in favor of that surrender [only] in some

13   rare instances." *Id.,* at 26. The City's motion ignores this consideration entirely.

14       Here, at a minimum, the rule of decision must necessarily flow in whole or in part

15   from an analysis as to whether the "training repayment obligations" contained in the

16   Conditional Offer and the CBA constitute a violation under the FLSA's mandate that the

17   City pay the plaintiff "free and clear" and "unconditionally" 29 C.F.R. §531.35. (See

18   discussion, infra). Further, the FLSA will most certainly supply the rule of decision

19   concerning the City's seizure of the plaintiff's final paycheck.

20       The application of Section 1983 and the federal "unconstitutional conditions

21   doctrine" discussed hereinafter will supply the decision as to whether or not the City's

22   conditioning of the plaintiff's governmental employment on her agreement to waive her

23   property rights to her wages and to her right to migrate. Thus, two separate but fundamental

24   federal statutory schemes will determine the outcome of this case. This dramatically favors

25   the exercise of federal jurisdiction.

26   ///

27   ///

28   ///

1    While it is true that the federal plaintiff has also averred in her federal suit state

2    statutory remedies, under both *Cone* and *Travelers* this situation does not create an

3    impediment so great that a district court cannot adjudicate such state-law claims. As noted

4    by one federal district court, " It is only in 'rare circumstances [that] the presence of state-

5    law issues may weigh in favor of ... surrender' of jurisdiction. *Cone*, 460 U.S. at 26. It is

6    generally agreed that rare circumstances exist only when a case contemplates novel or

7    complex questions of state law. [internal citations omitted]" *Irizarry Perez v. Mitsubishi*

8    *Motors Corp*. 758 F.Supp. 100, 102 (D.Puerto Rico,1991)

9    There are no novel or complex issues of state law present in this case. The state-law

10    claims simply would necessitate the district court to apply existing state law to the facts.

11    This factor weighs strongly in favor of the exercise of federal jurisdiction.

12
        **(F)    Inadequacy of State Court Proceedings to Protect Federal**
13             **Litigant's Rights**

14    In the instant matter, the state court action filed by the City against the Mr. Hassey

15    has already entered the appellate process. This plaintiff is unable to join that action even

16    if you desired to do so presently. Thus, the state forum is simply unavailable to her, and this

17    federal forum is her choice in which she elects to vindicate her rights under the FLSA,

18    Section 1983 and the pendent state claims. This also favors the exercise of federal

19    jurisdiction.

20    Thus, all factors considered, this court should not abstain on this matter; a case

21    which alleges important federal questions of first impression.

22
        **B.    Plaintiff Has Stated a Cognizable Deprivation of Her Right to The**
             **Federal Minimum Wage**
23
        **1.    Payment Above the Federal Minimum Wage Is Not Controlling**
24             **and There Can Be No Averaging of Wages Earned**

25    The City argues that the plaintiff has been paid far more than the federal minimum

26    wage both on an hourly basis and over the tenure of her employment. This is immaterial.

27    Because the FLSA takes a "single work week" as its standard, (29 U.S.C. §206(a)), in any

28    work week were the employee's wage dips below the federal mandate, a violation occurs.

1   There can be no "averaging"of hours over two or more weeks, and certainly not over the

2   course of the tenure of employment. ( 29 C.F.R. §778.104). This realities have long been

3   recognized by the United States Department of Labor ("DOL").

   **2.    US Dept of Labor Denounces Repayment Agreements As Offensive of FLSA Protections**

5   The DOL is charged with the enforcement of the FLSA. In this capacity, it has

6   adopted various regulations in order to further congressional intent behind the FLSA. 29

7   C.F.R. §531.35 is one of these regulations. It provides in pertinent part:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.

