JOHN A. RUSSO, City Attorney, SBN 129729
RANDOLPH W. HALL, Asst. City Atty., SBN 080142
CHRISTOPHER KEE, Deputy City Atty., SBN 157758
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone:    (510) 238-7686 Fax:   (510) 238-6500
Email:  ckee@oaklandcityattorney.org
X03161/447935

Attorneys for Defendant
CITY OF OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY GORDON, an individual, on behalf of herself and those similarly situated,<br><br>Plaintiff-Petitioner,<br><br>vs.<br><br>CITY OF OAKLAND, a Municipal Corporation,<br><br>Defendant-Respondent. | Case No. C08-01543 WHA<br><br>**DEFENDANT CITY OF OAKLAND'S MOTION TO DISMISS AND/OR TO ABSTAIN: REPLY MEMORANDUM**<br><br>Date:      May 15, 2008<br>Time:      8:00 a.m.<br>Courtroom:    9 |

## I.    INTRODUCTION

Plaintiff has filed an opposition to the defendant City of Oakland's Motion To Dismiss And/Or Abstain which fails to refute the City's showing that (1) there is no viable basis for her federal claims and (2) the Court should abstain from adjudicating her state claims because the identical causes of action are presently before the state appellate court in a parallel state court challenge to the same City policy.  As developed below, the City's motion should be granted.

## II.    LEGAL ARGUMENT

**A.    Plaintiff Has Failed To Allege A Violation Of The FLSA.**

While quoting extensively from various administrative rulings and the Federal Register, plaintiff, paradoxically, confirms the City's position:  that where, as here, an

DEFENDANT CITY OF OAKLAND'S
MOTION AND NOTICE TO DISMISS
AND/OR ABSTAIN REPLY MEMO.

- 1 -

C08-01543 WHA

1    employee receives the minimum wage, an agreement to repay training costs does not

2    violate the FLSA.  Opposition To Defendant City of Oakland's Motion To Dismiss

3    And/Or Abstain (Pl. Opp. Memo.) 7:22-11:17. The face of the complaint alleges that

4    plaintiff was paid between $33.25 and $34.92 an hour for the 18 months that she was

5    employed as a police officer.  See Complaint, paragraphs 24 and 25.  It also alleges

6    that $1950.00 was deducted from her final paycheck (Complaint, paragraph 6), but

7    there are no allegations that she did not receive at least the minimum wage in her final

8    check, as required under the FLSA.  Indeed, the check included with plaintiff's pleading

9    from January of 2008, which was plaintiff's last month with the City, indicates no

10   reduction at all.

11       Simple arithmetic shows that, even calculating in the $8,000 dollar

12   reimbursement which plaintiff claims she will be assessed, plaintiff was paid

13   substantially more than the minimum wage in each pay period for her entire tenure with

14   the department.  Under the very authorities cited by plaintiff, there is no violation of the

15   FLSA where an agreement to reimburse the employer for training costs does not result

16   in a wage below the minimum established under the FLSA.  Pl. Opp. Memo. at pp.9-10;

17   see also Heder v. City of Two Rivers Wisconsin, 295 F.3d 777, 782-783 (7th Cir. 2002);

18   Chao v. Bauerly, 2002 WL 1923716 (D. Minn. 2005).

19       In addition, plaintiff evidently concedes that she cannot seek an injunction

20   against future enforcement of the conditional offer.  Barrentine v. Arkansas-Best Freight

21   System, 750 F.2d 47, 51 (8th Cir. 1984).

22   **B.    Plaintiff Has Failed To State A Claim Under 42 U.S.C. Section 1983.**

23       Plaintiff concedes, as she must, that neither the FLSA nor state statutes can

24   provide the underlying basis for a claim under 42 U.S.C. section 1983.  Pl. Opp. Memo.

25   at 16:4-8.  Her remaining arguments do not state a violation of her federal constitutional

26   rights either.

**1.    There Are No Facts Sufficient To Support A 5th Amendment Claim.**

Plaintiff now claims that the state law provisions listed in her complaint as the basis for her section 1983 claims are actually the statutory basis for a property and/or liberty interest in support of her 5th Amendment claims.  Pl. Opp. Memo. at 14:18-15:26.

While that is not in fact what she has pleaded, this new basis for liability is in any event unavailing.  While property and liberty interests created under state law may of course provide the basis for a procedural or substantive due process claim, plaintiff's Second Cause of Action does not state such a claim. Plaintiff does not allege that she suffered the deprivation of a liberty or property interest without notice and an opportunity to be heard, which are the essential elements of a due process cause of action. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  Nor could she, insofar as the reimbursement promise was part of her conditional job offer, pursuant to a collective bargaining agreement negotiated by her union, which provides both the notice[1] and the process necessary to pass constitutional muster.  See Armstrong v. Meyers, 964 F.2d 948, 950-951 (9th Cir. 1992)("A public employer may meet its obligation to provide due process through grievance procedures established in a collective bargaining agreement" even if union declines to process grievance.)

