United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY GORDON,<br><br>  Plaintiff,<br><br> v.<br><br>CITY OF OAKLAND,<br><br>  Defendant.<br>_____/ | No. C 08-01543 WHA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND VACATING HEARING** |

## INTRODUCTION

In this putative class action, defendant moves to dismiss all plaintiff's claims. Plaintiff has stated no cognizable federal claim. This order declines to exercise subject-matter jurisdiction over plaintiff's remaining state-law claims. Accordingly, defendant's motion is **GRANTED**. There hearing on this motion is hereby **VACATED**.

## STATEMENT

In the fall of 2005, plaintiff Courtney Gordon applied to the City of Oakland to become a police officer trainee (Compl. ¶ 10). Gordon soon received a letter from Lieutenant Michael Johnson of the Oakland Police Department informing her that her application had been accepted subject to the stated conditions of the letter (*id*. at Exh. A):

> You must pass the required psychological test(s), medical examination(s), the remainder of the background investigation, and accept the training reimbursement provisions as specified below.
>
> Reimbursement provisions. You may be required to reimburse the City of Oakland for training expenses. Reimbursement

would be required in the event you voluntarily terminate your employment with the Oakland Police Department, according to the following schedule:

    Before the end of year 1 - 100% repayment of $8,000.

    Before the end of year 2 - 80% repayment of $8,000.

    Before the end of year 3 - 60% repayment of $8,000.

    Before the end of year 4 - 40% repayment of $8,000.

    Before the end of year 5 - 20% repayment of $8,000.

The letter included a signature block form that stated, "[p]lease advise whether you accept this condition offer" (*ibid.*). Gordon checked the "yes" box and signed the conditional offer of employment on November 5, 2005.

    Gordon was hired, successfully completed her police training, and was sworn in as a police officer in June of 2006 (*id.* at ¶ 16). Before beginning her second year as a police officer, Gordon resigned in January 2008 (*ibid.*). Upon her resignation, Gordon was informed that she would be required to reimburse the city $6,400 — *i.e.*, 80% of $8,000 — for part of her training expenses (*id.* at ¶ 17). Gordon alleges the city then withheld $1,950.34 from her last paycheck as partial payment for the $6,400. While she was employed as a police officer, Gordon maintains she was paid at an hourly rate of between $33.25 and $34.92 (*id.* at ¶ 24). During her time in training, her hourly rate was 10% less than the base salary for a full-time police officer.

    Gordon filed this putative class action on March 20, 2008, alleging violations of the Fair Labor Standards Act, deprivation of civil rights under 42 U.S.C. Section 1983, and violations of various state-law claims. In particular, Gordon alleges that in her last week of work she was deprived of the federal minimum in violation of FLSA. Gordon purports to represent all other former police officers who have similarly been required to pay for their training expenses after resigning before five years. Defendant now moves to dismiss.

**ANALYSIS**

**1.  LEGAL STANDARD.**

    A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. The Supreme Court has recently explained that "[w]hile a complaint attacked

2

by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (May 21, 2007) (citations and alterations omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Although materials outside of the pleadings should not be considered, a district court may consider all materials properly submitted as part of the complaint, such as exhibits. *Hal Roach Studios v. Richard Feiner and Co., Inc.*, 896 F.2d 1542,1555 n.19 (1990).

**2. THE FLSA.**

The United States Department of Labor has adopted several regulations in regards to FLSA. One such regulation is 29 C.F.R. 531.35, which provides in pertinent part:

> Whether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the 'kick-back' is made in cash or in other than cash.

Although the Ninth Circuit has yet to specifically address the validity of employee reimbursement provisions under FLSA, it has interpreted FLSA as requiring employers to pay a minimum wage at all times for all hours worked. *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999). Other circuits have expressly found that an employee-reimbursement provision where an employee's wages are deducted from their pay check does not violate FLSA as long as the deduction does not does not result in pay below the minimum wage. *See Mayhue's Super Liquor Stores, Inc. v. Hodgson, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) ("Whether he pays the 'valid debt' out of his wages or other resources, his effective rate of pay is reduced by the amount of such debts. When it is reduced below the required minimum wage, the law is violated."); *see also Heder v. City of Two Rivers, Wisconsin*, 295 F.3d 777, 782–83 (7th Cir. 2002).

3

Gordon has not sufficiently alleged any violation of FLSA. The complaint asserts Gordon was paid between $33.25 and $34.82 over the eighteen month period she was employed with the city (Compl. ¶¶ 24–25). The minimum wage established under FLSA for this period was $5.85. 29 U.S.C. 206. Gordon has not shown any single pay period where she was paid below the federal-minimum wage. Her conclusory statements of law are not enough. Significantly, Gordon does allege that $1,950 was deducted from her last pay check in January 2008, but she does not show how she received anything below the minimum wage for this period. The January 2008 pay check, which was attached to the complaint, shows that Gordon was paid a total of $1,269.78 for 120 total hours worked, meaning she was paid an hourly rate of approximately $10.58. This is well above the minimum wage established by FLSA. Gordon has simply pled no facts supporting any cognizable claim under FLSA. Her FLSA claim must thus be dismissed.

### 3. SECTION 1983 CLAIM.

The complaint next confusingly alleges Gordon was deprived of her civil rights protected by: (a) the First Amendment; (b) the privileges and immunities clause of Article IV, Section 2; (c) the Fourth and Fifth Amendments; and (d) the "unconstitutional-conditions" doctrine.