12   The United States Supreme Court has observed that where, "'Congress has not

13   "directly spoken to the precise question at issue,' we must sustain the Secretary's approach

14   so long as it is "based on a permissible construction of the statute." *Chevron U.S.A. Inc. v.*

15   *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984)" *Auer v. Robbins*

16   519 U.S. 452, 457(1997). Congress has, indeed, not expressed its position on the whether

17   an employer -such as the City- can require its employees to pay it for the costs the employer

18   avers it incurs in providing internal training to the employee. Thus, the proper application

19   of this regulation governs the outcome of this appeal.

20   This Court has observed, "[T]he Secretary of Labor's interpretation of her own

21   regulations is entitled to deference and is controlling unless "plainly erroneous or

22   inconsistent with the regulation."); *Webster v. Public School Employees of Washington*,

23   Inc., 247 F.3d 910, 914 (9th Cir. 2001) ("We must give deference to DOL's regulations

24   interpreting the FLSA.")." *Bothell v. Phase Metrics, Inc.* 299 F.3d 1120, 1129 (9th Cir.

25   2002). Relative to repayment agreements, the DOL has issued a series of three Wage and

26   Hour Opinion Letters interpreting and applying 29 C.F.R. §531.35.

27   ///

28   ///

1    In 1992, the DOL was asked whether the FLSA was violated where a collective

2    bargaining agreement between a police department and a police officers' union permitting

3    pro-rata repayment of wages earned in the state mandated police academy was required

4    should the officer leave the department prior to a specified period of employment. The

5    DOL replied simply "[T]he answer is yes." Opinion Letter, October 21, 1992, (1992 WL

6    845111) The DOL went on to state:

> "Employees are entitled to certain minimum wage and applicable overtime
> payments and [h]ours worked under the FLSA include basic training time."
> Id. An employee cannot waive his or her rights to compensation under
> the FLSA (Citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)) and
> a labor organization may not negotiate a provision that waives employees'
> statutory rights under the FLSA (Citing *Barrentine v. Arkansas-Best Freight
> Systems, Inc*., 450 U.S. 728 (1981)). Therefore, to the extent that such
> reimbursement reduces the employee's pay below the minimum wage or
> overtime rate, such reimbursement violates the FLSA and constitutes an
> illegal kickback. *Id.*"

13    In Opinion Letter, September 30, 1999, (1999 WL 1788162), the DOL again

14    addressed the validity of repayment schemes based upon "training expenses.". Reiterating

15    its 1992 opinion, the DOL held that "where a reimbursement agreement would result in an

16    employee receiving less than the wages required by the FLSA, it would violate the

17    provisions of the FLSA." *Id.*

18    On March 31, 2005, (2005 WL 2086807), the DOL was called upon to opine as to

19    the validity of an Oklahoma state statute that required police officers to remain in the

20    employment of their initial employing law enforcement agencies for a specified period of

21    time or be required to reimburse that agency the salaries earned while attending the police

22    academy. Therein the DOL again rejected the validity of such a state statute, stating:

> "Wages must be made 'free and clear' per 29 C.F.R. §531.35. Because the
> FLSA establishes a floor for required compensation, state or local laws may
> require greater amounts but, pursuant to the Supremacy Clause, may not
> diminish the protections of the Act." Id.

25    Thus, regardless of how the City couches the repayment basis, i.e., on wages earned

26    in the police academy or on the costs of sending their employee to such an academy, the

27    DOL Opinion Letters demonstrate that there is no effective difference between the

28    characterization of these demands because in reality, the repayment reduces the effective

1  salary paid the employee. Where the salary is reduced in any week below that specified as

2  the federal minimum, the FLSA is violated. Here, the City seized the plaintiff's final

3  paycheck in partial satisfaction of its $8,000 training repayment obligation. Thus, the

4  plaintiff received no compensation whatsoever for her work. But the City wants more. It

5  now is pressing for payment of the remaining balance due under the terms of the

6  Conditional Offer. Consequently, the Conditional Offer was nothing more than a

7  promissory note. This was the functional equivalent to a $8,000 deduction each work week,