Her claims instead are that she had "a property interest in free and clear wage without just compensation (sic)"—a takings claim. Complaint, paragraph 32; Enquist v. Oregon Department of Agriculture, 478 F.3d 985, 1002 (9th Cir. 2007) (describing elements of a takings claim).  There are, however, no facts alleged to support an unconstitutional taking.  Plaintiff provides no authority whatsoever for the contention that an agreement to reimburse an employer pro-rata for training costs made pursuant to a collective bargaining agreement constitutes a taking without just compensation.  Plaintiff

---

[1] Plaintiff cannot plausibly argue that, by signing the conditional offer, she was not on notice of the possibility that she might be liable for the costs of her training should she leave her employment with OPD before serving five years.

1   persistently overlooks the fact that she was paid a substantial wage during the course of

2   her training, then, once she was able to put the benefit she received from her paid

3   training to work, received a salary of almost $35.00 an hour.  Thus, what she refers to

4   as a taking is in fact nothing more than a contractual agreement to repay the City for a

5   benefit <u>she</u> received. She herself was compensated handsomely, but now wants to

6   deny the City the reimbursement she agreed to when she was hired.    These

7   circumstances constitute the <u>reverse</u> of a taking—the money at issue is compensation

8   that <u>plaintiff owes the City</u>, and the terms under which it is to be repaid are contractual

9   obligations she agreed to at the time of her hire.  The City is unaware of any authority

10  whereby plaintiff's refusal to honor her contract supports a claim under the takings

11  clause.

12          **2.      There Are No Facts To Support A 1st Amendment Claim.**

13          Plaintiff has provided no authority for the proposition that a contractual

14  agreement to reimburse training costs violates a 1st Amendment right to "migrate or

15  leave her employment".  Pl. Opp. Memo. at 16:9-13.

16          The City notes at the outset that, to the extent that plaintiff is claiming a

17  deprivation of a constitutional right to travel, the cases do not appear to locate the

18  textual source for such a right in the 1st Amendment.  <u>See</u> <u>Attorney General of New</u>

19  <u>York v. Soto-Lopez</u>, 476 U.S. 898, 901-902 (1986); <u>Saenz v. Roe</u>, 526 U.S. 489, 498

20  (1999).

21          Regardless of the source of the right, it is not a basis for liability in this case.

22          The "right to travel" under Supreme Court jurisprudence has "at least three

23  different components." <u>Saenz v. Roe</u>, 526 U.S. at 500. It "protects the right of a citizen

24  of one State to enter and to leave another state, the right to be treated as a welcome

25  visitor rather than an unfriendly alien when temporarily present in the second State, and

26  for travelers who elect to become permanent residents, the right to be treated like other

1   citizens of that State." Id.

2       It is hard to see how any of these components are implicated here.   The

3   reimbursement agreement is substantially similar to residency requirements imposed on

4   municipal employees that have been upheld against constitutional challenges based on

5   impairment of a right to travel.   See e.g. McCarthy v. Philadelphia Civil Service

6   Commission, 424 U.S. 645, 646-647 (1976). The reimbursement agreement is in fact

7   less onerous than those residency requirements found to be constitutional.  This is so

8   because in the residency cases the benefit—public employment—could be taken away

9   entirely upon exercise of the right to travel.  Here, plaintiff may choose to leave her job

10  and to travel elsewhere—she merely has to repay the city for the costs of her training.

11      Continuing the residency analogy further, McCarthy establishes that a public

12  employer may impose a limitation on a right to travel if there is a rational basis for the

13  limitation.  McCarthy, 424 U.S. at 645-646.   Here, the face of the complaint reveals that

14  the City and the union negotiated the reimbursement provision as a preventive measure

15  to stop police officers from obtaining top quality training and POST certification in the

16  Oakland Police Academy for free, but then going elsewhere to put that benefit to work.

17  See Complaint, Appendix A of the MOU at Article VI (Police Officer Trainee Training

18  Costs). As noted in the City's opening papers, requiring a term of service for training is

19  hardly uncommon (see. Def. Memo. at 3:10-16); and has survived constitutional

20  challenge in the 9th Circuit, albeit, not as a restraint of travel.  See e.g. U.S. v. Citrin,

21  972 F.2d 1044 (9th Cir. 1992).  The City notes once again Judge Easterbrook's not-so-

22  rhetorical question: "If an employer may require employees to pay up front, why can't an

23  employer bear the expense but require reimbursement if an early departure deprives

24  the employer of the benefit of its bargain?" Heder v. City of Two Rivers, 295 F.3d at

25  781.  Plaintiff does not contend, nor could she, that the City could not require applicants

26  to pay up front for the costs of their training; there is nothing unconstitutional about

DEFENDANT CITY OF OAKLAND'S          - 5 -                    C08-01543 WHA
MOTION AND NOTICE TO DISMISS
AND/OR ABSTAIN REPLY MEMO.

imposing a service requirement, after which, all debts are forgiven.  Such a conditional arrangement is hardly coercive in the constitutional sense (see e.g. Sherbert v. Verner, 374 U.S. 398, 410 (1974)) and is most certainly rational.   Plaintiff fails to state a claim under a "right of travel" theory.