#### A. The First Amendment.

The only explanation Gordon gives for her claim that her First Amendment rights were violated is "[t]he First Amendment to the United States Constitution provides the plaintiff and those similarly situated with the right to associate freely" (*id*. at ¶ 32). None of the facts alleged in the complaint, however, demonstrates that any of the city's alleged practices have deprived her from associating with anyone. In her opposition to this motion, Gordon does state that the conditional offer to become a police trainee interfered with "plaintiff's right to associate with others" (Br. 16). No authority has been provided to support this proposition. Gordon's First Amendment rights were not violated.

4

### B. The Privileges and Immunities Clause.

The complaint next alleges in the most general of terms that "Article IV, Section 2 of the Privileges and Immunities Clause of the Constitution encompasses the right of plaintiff to resettle and to find a new job" (Compl. ¶ 32). How this right was violated, the complaint fails to say. The purpose of the Privileges and Immunities Clause of Article IV is to "place the citizens of each state upon the same footing with citizens of other states, so far as the advantages resulting from citizenship in those states are concerned." *International Org. of Masters, Mates & Pilots v. Andrews*, 831 F.2d 843, 845 (9th Cir. 1987). Nothing in Gordon's complaint even remotely suggests that citizens of other states were discriminated by the city due to their citizenship.

Although the complaint only makes reference to the Privileges and Immunities Clause of Article IV, Gordon's opposition appears to suggest that the city has also violated her rights under the Privileges and Immunities Clause of the Fourteenth Amendment. This argument has no merit. The Privileges and Immunities Clause of the Fourteenth Amendment "requires, at the least, a showing of interference with a right of national citizenship, such as the right to travel. Thus, states may not discriminate against residents on the ground that they are newly arrived." *Russell v. Hug*, 275 F.3d 812, 822 (9th Cir. 2002). Once again though, there is no allegation that Gordon was treated any differently than citizens from other states.

### C. The Fifth and Fourteenth Amendments.

In another blind reach, Gordon alleges her Fifth and Fourteenth Amendments were violated by the city. It is unclear from the complaint what the basis for this claim is. All the complaint says is "[t]he Fifth and Fourteenth protect the plaintiff's property interest in free and clear wage payment without just compensation" (Compl. ¶ 32). In any case, Gordon has not stated a cognizable claim. It is possible Gordon intended to allege that the reimbursement provision amounted to a taking by the city. But Gordon has cited to no authority or made no argument to show how an agreement that requires an employee to repay an employer for training expenses constitutes a taking without just compensation.

5

1   In her opposition Gordon contends that it was the property interests established by the
2   various state-law claims specified in her complaint that gave rise to her Fifth and Fourteenth
3   Amendment due process claims. While Gordon is correct that a Section 1983 claim can be
4   grounded on the "deprivation of state-created liberty or property interests," she has not alleged
5   that she was not given any notice or opportunity to be heard before any property interest was
6   taken away. *Davis v. Sherer*, 468 U.S. 183, 193 n.11 (1984). Significantly, the conditional
7   offer clearly states that Gordon may be required to reimburse the city if she leaves before
8   completing five years as a police officer. She signed this agreement *before* becoming a police
9   trainee. Gordon was given her full due process rights.

### D.   Unconstitutional-Conditions Doctrine.

In a last ditch effort, Gordon alleges her Section 1983 claim is viable under the "unconstitutional-conditions" doctrine. "The 'unconstitutional conditions' doctrine limits the government's ability to exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary." *U.S. v. Scott*, 450 F.3d 863, 866 (9th Cir. 2006). Gordon has not shown, however, that the reimbursement provision amounted to a waiver of any constitutional right. As Judge Frank Easterbrook of the Seventh Circuit put it in *Heder*, 295 F.3d at 781:

> If an employer may require employees to pay up front, why can't the employer bear the expense but require reimbursement if an early departure deprives the employer of the benefit of its bargain? A middle ground also would be feasible (and lawful): The employer could require the worker to pay for his own training but lend the worker the money and forgive repayment if he sticks around.

The unconstitutional-conditions doctrine does not apply.

### 4.   STATE-LAW CLAIMS.

Gordon next brings seven state-law claims against Oakland. The Court takes judicial notice that plaintiff's counsel made virtually identical allegations in state court relating to the police department's reimbursement program in the matter of *City of Oakland v. Hassey*, Alameda County Case No. 2001-027607. The state court granted summary judgment to the city

6

1  and the matter is currently on appeal before the First Appellate District of the California Court
2  of Appeal (Defendant's Request for Jud. Not. Exh. 1–3).

3  Gordon has stated no cognizable federal claim. A district court may decline to exercise
4  supplemental jurisdiction over a state-law claim if, as here, it "has dismissed all claims over
5  which it has original jurisdiction." 28 U.S.C. 1367(c)(3). Declining jurisdiction seems
6  particularly appropriate here where Gordon's state-law claims are currently on appeal in state
7  court. *See Hays County Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir. 1992) ("Adjudicating
8  state-law claims in federal court while identical claims are pending in state court would be a
9  pointless waste of judicial resources.") Accordingly, this order declines to exercise jurisdiction
10 over Gordon's remaining state-law claims.

**CONCLUSION**

For the reasons stated above, Gordon's complaint is **DISMISSED**. Gordon may move within fourteen calendar days for leave to amend. Any such motion should be accompanied by a proposed pleading and the motion should explain why the foregoing problems are overcome by the proposed pleading. Plaintiff must plead her best case. Failing such a motion, judgment will be entered for defendant.

**IT IS SO ORDERED.**

Dated: May 16, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7