8  a circumstance acknowledged by he Eleventh Circuit in *Arriaga v. Florida Pacific Farms*,

9  LLC., 305 F.3d 1228, 1236 (11th Cir. 2002)

10    "[T]here is no legal difference between deducting a cost directly from the
      worker's wages and shifting a cost, which they could not deduct, for the
11    employee to bear. An employer may not deduct from employee wages the
      cost of facilities which primarily benefit the employer if such deductions
12    drive wages below the minimum wage. See 29 C.F.R. § 531.36(b). This rule
      cannot be avoided by simply requiring employees to make such purchases on
13    their own, either in advance of or during the employment. See id. § 531.35;
      *Ayres v. 127 Rest. Corp.*, 12 F.Supp.2d 305, 310 (S.D.N.Y.1998)." {Emphasis
14    added}.

15    In *Arriaga*, Florida fruit growers had required Mexican farm workers to execute an

16  employment agreement under which they were to advance the costs of their H-2A visas,

17  a $6 entry fee charged at the border, and transportation costs from Monterrey, Mexico to

18  their work sites in Florida. These costs total approximately $275. At the conclusion of fifty

19  percent of the employment contract with the employee, the grower would reimburse the

20  employee $120 of the costs that permitted the employee to work for the growers. At the

21  conclusion of the contract, and only for those employees still remaining in employment

22  with the growers, the employee would receive a bus ticket back to Loredo, Texas and

23  twenty dollars for the remaining bus trip to Monterrey, Mexico. The employees brought suit

24  alleging that they were deprived of the right to a minimum wage in the first week of

25  employment because they had not been reimbursed for the costs that they advanced. The

26  Eleventh Circuit, relying on 29 C.F.R. §531.35 agreed. The court acknowledged that 29

27  C.F.R. §776.4 requires a court to look to see if there is a FLSA violation in any work week,

28  not over the tenure of employment, Id., pg 1237.

Like the farm workers in *Arriaga*, the plaintiff and those similarly situated to her, are required to bear the City's cost of doing business. Under California statute, the City of Oakland not deploy the plaintiff as a police officer until she had completed the required the state certified police academy.[1] Upon her separation from employment, plaintiff suddenly bore this cost.

Similarly, in relying on §531.35 to invalidate a reimbursement agreement wherein cashiers agreed to repay shortages occurring on their shifts, the Fifth Circuit long ago observed:

> "With the employee's financial picture burdened with the 'valid debt' of the shortages, he is receiving less for his services than the wage that is paid to him. Whether he pays the 'valid debt' out of his wages or other resources, his effective rate of pay is reduced by the amount of such debts. When it is reduced below the required minimum wage, the law is violated." *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972).

Fundamentally, the City's demand that plaintiff pay its costs of running its own city run, city operated police academy is nothing short of an unlawful kickback to the City. The City's seizure of plaintiff's final paycheck in its entirety is a direct violation of the FLSA. Its position that the repayment provisions contained in the Conditional Offer and the CBA amount to nothing more than the de facto deduction denounced in *Arriaga*.

### 3.     City's Reliance on "Repayment Cases" is Misplaced

In its opening brief, the City analogizes the "training repayment obligation" contained in the Conditional Offer and the CBA as nothing more than an innocuous and inherently reasonable form of remuneration for the benefit and schooling the employee receives.

///

---

[1]

*See,* Cal Govt Code, §1031(d) (Peace officer applicants must be of good moral character, as determined by a thorough background investigation). 11 Cal. Code of Regs 1002 defining "minimum standards for employment" ; 11 Cal. Code of Regs 1005(a)(1) "Basic Course Requirement: Every peace officer. . .whose primary duties are investigative . . . shall complete the Regular Basic Course before being assigned duties which include the exercise of peace officer powers."