### 3.     Plaintiff Cannot State A Claim Under The Privileges And Immunities Clause

Plaintiff's complaint only makes reference to the Privileges and Immunities Clause found in Article IV section 2 of the federal constitution.  See Complaint, paragraphs 32 and 34.  Her opposition now appears to suggest her claim also rests on the Privileges and Immunities Clause of the 14th Amendment.  Pl. Opp. Memo. at 16:12-13. Regardless of the basis for her claims—as pleaded, or the new grounds in her opposition—they must be dismissed.

As to Article IV section 2, "[d]iscrimination on the basis of out of state residency is a necessary element of a claim under the Privileges and Immunities Clause." Russell v. Hug, 275 F.3d 812, 821 (9th Cir. 2002).  There are no such allegations in the complaint, and dismissal is warranted as to that claim.

As to the 14th Amendment, as noted, that basis was not advanced in the complaint.  Assuming that the court is inclined to consider a basis for liability not pleaded, it is in any event fatally flawed, because there are no sufficient allegations that plaintiff, as a resident of the State of California, was treated any differently from any other resident who might have applied for the position of a police officer with the Oakland Police Department.  Russell v. Hug, 275 F3d at 822.[2]

---

[2] The City notes in passing the view of the privileges and immunities clause of the 14th Amendment among commentators generally, one of whom described it as "the cadaver that…was left in the Slaughter House cases." Paculian v. George, 229 F.3d 1226, 1229 (9th Cir. 2000).

DEFENDANT CITY OF OAKLAND'S
MOTION AND NOTICE TO DISMISS
AND/OR ABSTAIN REPLY MEMO.

- 6 -

C08-01543 WHA

**4.     Plaintiff Cannot Show Any Basis For Liability Under The 'Unconstitutional Conditions Doctrine.**

In what is evidently a "catch-all" contention, plaintiff claims finally that her section 1983 claims may go forward under the "unconstitutional conditions" doctrine.  Pl. Opp. Memo. at 14-17.  As developed above and in the City's initial papers, there is nothing about the reimbursement agreement that gives rise to any waiver of a constitutional right such that the unconstitutional conditions doctrine is implicated.  Indeed, even under plaintiff's construction, the conditional job offer does not require a waiver of rights under the takings clause of the 5th Amendment, or the privileges and immunities clause of either Article IV or the 14th Amendment.  At most, of the rights enumerated in the complaint, the only even arguable right implicated is the "right to migrate", which, as shown above, is not actionable under these facts.

**C.     This Court Should Abstain From Consideration Of Plaintiff's State Law Claims.**

Plaintiff has misconstrued the City's motion for abstention.  The City, at least in its initial motion, only asked the court to abstain with respect to plaintiff's state law claims, not her federal claims.   Now that plaintiff has clarified the basis for her federal claims, and their fundamental flaws are manifest, it appears that this court could and should dismiss the state law claims under the auspices of 28 U.S.C. section 1367(c)(3) because the federal claims that provide the basis for federal jurisdiction themselves must be dismissed.  Moreover, plaintiff's state law claims are without question "novel" issues of state law, which provides an additional reason to decline supplemental jurisdiction.  28 U.S.C. section 1367(c)(1).  While plaintiff asserts her claims are not novel, it is worth noting that not a single case supports her state law theories of liability; indeed, the same legal theories were rejected in the <u>Hassey</u> suit on summary judgment.

As to the City's abstention motion, plaintiff's opposition fails to show why abstention is not appropriate under the <u>Colorado River</u> doctrine.

DEFENDANT CITY OF OAKLAND'S                    - 7 -                    C08-01543 WHA
MOTION AND NOTICE TO DISMISS
AND/OR ABSTAIN REPLY MEMO.

1   Plaintiff's initial contention that the state law challenge to the reimbursement

2   agreement is not a parallel proceeding for purposes of abstention is unpersuasive.  Pl.

3   Opp. Memo. at 2:20-3:24. While it is true that the plaintiffs are different as between the

4   state and federal actions, the cases are in every other respect identical.  Indeed, it

5   would appear to be only an accident of timing that plaintiff here was not a part of the

6   Hassey case insofar as the Hassey plaintiffs attempted to bring their case "on behalf of

7   others similarly situated"—a denomination that certainly would apply to Ms. Gordon.