1    In this regard, the City cites: *Heder v. City of Two Rivers Wisconsin*, 295 F.3d 777,

2    782-783 (7th Cir. 2002); *U.S. v. Williams*, 994 F.2d 646, 649-650 (9th Cir. 1993); *Wilson v.*

3    *Clarke*, 470 F.2d 1218 (1st Cir. 1972), and a law review article entitled, *Note, Protecting*

4    *Employer Investment in Training: Noncompetes v. Repayment Agreements*, 54 Duke L.J.

5    1295, 1301 (2005).

6    In *Heder,* the 7th Circuit was called upon to determine if a repayment agreement

7    similar to that use by the City of Oakland violated Wisconsin. In ruling in the negative, the

8    court did so not on the FLSA but specifically because, "Heder depicts a repayment

9    obligation as a covenant not to compete that is invalid under Wis. Stat. §103.465" *Id*., pg

10   780. The court in *Heder* was never called upon to determine if the training costs repayment

11   provision of the CBA violated the FLSA. To the extent the court was called upon to apply

12   the FLSA, it struck the CBA's provision that the firefighter pay back a portion of the salary

13   he had earned while completing the mandated training.

14   *Wilson* addressed the validity of a non-compete agreement between a doctor of

15   psychology and his former employer. To the extent that case mentioned the recovery of

16   training costs, the discussion was mere dicta, apparently based on Massachusetts law, and

17   did not address the FLSA prohibition against such repayment agreements.

18   *U.S. v. Williams* involved the availability of punitive damages where a National

19   Health Service Corps scholarship recipient breached his work obligations imposed by this

20   federal scholarship program under 42 U.S.C.§ 254. It did not involve either an

21   employee/employer relationship nor does it even mention the FLSA.

22   While clearly a scholarly work, the Duke Law Journal also does not mention, let

23   alone does it discuss the FLSA prohibitions against repayment agreements. Again, simply

24   put, the City's reliance on these cases and articles is woefully misplaced.

25   ///

26   ///

27   ///

28   ///

1

**4.    The Protections Afforded the FLSA Cannot Be Waived By The City's Repayment Obligations Contained in Its Conditional Offer and Its CBA**

2

3    The Supreme Court has observed, "The legislative history of the Fair Labor

4    Standards Act shows an intent on the part of Congress to protect certain groups of the

5    population from substandard wages and excessive hours which endangered the national

6    health and well-being and the free flow of goods in interstate commerce. The statute was

7    a recognition of the fact that due to the unequal bargaining power as between employer and

8    employee, certain segments of the population required federal compulsory legislation to

9    prevent private contracts on their part which endangered national health and efficiency and

10    as a result the free movement of goods in interstate commerce. To accomplish this purpose

11    standards of minimum wages and maximum hours were provided." *Brooklyn Sav. Bank v.*

12    *O'Neil*, 324 U.S. 697 (1945)

13    Following the decision in *Brooklyn Savings Bank*, a number of cases have held that

14    contractual understandings which have the effect of "circumventing or invading the

15    command of the Wage and Hour Act" are invalid and unenforceable.[2]

16    Waiver will not be allowed where it would thwart the legislative intent. See, e.g.,

17    *Barrentine v. Arkansas--Best Freight System, Inc.*, 450 U.S. 728 (1981); *Alexander v.*

18    *Gardner--Denver Co.*, 415 U.S. 36 (1974). In determining whether such waiver would

19    thwart the legislative policy, resort must generally be made to the legislative intent.

20    *Brooklyn Savings Bank*, 324 U.S. at 704. The United States Department of Labor has

21    adopted both regulations and issued three separate Wage and Hour Opinion Letters clearly

22    proscribing the use of such "reimbursement contracts" equating them to unlawful waivers

23    under *Brooklyn Savings Bank* and *Barrentine*.