8   That is sufficiently "parallel" for purposes of abstention.  Fireman's Fund Insurance Co.

9   v. Quackenbush, 87 F.3d 290, 297 (9th Cir. 1996) ("exact parallelism is not required. It is

10   enough if the two proceedings are substantially similar.")

11   Nor does plaintiff's discussion of the Colorado River factors compel the court to

12   avoid abstention.

13   Plaintiff is correct that the first two factors in the Colorado River analysis are not

14   present here—the City did not argue as much.  As to the question of piecemeal

15   litigation, plaintiff ignores the critical point of parallelism between the state and federal

16   actions:  the identical causes of action now claimed against the City with respect to the

17   same policy have already been adjudicated adversely to the Hassey plaintiffs, and are

18   on review before the court of appeal. Indeed, plaintiff concedes that the Hassey case is

19   "clearly more developed", a factor weighing in favor of abstention.  Thus, prior litigation

20   by plaintiff's counsel has already created piecemeal litigation—the same policy is under

21   attack in both state and federal courts, thus giving rise to the possibility of conflicting

22   verdicts as between the state and federal fora.  Abstention as to the state law claims will

23   ameliorate that issue—once the state court of appeal issues its ruling, the viability of

24   plaintiff's state law theories will be established one way or the other.

25   Plaintiff is also incorrect as to the "rule of decision" factor.  Once again, the City

26   only seeks abstention as to the state law claims—the rule of decision as to those

DEFENDANT CITY OF OAKLAND'S        - 8 -        C08-01543 WHA
MOTION AND NOTICE TO DISMISS
AND/OR ABSTAIN REPLY MEMO.

1  causes of action is unquestionably a matter of state law. Similarly, plaintiff

2  misconstrues the question of the adequacy of the state court proceedings. Plaintiff

3  cannot seriously contend that the California Court of Appeal is not an adequate forum

4  for adjudication of the identical state law claims that she has raised in this suit, but that

5  are presently before the state court in the Hassey appeal.

6      In addition, plaintiff ignores completely the question of "forum shopping" which

7  was important in Fireman's Fund Insurance Co. v. Quackenbush, 87 F.3d at 297. As

8  noted in the City's initial papers, plaintiff's counsel here has brought similar challenges

9  to similar policies in several jurisdictions around the state. In the present case, of

10 course, he lost the Hassey case in state court, but, before the ink was dry, filed this

11 matter in the federal court, raising the identical claims. There is certainly more than a

12 suggestion of forum shopping under these circumstances.

13     Plaintiff makes much of the 9th Circuit opinion in Green v. City of Tucson, 255

14 F.3d 1086 (9th Cir. 2001). Her reliance is misplaced. The court in that case, which

15 involved the Younger abstention doctrine, expressly stated that it had "no occasion" to

16 decide the applicability of the Colorado River doctrine. Id. at 1097, fn. 14.

17     Finally, the City reiterates that it is only seeking abstention as to plaintiff's state

18 law claims. The state law issues raised in this matter will likely be resolved in the

19 parallel Hassey case no more than 90 days after the matter is submitted on May 13th,

20 when oral argument is concluded in the state court of appeal. See In Re Shafter-Wasco

21 Irr. Dist., 55 Cal. App. 2d 484, 487 (1942). A dismissal of the state law claims under

22 Colorado River, without prejudice, would leave open the possibility of amending the

23 complaint (assuming, of course, there is still a federal complaint to amend), to add the

24 state law claims. Plaintiff will not be denied her day in court—if the legal basis for her

25 claims survives the state court of appeal, then she can of course urge them here.

26

DEFENDANT CITY OF OAKLAND'S          - 9 -          C08-01543 WHA
MOTION AND NOTICE TO DISMISS
AND/OR ABSTAIN REPLY MEMO.

1

### III.    CONCLUSION

2       Plaintiff has failed to show a viable basis for her claims under federal law.

3   Moreover, she has not shown persuasively why this court should not abstain from

4   considering her state law causes of action, given that identical claims are before the

5   state court of appeal.    For these and all the foregoing reasons, the City respectfully

6   urges this court to grant its motion, and to dismiss this case, or, alternatively, if any

7   federal claims survive, abstain from considering the state law claims.

8   Dated:  May 1, 2008

9                                       JOHN A. RUSSO, City Attorney
                                        RANDOLPH W. HALL, Assistant City Attorney
10                                      CHRISTOPHER KEE, Deputy City Attorney

11

12                      By:    _____/S/_____

13                             Attorneys for Defendant
                               CITY OF OAKLAND
14

15

16

17

18

19

20

21

22

23

24

25

26