24    ///

25

26    [2] *See, Mitchell v. Turner*, 286 F.2d 104 (5th Cir. 1960); *Wood v. Meier*, 218 F.2d 419,
420 (5th Cir. 1955); *Handler v. Thrasher*, 191 F.2d 120, 123 (10th Cir. 1951); *Mitchell v.*
27    *Greinetz*, 235 F.2d 621, 625 (10th Cir. 1956); *Caserta v. Home Lines Agency, Inc.,* 273 F.2d
943, 946 (2nd Cir. 1959); *Mayhue's Super Liquor Stores, Inc., v. Hodgson* 464 F.2d
28    1196,1198 (5th Cir., 1972).

1

2

3

**C.    Plaintiff Has Stated A Cognizable Injury Under the "Unconstitutional Conditions Doctrine" Where Relief is Properly Addressed as a Deprivation of Her Civil Rights Pursuant to 42 U.S.C. §1983**

4

5

6

7

8

9

10

11

Contrary to the City's assertion that Section 1983 does not support the alleged constitutional violation averred in the complaint, the Ninth Circuit has stated, "42 U.S.C. §1983 embodies individual rights cognizable under [the Privileges and Immunities Clause]." *International Organization of Masters, Mates, & Pilots v. Andrews*, 831 F.2d 843, 845 (9th Cir. 1987). Moreover, the Ninth Circuit has held "that a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U. S.C. § 1983." *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 925 (9th Cir 2001)

12

13

14

15

16

17

To state a valid claim under §1983, one must demonstrate that the action occurred "under color of state law" and the action resulted in the deprivation of a constitutional right or federal statutory right. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Section 1983, in addition to protecting Constitutional rights, provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (*Citing Baker v. McCollan,* 443 U.S. 137 (1979)).

18

19

20

21

22

23

24

Plaintiff's right to receive her wages free and clear and to be free from restraint were rights "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In addition, a liberty interest created by state law can find protection under Section 1983, (*Mendoza v. Blodgett*, 960 F.2d 1425, 1428-29 (9th Cir. 1992), cert. den. 506 U.S. 1063).

25

26

27

28

The Ninth Circuit has held, "We recognize Section 1983 actions grounded on claims of the deprivation of state-created liberty or property interests; see also *Davis v. Sherer*, 468 U.S. 183, 193 fn. 11, (1984)." *Hallstrom v. City of Garden City* 991 F.2d 1473, 1479 (9th Cir. 1993) These state sources include the following:

1    California Labor Code, §2802(a) providing:

2    An employer shall indemnify his or her employee for all necessary
     expenditures or losses incurred by the employee in direct consequence of the
3    discharge of his or her duties , or of his or her obedience to the directions of
     the employer, even though unlawful, unless the employee, at the time of
4    obeying the directions, believed them to be unlawful.

5    Cal. Labor Code,§2804 stating:

6    Any contract or agreement, express or implied, made by any employee to
     waive the benefits of this article or any part thereof, is null and void, and this
7    article shall not deprive any employee or his personal representative of any
     right or remedy to which he is entitled under the laws of this State.
8
     Cal. Labor Code, §406 providing
9
     Any property put up by an employee, or applicant as a part of the contract of
10   employment, directly or indirectly, shall be deemed to be put up as a bond
     and is subject to the provisions of this article whether the property is put up
11   on a note or as a loan or an investment and regardless of the wording of the
     agreement under which it is put up.
12
     Cal. Labor Code, §408 affording:
13
14   Any person or agent or officer thereof, who violates any provision of this
     article, except the provisions of Section 405, is guilty of a misdemeanor,
15   punishable by a fine of not less than fifty dollars ($50) and not exceeding one
     thousand dollars ($1,000), or imprisonment for not exceeding six months, or
     both.
16
17   Cal. Labor Code, §221 stating, "It shall be unlawful for any employer to collect or

18   receive from an employee any part of wages theretofore paid by said employer to said

19   employee." And, similarly, Cal. Lab. Code, §222:

20   It shall be unlawful, in case of any wage agreement arrived at through
     collective bargaining, either wilfully or unlawfully or with intent to defraud
21   an employee, a competitor, or any other person, to withhold from said
     employee any part of the wage agreed upon.

22   Finally, Cal. Business and Professions Code, §16600 affords the liberty interest to

23   be free from restraint. It provides, "Except as provided in this chapter, every contract by

24   which anyone is restrained from engaging in a lawful profession, trade, or business of any

25   kind is to that extent void." Each and everyone of these statutes protected the plaintiff's

26   wages and her right to leave the City's employment at anytime.

27   ///

28   ///

1

2

3

**1.    The City of Oakland "Unconstitutionally Conditioned"Plaintiff's Government Employment on the Waiver of Her Property and Liberty Interests, Rights Created and Defined by the FLSA and State Law**

4    The City asserts correctly that the plaintiff may not base a Section 1983 claim on a

5    violation of state law, nor escape the detailed remedies afforded by Congress under the

6    FLSA by alleging a violation of the FLSA as a direct basis for her Section 1983 claim See,

7    *Kendall v. City of Chesapeake, Virginia*, 174 F.3d 437, 440 (4th Cir. 1999). This the

8    plaintiff has not done.

9    What the plaintiff is stating is that the federal and California statutory protections

10    create and define constitutionally protected spheres, the first surrounds her wages under the

11    Fifth and Fourteenth Amendments, and the second protects her liberty to migrate or leave

12    the City's employment. The latter cognizable under the First Amendment as well as the

13    Privileges and Immunities Clause of Article IV, Section 2 and the Fourteenth Amendment.

14    Here, the City's Conditional Offer was tantamount to a "Hobson's choice."[3] Plaintiff

15    could either accept the repayment terms and become employed, or she could decide not to

16    become employed. Thus, the Conditional Offer effected an "end run" around her Fifth and

17    Fourteenth Amendment right to her property, i.e. her wages. By requiring her to stay with

18    the City for five years of suffer an $8,000 loss, plaintiff's right to associate with others and

19    to migrate freely, cognizable under the First and Fourteenth Amendments and the

20    Privileges and Immunities Clause of Article IV, Section 2 of the U.S. Constitution was

21    abridged.

22    ///

23

24    [3]

25    Wikipedia: A Hobson's choice is a free choice in which only one option is offered, and one

26    may refuse to take that option. The choice is therefore between taking the option or not taking it. The phrase is said to originate from Thomas Hobson (1544–1630), a livery stable

27    owner at Cambridge, England who, in order to rotate the use of his horses, offered customers the choice of either taking the horse in the stall nearest the door—or taking none

28    at all. It is analogous to the expression "my way or the highway".

These are fundamental rights which require the City to have a compelling governmental interest before they may be surrendered. Secondly, the law requires the City to utilize the least restrictive alternative. Neither is true in the instant case.

### 2. The Unconstitutional Conditions Doctrine Precludes The Extraction of Waivers of Rights

"The 'unconstitutional conditions' doctrine, cf. *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994), limits the government's ability to exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary." *U.S. v. Scott* 450 F.3d 863, 866 (9th Cir 2006).

While the City attempts to justify its position as a method of protecting its tax payers. But this reason surely cannot be said to be a compelling governmental interest. Further, there are a myriad of alternatives to the restriction, such as not hiring those who have not completed a state certified police academy before being hired.

## III. CONCLUSION

The City of Oakland has failed to show by its motion that this plaintiff is a party to a parallel state proceeding. The City has failed to show "exceptional circumstances" exist to support federal abstention under *Colorado River*.

The plaintiff has a legal and factual basis for continuing the prosecution of her federal complaint. She has set forth cognizable claims under the FLSA and Section 1983. For each of these reasons, plaintiff respectfully requests that the defendant, City of Oakland's Motion to Dismiss And/or to Abstain be denied.

Respectfully submitted this 24th day of April, 2008

JON WEBSTER
Attorney for Plaintiff
Courtney Gordon