1 | Jon Webster (Cal. State Bar No. 138786)
Michael Devin (Cal. State Bar No. 107630)
2 | THE LAW OFFICES OF JON WEBSTER
1985 Bonifacio Street, Suite 102
3 | Concord, CA 94520-2264
Telephone:   (925) 686-8790
4 | Facsimile:    (925) 686-8795

5

Attorneys for Plaintiff:
6 | COURTNEY GORDON

7

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| COURTNEY GORDON, an individual, on behalf of herself and those similarly situated,<br><br>Plaintiff-Petitioner,<br><br>v.<br><br>CITY OF OAKLAND, a Municipal Corporation, and DOES 1 through 50, inclusive,<br><br>Defendant-Respondent. | CASE NO. C 08-01543 WHA<br><br>**PLAINTIFF-PETITIONER'S NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ATTORNEY IN SUPPORT OF MOTION**<br><br>FRCP, Rule 15 (a)(2)<br><br>DATE:          July 10, 2008<br>TIME:           8:00 A.M.<br>COURTROOM:   Hon. William Alsup |

**TO ALL PARTIES AND THEIR ATTORNEYS:**

On July 10, 2008 at 8:00 a.m., in the courtroom of the Honorable William Alsup, United States District Judge, Plaintiff-Petitioner, COURTNEY GORDON, will seek leave of court to amend her complaint in this action, and to file the amended complaint which is attached to this Notice of Motion.

The basis for making this motion is that on May 16, 2008, The Honorable William Alsup ordered that Plaintiff-Petitioner's complaint be dismissed, and that Plaintiff-Petitioner may move within fourteen calendar days for leave to amend, provided that the

---

**NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ATTORNEY IN SUPPORT OF MOTION**
GORDON V. CITY OF OAKLAND          CASE NO. C 08-01543 WHA                          PAGE 1 OF 4

1  motion was accompanied by a proposed pleading and an explanation why the amended
2  complaint overcame the objections to the original complaint.

3      The motion for leave to amend is supported by the memorandum of points and
4  authorities and declaration of counsel, contained herein, and the attached proposed
5  amended complaint.

6      Respectfully Submitted.

7  DATED: May 30, 2008

8
9                          JON WEBSTER
                           Attorney for Plaintiff-Petitioner
10

11              **MEMORANDUM OF POINTS AND AUTHORITIES**

12 1.  Once the time to amend as of right has passed, a party may amend its pleading only
13     with the consent of the other party or upon leave of the court, and the court "should
14     freely grant leave to amend when justice so requires."

15     **Federal Rules of Civil Procedure, Rule 15(a)(2)**.

16

17 2.  The Plaintiff -Petitioner is responding to the express order of the court providing
18     that an amended complaint may be permitted by leave of court, and has a
19     meritorious claim as shown by the declaration of Jon Webster and proposed
20     Amended Complaint attached hereto.  For this reason, amendment should be
21     permitted. {*See **Bautista v. Los Angeles County (9th Cir. 2000) 216 F 3d 837, 841**.*}
22     Respectfully Submitted.

23

24 DATED: May 30, 2008

25
26                          JON WEBSTER
                           Attorney for Plaintiff-Petitioner
27

28

**DECLARATION OF ATTORNEY IN SUPPORT OF MOTION**

1.      Your declarant is Jon Webster. I am an attorney licensed to practice in California, Hawai'i and Arizona, and I am admitted to practice before the courts in the Northern District of California, among other courts. I am the attorney of record for the Plaintiff-Petitioner COURTNEY GORDON in this action, and I have personal knowledge of the facts stated in this declaration. If called as a witness I would testify competently as follows:

2.      I have attached a true and correct copy of a proposed First Amended Complaint in response to the order of this Court which dismissed the original Complaint, (See, Exhibit 1") but which also provided that Plaintiff-Petitioner may seek leave to file an amended complaint.

3.      In the proposed First Amended Complaint, I have eliminated all state causes of action. I have also eliminated the action based on a violation of 42 U.S.C. §1983. I have averred on behalf of the Plaintiff-Petitioner only a single cause of action sounding as a violation of the federal Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq.*)

4.      The proposed First Amended Complaint identifies the wages paid the Plaintiff by the City of Oakland in her first and final pay periods, calculates the minimum wage required to be paid the Plaintiff in those work weeks, and depicts how application of the City's training reimbursement policy constitutes cognizable violations of the FLSA.

5.      I have further delineated how the City's withholding of the Plaintiff-Petitioner's accrual check for compensatory time off resulted in a distinct violation of the FLSA, to wit, 29 U.S.C. §207(c)(4)(B).

6.      In addition thereto, and as a new development included in the proposed First Amended Complaint, on May 29, 2008, Plaintiff-Petitioner paid, under protest and with a reservation of all her legal rights, the City its claimed training reimbursement in full, i.e., $5,268.03. True and correct copies of the Plaintiff's cashier's check and the City's receipt for payment are attached to the Amended Complaint.

///

1    7.    The proposed First Amended Complaint now contains short, clear statements
2    of the facts leading to the claims of Plaintiff-Petitioner..

3    8.    As noted by the City Attorney in his Motion to Dismiss the Plaintiff's
4    complaint, I have represented numerous other former law enforcement officers throughout
5    this state on similar claims. In some of these claims, public entities are seeking to recoup
6    up to $60,000 per employee if they leave the employment of the public agency after
7    completing that agencies police academy. As this Court has previously noted, the Ninth
8    Circuit has yet to rule on the lawfulness of this practice. However, two separate United
9    States Department of Labor Wage and Opinion Letters have stated that such a practice is
10   unlawful under the FLSA to the extent it would deprive the employee of their right to either
11   the federal minimum wage or their right to contractual overtime. (See, Exhibits 2 and 3,
12   attached hereto). These were not even discussed in the case cited by the City in its original
13   motion, i.e, *Heder v. City of Two Rivers,*(7th Cir. 2002) 295 F.3d 777. A ruling by this
14   Court and/or the Ninth Circuit would resolve numerous cases beyond this case.

15   8.    For the reasons set forth above, and as stated in the proposed First Amended
16   Complaint attached hereto, Plaintiff-Petitioner has a meritorious claim and the Court should
17   grant leave to her to file the Amended Complaint.

18       I declare under penalty of perjury under the law of the State of California that the
19   foregoing is true and correct, and that this declaration was executed in Concord, California,
20   on the date below.

21       Respectfully Submitted.

22   DATED: May 30, 2008

23
24                                            JON WEBSTER
                                              Attorney for Plaintiff-Petitioner
25
26
27
28

**EXHIBIT 1**

1  Jon Webster (Cal. State Bar No. 138786)
   Michael Devin (Cal. State Bar No. 107630)
2  THE LAW OFFICES OF JON WEBSTER
   1985 Bonifacio Street, Suite 102
3  Concord, CA 94520-2264
   Telephone:  (925) 686-8790
4  Facsimile:  (925) 686-8795

5
   Attorneys for Plaintiff:
6  COURTNEY GORDON

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10
   COURTNEY GORDON, an individual, on        CASE NO.   C 08-01543 WHA
11 behalf of herself and those similarly
   situated,                                 [PROPOSED]
12
              Plaintiff-Petitioner,          FIRST AMENDED COMPLAINT FOR
13                                           DECLARATORY RELIEF AND DAMAGES
       v.
14                                           VIOLATION OF THE FEDERAL LABOR
   CITY OF OAKLAND, a Municipal              STANDARDS ACT [29 U.S.C. §§ 201 -
15 Corporation, and DOES 1 through 50,       219, TO WIT 29 C.F.R. § 531.35]
   inclusive,
16
              Defendant-Respondent.
17

18                                           JURY TRIAL DEMANDED

19

20                        JURISDICTION

21     1.     Plaintiff-Petitioner, COURTNEY GORDON, brings this action against the

22 Defendant-Respondent, CITY OF OAKLAND, (hereinafter "the City") on behalf of herself

23 and all those similarly situated, pursuant to Section 16(b) of the federal Fair Labor

24 Standards Act (29 U.S.C. §§ 201, 216(b) et seq, hereinafter "FLSA"). As a consequence,

25 this Court has original jurisdiction pursuant to 28 U.S.C. §1331.

26                           VENUE

27     2.     This Court is the proper venue in which to bring this action because the

28 defendant employer, the City, is located in this District and all actions complained of

1 | occurred in this District.

2 | ## FACTUAL ALLEGATIONS COMMON TO ALL CLASS MEMBERS
3 | ### (California Requirements Governing Peace Officer Training)

4 |     3.     Pursuant to California Penal Code, §§ 832.3, 832.4 and Title 11 Cal. Code
5 | Regs. §1005, anyone "who is first employed after January 1, 1975, shall successfully
6 | complete a course of training prescribed by the Commission on Peace Officer Standards
7 | and Training ("POST") before exercising the powers of a peace officer, except while
8 | participating as a trainee in a supervised field training program approved by the
9 | Commission on Peace Officer Standards and Training." After completing a POST certified
10 | police academy and the requisite field training program, the City generally awards a POST
11 | "Basic Certificate" that enables them to exercise peace office powers as provided by Cal.
12 | Penal Code, §830.1.

13 | ### (The City of Oakland's Training "Reimbursement" Policy)

14 |     4.     The City continuously recruits U.S. citizens from around the country to fill
15 | open positions for Police Officer Trainee, (hereinafter "POT"). A POT is an employee of
16 | the City who is assigned to attend the Oakland Police Academy because they do not poses
17 | a "Basic Certificate" as required under California law.

18 |     5.     To satisfy the requirements of Penal Code §§ 832.3, *et sea*, the City created
19 | its own police academy, staffed and operated by employees of the City; It is known as the
20 | Oakland Police Academy. A POT is paid to attend the Oakland Police Academy for a
21 | period of approximately twenty-six (26) weeks. After graduation, the POT is "promoted"
22 | to the position of Police Officer and is ordered to complete the required "Field Training
23 | Program" ("FTO") as required by POST. After successfully completing the FTO program,
24 | the City typically authorizes POST to issue the individual their POST "Basic Certificate"
25 | that enables them to independently utilize their peace officer powers as accorded by Cal.
26 | Penal Code, § 830.1, *et seq*. Plaintiff contends that the police academy training was a cost
27 | incurred, "primarily for the benefit of the employer" pursuant to 29 C.F.R. 531.3(d) and
28 | could not be passed on to Plaintiff and/or those similarly situated to Plaintiff.

1    6.    Since the late 1990's, the City and the collective bargaining unit for police

2    officers in the City, known as the Oakland Police Officers' Association ("OPOA"), have

3    entered into successive collective bargaining agreements ("CBA") whereby the City and

4    the OPOA agree that should an employee employed as a Police Officer who was originally

5    hired as a POT leave the employment of the City prior to completing five years of service

6    as a Police Officer, the City is entitled to collect up to $8,000 to "recoup" what the City

7    contends is its "costs" for training the individual at the Oakland Police Academy. A true

8    and correct copy of this reimbursement clause, generally referred to hereinafter as

9    "Appendix A," is attached hereto and labeled, "Exhibit A."

10    7.    In addition to setting reimbursement at $8,000 and authorizing additional

11    "collection fees," incurred in enforcing the "reimbursement" provisions, Appendix A of

12    the CBA ostensibly permits the City to seize the final paycheck of the employee who

13    terminates employment before the specified term set in the CBA. Such funds withheld are

14    then applied to reduce the reimbursement obligation the City claims the Police Officer

15    owes it.

16    8.    When a person applies to the City to become a POT, they are required to pass

17    a series of written, physical agility and oral examinations required by POST. If they are

18    successful, the City extends a *"Conditional Offer of Position as a Police Officer Trainee"*

19    ("the Conditional Offer") to the candidate. A true and correct copy of the Conditional Offer

20    is attached hereto and labeled, "Exhibit B." Like Appendix A, the Conditional Offer

21    restates that candidates applying for a position as a POT are required to "reimburse" the

22    City up to $8,000 plus collection fees should they leave the City's employment within five

23    years after being promoted from a POT to a Police Officer. This amount is reduced by 20

24    percent (20%) each year the employee provides the City services as a Police Officer.

25    ///

26    ///

27    ///

28    ///

1    9.    Plaintiff was a successful applicant for the position of a POT with the City.
2    On or about November 3, 2005, Plaintiff received a letter from Oakland Police Lieutenant,
3    Michael Johnson advising her that she had been a successful candidate, and that she would
4    be required to sign the Conditional Offer to be considered for hiring as a POT by the City.
5    On November 5, 2005, Plaintiff signed the Conditional Offer. On November 28, 2005, the
6    City hired Plaintiff as a POT and sent her to the Oakland Police Academy in order for her
7    to complete the POST mandated police academy.

8    10.    Plaintiff was not provided the option to go to another POST certified
9    academy despite the fact others exist in the state and, being operated by local community
10   colleges, are offered at less cost than that of the Oakland Police Academy. Further, Plaintiff
11   was not entitled to negotiate the terms of the Conditional Offer's repayment mandate.

12   **(Compensation Paid Plaintiff and Similarly Situated Police Officers by the City)**

13   11.    Pursuant to 29 U.S.C. §207(c), the City and the OPOA negotiated to provide
14   the Plaintiff, and those similarly situated, with compensatory time off in lieu of overtime.
15   If this time was not used, it would be paid at the then regular rate of the employee. Further,
16   pursuant to the terms of the CBA, Plaintiff was entitled to receive overtime at the rate of
17   one and one-half times her contractual rate of pay, and overtime was required to be paid
18   for certain specified holidays, including Martin Luther King Day. Pursuant to 29 U.S.C.
19   §207(c)(4)(B), upon Plaintiff's termination, the City would pay Plaintiff her earned
20   compensatory time off calculated at her then regular rate.  At the time of Plaintiff's
21   separation, she had accumulated 18.75 hours of unused compensatory time off. (See,
22   "Exhibit E")

23   12.    On June 2, 2006, following her graduation from the Oakland Police
24   Academy, the City promoted the Plaintiff from a position of a POT to that of a Police
25   Officer. The City then paid Plaintiff, and those similarly situated,$33.25 per hour for a total
26   weekly compensation of $1,330.00 per week.(See, "Exhibit C") However, by operation of
27   Appendix A and/or the Conditional Offer, the City then held a claim for "training cost
28   reimbursement" in the amount of $8,000 against this weekly wage.

1    13.    During Plaintiff's entire tenure of employment with the City, in no single
2  work week did Plaintiff, nor anyone similarly situated, earn more than $2,000.00.

3    14.    In the final work week Plaintiff worked for the City, the Plaintiff worked two
4  eight hour days, one being January 21, 2008, Martin Luther King Day, a holiday paid at
5  time and one-half rate. Plaintiff was compensated in the amount of 20 hours at $37.8025
6  per hour, or $756.05. The week prior, the Plaintiff had worked forty hours at the same rate
7  of pay for a total compensation of $1,512.09. Over these two weeks, the City paid Plaintiff
8  an educational incentive in the total amount of $117.33, consequently raising the earnings
9  of the Plaintiff in each work week by one-half thereof, or $58.67/$58.66. Thus, Plaintiff
10  earned $814.72 for her final work week, and $1,570.76 the week before. (See, "Exhibit D")
11  **(The Recovery of Training Costs Against Plaintiff and Those Similarly Situated)**

12    15.    The Plaintiff resigned from the employment of the City on January 25, 2008.
13  Immediately, the City withheld both her vacation accrual pay check ($1,295.57) and her
14  compensatory time off accrual check ($654.77). The City applied these withheld funds in
15  partial satisfaction of the $6,400 training reimbursement claim it held against Plaintiff
16  consistent with Appendix A and the Conditional Offer.

17    16.    On January 25, 2008, Peter D. Fitzsimmons, Manager, Fiscal Services
18  Division for the City notified Plaintiff by letter that the City was entitled to recover from
19  Plaintiff training reimbursement in the amount of eighty percent (80%) of the $8,000
20  training costs stipulated in Appendix A and the Conditional Offer, or $6,400.00. (See,
21  "Exhibit E"). Mr. Fitzsimmons further advised Plaintiff that the City was also seeking
22  payment of $339.46 as un-earned but paid out uniform allowance.[1]
23  ///
24  ///

[1]
27    This complaint does not challenge the recovery of any pro-rated uniform allowance
that was actually paid out to Plaintiff. Further, due to an apparent miscalculation by the City
28  of sums its claims it was due, the uniform allowance does not materially alter the
calculations made herein.

1       17.    On March 12, 2008, Plaintiff received a collection notice dated March 7,

2   2008, from S. Thurston, Collection Officer with the City. (See, "Exhibit F"). This letter

3   demanded Plaintiff immediately tender $5,268.03 by March 21, 2008. This figure equated

4   to $6.400.00 in training costs reduced by application of Plaintiff's compensatory time off

5   and vacation check seizure ($1,950.34), plus an additional $834.28 in "collection costs."

6       18.    Redacting the pro-rated uniform allowance not challenged herein, the City

7   was actually demanding Plaintiff pay it an additional $4,789.12 to satisfy the "training

8   reimbursement," and $478.91 in collection costs. On May 29, 2008, the Plaintiff submitted

9   a cashier's check in the full amount, ($5,268.03) to the City Collection Office. This check

10  was submitted by the Plaintiff marked, "Paid under protect, reserving all legal remedy."

11  (See, "Exhibit G")

12      19.    The City accepted the Plaintiff's check and provided Plaintiff with a receipt

13  marked, "Paid in full." (See, "Exhibit H").

14      20.    The federal minimum wage applicable to the Plaintiff until July 23, 2007 was

15  $5.15 per hour. On July 24, 2007 and thereafter, the applicable minimum wage was $5.85

16  per hour. The applicable contractual overtime rate for the Plaintiff in her final work week

17  was $52.38 ($34.92 x 1.5).

18

19  **COUNT ONE**<br>**[Violation of the Federal Minimum Wage]**

20      21.    Plaintiff avers that in Plaintiff's final week of work, she was entitled under

21  the FLSA to receive at least $$465.85. (This sum is calculated by multiplying 8 hours by

22  the federal minimum wage of $5.85 per hour, and adding to this 8 hours of contractual

23  overtime pay at the rate of $52.38). However, instead of receiving this pay, the City

24  required Plaintiff to pay, and Plaintiff has now paid $5,268.03 for "training reimbursement"

25  and "collection costs. This constituted a violation of 29 U.S.C. §206,

26      22.    Plaintiff avers the withholding of her compensatory time off check was a

27  prohibited deduction under the FLSA to wit, 29 U.S.C. §207(c)(4)(B).

28  ///

1    23.    Plaintiff further avers that the City's payment of her final work week's

2    earnings on the condition she pay the City its costs of police academy training was a

3    violation of the FLSA's requirement that the City pay "free and clear" and

4    "unconditionally" as required by 29 C.F.R. §531.35.

5    24.    Plaintiff further avers that the City's withholding of Plaintiff's vacation check

6    in the amount of $1,295.57 and Plaintiff's payment in the amount of $5,268.03 to the City

7    for training reimbursement when her final work week's wages protected by the FLSA were

8    $465.85 constitute a *de facto* deductions prohibited under the FLSA, to wit, 29 U.S.C.

9    §206, 29 C.F.R. §531.35, *Arriaga v. Florida Pacific Farms, LLC,* 305 F.3d 1228 (11th Cir.

10    2002); *Rivera v. Brickman Group, Ltd.* 2008 WL 81570 (E.D. Pa).

11    25.    Finally, Plaintiff desires this Court to declare the City's training

12    reimbursement policy as provided in "Appendix A" and the Conditional Offer an unlawful

13    waiver of 29 C.F.R. §531.35. (*Brooklyn Savings Bank v. O'Neil*, 328 U.S. 697 (1945);

14    *Barrentine v. Arkansas Best Freight System*, 450 U.S. 728 (1981)). As plead herein,

15    Plaintiff, and those similarly situated to Plaintiff, never make more than $2,000 per work

16    week. Consequently, even if reimbursement were to occur in the fourth and final year of

17    the minimum service requirement as stated in Appendix A and/or the Conditional Offer,

18    (thus applying the $2,000 "recoupment"), the employee would be deprived of their entire

19    their final work week's wage.

20    26.    In doing the things averred herein, the City has acted wilfully as defined in

21    29 U.S.C. §255(a).

22    **WHEREFORE,** Plaintiff prays for judgment as follows:

23    1.    For actual damages in the amount of Plaintiff's withheld

24         compensatory time off check, and

25    2.    For actual damages in the amount of $6,563.60 representing Plaintiffs

26         withheld vacation check and Plaintiff's cashier's check tendered to

27         the City under protest to fully pay the City's training reimbursement

28         demand, and liquidated damages thereon, and

3.   An additional amount as liquidated damages pursuant to 29 U.S.C. §216(b)

4.   For a declaration that Appendix A of the CBA constituted an unlawful waiver of the FLSA protections afforded Plaintiff and those similarly situated, and

5.   For a declaration that the Conditional Offer constitutes a waiver of the FLSA protections afforded to Plaintiff and those similarly situated, and further constitutes a violation of the FLSA's requirement that the City pay employees "free and clear" and "unconditionally."

6.   For prejudgment interest thereon, and

7.   For reasonable attorneys fees and costs of suit, and

8.   For such further relief as this Court may deem proper.

Respectfully submitted,

DATED: May 30, 2008

JON WEBSTER
Attorney for Plaintiff
COURTNEY GORDON

**EXHIBIT A**

## **APPENDIX A**

### UNIT PT BENEFITS/EXCLUSIONS

The City of Oakland, hereinafter referred to as "City", and the Oakland Police Officers' Association, hereinafter referred to as "OPOA", hereby agree that the provisions of this Memorandum of Understanding which apply to employees in Unit PT are as follows:

Preamble

Article I - General Provisions - Entire Article.

Article II - Direct Pay for Services.

A.    Salary    Persons employed as Police Officer Trainees will receive a salary that is ten percent (10%) less than the base salary attached to the entry level, A salary step for Police Officers on the PERS retirement system.

E.    Overtime.    Police Officer Trainees shall receive overtime in accordance with the provisions of the Fair Labor Standards Act. Accordingly, overtime shall be paid on all hours worked over one hundred and seventy-one (171) in the established twenty-eight (28) day work period. All overtime shall be paid in cash.

Article IV  Insurance Programs

A.    Insurance Programs.

1.    Health Insurance.

2.    Dental Insurance.

4.    Life Insurance.

Article V  Leaves and Holidays

C.    Leaves of Absence.

D.    Family Death Leave.

1.    Definition of Immediate Family.

33

2.    Entitlement.

Upon Approval of the department head or his/her designated representative, a Police Officer Trainee may be granted family death leave without pay up to an amount not to exceed five (5) working days.

ARTICLE VI  ALLOWANCES

A    Uniform Allowance.

1.    Initial Uniform Allowance.

2.    Annual Uniform Allowance.

Article VII - Self Improvement Incentive.  Nothing shall apply.

Article VIII - Special Provisions.  Nothing shall apply.

Article IX - Grievance Procedure.  Entire Article.

Article X - Resolution - Full Understanding - Non-Nullification and Duration. Entire Article.

Deferred Compensation.
In addition, City and the OPOA, in accordance with Treasury Regulations, Section 31.3121 (b) (7), hereby agree to adopt a deferred compensation plan for employees in Representation Unit T; such plan to be in accordance with the guidelines set forth in Internal Revenue Code Section 457.  Under this plan, the City will contribute 3.75% of each participating employee's wages including overtime to a deferred compensation plan administered by Great Western Savings and referred to by the administrator as an "Index Account".  Each participating employee will contribute an equivalent 3.75% of "wages", as that term is described above.  An employee will be immediately one hundred percent (100.0%) vested as to all contributions made on his/her behalf, whether by the employee or by the City.

Police Office Trainee Training Costs. The parties recognize that in the past a substantial number of persons have accepted the benefit of training at the Oakland Police Academy and then have voluntarily separated from service to join other safety agencies or have decided for personal reasons that police work is not their preference.  The purpose of this provision is to insure that the recruit either accept a commitment of service to the City or be responsible for costs associated with Academy training.  Thus the parties agree that any member who,

# EXHIBIT B

# OAKLAND POLICE DEPARTMENT

## CONDITIONAL OFFER OF POSITION AS A POLICE OFFICER TRAINEE

**Candidate:** Gordon, Courtney

**Social Security Number:** ' -7660

The City of Oakland Police Department hereby notifies you that you have been selected for a position as a Police Officer Trainee, subject to the following conditions: You must pass the required psychological test(s), medical examination(s), the remainder of the background investigation, and accept the training reimbursement provisions as specified below.

**Reimbursement provisions:** You may be required to reimburse the City of Oakland for training expenses. Reimbursement would be required in the event you voluntarily terminate your employment with the Oakland Police Department, according to the following schedule:

Before the end of year 1 - 100% repayment of $8,000.
Before the end of year 2 - 80% repayment of $8,000.
Before the end of year 3 - 60% repayment of $8,000.
Before the end of year 4 - 40% repayment of $8,000.
Before the end of year 5 - 20% repayment of $8,000.

**Additionally:** Police Officer Trainees shall be required, on or before the first day of employment, to reside within a geographic emergency zone that allows quick response from home to work. Individuals selected for hire will be required to certify and verify by declaration, under the penalty of perjury and risk of removal from consideration for employment, their knowledge of and compliance with this City of Oakland policy. (A list of the cities within the established residency zone is enclosed for your information.) Your signature acknowledges your understanding of this policy and your intention to comply with its provisions.

# CONDITIONAL OFFER OF POSITION AS A
# POLICE OFFICER TRAINEE

**Candidate:** Gordon, Courtney

**Social Security Number:**        -7660

Please advise whether you accept this conditional offer:

☑        **Yes, I accept this offer, and understand the conditions which attach to it.**

☐        **No, I am no longer interested in the position of Police Officer Trainee.**

Signature: _____        Date: 11/5/05 _____

Print Name: Gordon    Courtney    E
                (Last Name)    (First Name)    (Middle Initial)

Signature: _____        Date: 8 Nov 05
                Deputy Chief of Police

Keep one copy of this form for your records. Indicate your response, then sign the form and return the signed original within 7 working days of receipt. Failure to return the form will be considered a rejection of this offer and will result in your removal from further consideration for the position of Police Officer Trainee. Return the original to:

Personnel Section Commander
455 - 7th Street, Room 514
Oakland, California 94607

If you have questions, please contact the Recruiting and Background Investigations Unit Supervisor at (510) 238-3339.

# EXHIBIT C

Courtney E. Gordon

Employee No. 16039      Pay Period End Date   30-JUN-2006    SSN    XXX-XX-7660     Advice Date 06-JUL-2006

| Earnings | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| OTSX OPD Swn | 1.00 | 49.88 | 49.88 | 139.62 |
| Reg Sworn | 80.00 | 33.25 | 2660.16 | 3856.68 |
| Shift_Pay_3P | 80.00 | 2.08 | 166.32 | 315.92 |
| ML Meal Allo | 1.00 | 9.25 | 9.25 | 9.25 |
| Imputed Life | 0.00 | 0.00 | 0.44 | 0.88 |

| Deductions | Current | YTD |
|---|---|---|
| FIT | 533.94 | 5923.27 |
| MEDICARE | 41.71 | 521.45 |
| (CA) SIT | 174.39 | 1850.32 |
| OPOA LT Disab | 0.00 | 45.00 |
| OPOA Widow Orph | 0.00 | 5.00 |
| Union Due OPOA | 0.00 | 435.04 |

| Totals | Hours | Current | Year-to-Date |
|---|---|---|---|
| Gross Pay | | 2886.05 | 35971.66 |
| Pre Tax Dedn | | 0.00 | 1190.81 |
| Tax Dedn | | 750.04 | 8295.04 |
| Other Dedn | | 0.00 | 485.04 |
| Net Pay | | 2135.57 | 25999.89 |

| Leave Balances | Hours |
|---|---|
| Comp Time | 4.50 |
| Comp Day | 0.00 |
| Vacation | 30.00 |
| Settlement Leave | 0.00 |
| Sick Leave | 0.00 |
| Floating Holiday | 0.00 |
| Management Leave | 0.00 |
| Special Recognition Leave | 0.00 |
| Special Supervisors Leave | 0.00 |
| Executive Vacation Leave | 0.00 |
| Extra Vacation Day | 0.00 |
| Deferred OPOA OT | 0.00 |

| Information Elements | Current | YTD |
|---|---|---|
| Authorize LWOP | 0 | 0 |
| Comp Time Holiday Earned | 0 | 0 |
| CTC Comp Time Court Earne | 0 | 0 |
| CTE Comp Time Earned | 0 | 0 |
| CTR CT Earned Straight | 0 | 0 |
| DCAP Reimburse CY | 0 | 0 |
| DCAP Reimburse PY | 0 | 0 |
| Deferred OT OPOA Payout | 0 | 0 |
| Family Care LWOP | 0 | 0 |
| Family Death LWOP | 0 | 0 |
| FMLA LWOP | 0 | 0 |
| HCT Comp Time Hol Straigh | 0 | 0 |

| Information Elements | Current | YTD |
|---|---|---|
| Holiday Vacation Accrual | 0 | 0 |
| Maternity LWOP | 0 | 0 |
| Military LWOP | 0 | 0 |
| OCD Court Deferred OT | 0 | 0 |
| SLV Sick LWOP | 0 | 0 |
| STW Shift Trade Worked | 0 | 0 |
| SNP Suspension LWOP | 0 | 0 |
| UNP Unauthorized LWOP | 0 | 0 |
| VTN Voluntary LWOP | 0 | 0 |
| LV1 Workers Comp LWOP | 0 | 0 |
| CCB CT Court NonSworn | 0 | 0 |

| Accumulators | |
|---|---|
| Annual Hours Worked | 1143.50 |
| Fiscal Year Hours | 85.50 |
| Life To Date Hours | 1264.50 |

CITY OF OAKLAND
ONE FRANK H. OGAWA PLAZA
OAKLAND, CA 94612

**ADVICE DATE**     06-JUL-2006

**Deposit** *Two thousand one hundred thirty five and 57/100 Dollars*

******$2,135.57

**To the**

**Account of Courtney E. Gordon**

    Checking Account     XXXXXX2794    2135.57

# ***VOID***NON-NEGOTIABLE***VOID*

# ***THIS IS NOT A CHECK***

# EXHIBIT D

Courtney E. Gordon

Employee No. 16039 | Pay Period End Date 25-JAN-2008 | SSN | XXX-XX-7660 | Advice Date 31-JAN-2008

| Earnings | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| Reg Sworn | 48.00 | 34.92 | 1676.20 | 4469.88 |
| IN2 Educ PER | 0.00 | 0.00 | 117.33 | 340.83 |
| Shift Pay 1s | 60.00 | 2.88 | 172.90 | 633.86 |
| HDP Holiday | 12.00 | 34.92 | 419.05 | 1117.47 |

| Deductions | Current | YTD |
|---|---|---|
| FIT | 253.06 | 2200.22 |
| MEDICARE | 34.59 | 197.8 |
| SIT | 66.71 | 700.9 |
| Blue Shield | 0.00 | 62.2 |
| Deferred Comp | 596.15 | 1788.4 |
| OPOA LT Disab | 0.00 | 7.5 |
| OPOA Life | 36.00 | 108.0 |
| OPOA Widow Orph | 5.00 | 10.0 |
| Parking OPOA | 10.00 | 20.0 |
| Union Due OPOA | 114.19 | 228.3 |

| Totals | Hours | Current | Year-to-Date |
|---|---|---|---|
| Gross Pay | | 2385.48 | 13688.50 |
| Pre Tax Dedn | | 596.15 | 1788.45 |
| Tax Dedn | | 354.36 | 3098.93 |
| Other Dedn | | 165.19 | 436.14 |
| Net Pay | | 1269.78 | 8364.98 |

| Leave Balances | Hours |
|---|---|
| Comp Time | 26.75 |
| Comp Day | 0.00 |
| Vacation | 150.00 |
| Settlement Leave | 0.00 |
| Sick Leave | 0.00 |
| Floating Holiday | 0.00 |
| Management Leave | 0.00 |
| Special Recognition Leave | 0.00 |
| Special Supervisors Leave | 0.00 |
| Executive Vacation Leave | 0.00 |
| Exrs Vacation Day | 0.00 |
| Deferred OPOA OT | 0.00 |

| Information Elements | Current | YTD | Information Elements | Current | YTD |
|---|---|---|---|---|---|
| Authorize LWOP | 0 | 0 | Holiday Vacation Accrual | 0 | 0 |
| Comp Time Holiday Earned | 0 | 0 | Maternity LWOP | 0 | 0 |
| CTE Comp Time Court Earne | 0 | 0 | Military LWOP | 0 | 0 |
| CTE Comp Time Earned | 0 | 0 | OCD Court Deferred OT | 0 | 0 |
| CTH CT Earned Straight | 0 | 0 | SLV Sick LWOP | 0 | 0 |
| DCAP Reimburse CY | 0 | 0 | STW Shift Trade Worked | 0 | 0 |
| DCAP Reimburse PY | 0 | 0 | SNP Suspension LWOP | 0 | 0 |
| Deferred OT OPOA Payout | 0 | 0 | UNP Unauthorized LWOP | 0 | 0 |
| Family Care LWOP | 0 | 0 | VTN Voluntary LWOP | 0 | 0 |
| Family Death LWOP | 0 | 0 | LV1 Workers Comp LWOP | 0 | 0 |
| FMLA LWOP | 0 | 0 | CCB CT Court NonSworn | 0 | 0 |
| HCT Comp Time Hol Straigh | 0 | 0 | | | |

**Accumulators**

| | Hours |
|---|---|
| Annual Hours Worked | 159.00 |
| Fiscal Year Hours | 1181.75 |
| Life To Date Hours | 4799.25 |

CITY OF OAKLAND
ONE FRANK H. OGAWA PLAZA
OAKLAND, CA 94612

ADVICE DATE     31-JAN-2008

**Deposit** *One thousand two hundred sixty nine and 78/100 Dollars*

******$1,269.78

**To the**

**Account of Courtney E. Gordon**

Checking Account     XXXXXX2794     1269.78

***VOID***NON-NEGOTIABLE***VOID***

***THIS IS NOT A CHECK***

# EXHIBIT E

# CITY OF OAKLAND



POLICE ADMINISTRATION BUILDING · 455 - 7TH STREET · OAKLAND, CALIFORNIA 94607-3985

Police Department

Telephone Device for the Deaf (510) 777-3333
Patrol Desk (510) 238-3455
Fax (510) 238-2251

January 25, 2008

Courtney Gordon
~f

, CA  94501

Re:    City of Oakland
       Police Services Agency
       Payroll Adjustment

Dear Mr. Gordon:

A reconciliation of your final leave balances has revealed a balance due to the
City of Oakland Police Services Agency as follows:

| Leave Type | Hours | Amount Due |
|---|---|---|
| Vacation | <37.10> | $<1,295.57> |
| Training Costs | | $ 6,400.00 |
| Compensatory Time | <18.75> | $  <654.77> |
| Uniform Allowance (prorated) | | $    339.46 |

**Total Due the City of Oakland**                    **$  4,789.12**

Vacation.  Pursuant to General Order D3, which states that vacation accrued in
the year of separation must be prorated, your prorated accrual entitlement based
upon your service period as a Police Officer was 197.10.  You were paid 160.00
leaving a balance of 37.10 hours.

Training Costs.  Pursuant to the Acceptance Agreement signed by you and the
schedule set forth in Appendix A of the Memorandum of Understanding, you are
required to reimburse the City for the training costs in the amount of $6,400 (80%
of $8,000).

Courtney Gordon                                                              Page 2

Compensatory Time. Your balance at the time of separation was 26.75; however, pursuant to Article V, Section G of the Memorandum of Understanding, the annual "compday" award of 8 hours must revert back to the City leaving a balance of 18.75 hours.

Uniform Allowance. Pursuant to Article VI, Section A.2 of the Memorandum of Understanding, the uniform allowance is to be prorated.

Please remit the balance due on or before February 29, 2008. If you have any questions regarding this matter, please me at (510) 238-3288.

Sincerely,

Peter D. Fitzsimmons
Manager
Fiscal Services Division

cc:     Jeanne Jew, Accountant III

Courtney E. Gordon        (16039)
Leave Balance Reconciliation
Resignation: 01/22/08
Date: 01-15-08

PS169 Hire date: 11/28/05   ( 7 months )
PS168 PO Hire date: 06/02/06  ( 1 yr, 4 months).
Vacation days per year =        15
Rep Unit:      OPOA        PP1

## Vacation

| PPE | Earned | Used | Balance | Per Oracle | Diff | Notes |
|---|---|---|---|---|---|---|
| 16-Dec-05 | | 40.00 | 30.00 | | | |
| 15-Dec-06 | 70.00 | 120.00 | 30.00 | | | |
| 14-Dec-07 | 120.00 | | 150.00 | 150.00 | | |
| 11-Jan-08 | 120.00 | | 37.10 | | | |
| 25-Jan-08 | (112.90) | | | | | Prorated Vacation |
| | | | | | | |
| | | | | | | |
| Total | 160.000 | | | | | |

Vac Balance per Oracle PPE 01-11-08        150.000
Adjustment - proration        (112.90)

## Comptime

| PPE | Earned | Used | Balance | Per Oracle | Diff | Notes |
|---|---|---|---|---|---|---|
| 16-Dec-05 | | | - | | | |
| 15-Dec-06 | | | - | | | |
| 14-Dec-07 | 316.75 | 190.00 | 126.75 | | | |
| 11-Jan-08 | | 100.00 | 26.75 | 26.75 | | |
| 25-Jan-08 | | | | | | Comptime Buyback |
| | | | | | | |
| | | | | | | |

Comptime Balance per Oracle PPE 01-11-08        26.750
Adjustment - proration        -

**Prorated Vacation -** Accrual 120 hours annually. Entitle to 22 days for calendar year 2008 = (120/12/31 X 22) = 7.10 hours
Adjustment to the leave balance = (120 - 7.10) = 112.9 hours

**Prorated Uniform Allowance -** $770 per fiscal year or $64.17 per month. Entitlement = 6 month, 22 days. Or (64.17 X 6) + (64.17/31 X 22) = $385.00 + 45.54 = $430.54.
Refund to the City (770 - 430.54) = **$339.46**

**Other**
**Training Costs -** Per MOU, Appendix A. Employees resigning from the position with less than two year's service is responsible for reimbursing the City for training costs.
Amount owed = 80% of $8,000 or **$6,400.**

**EXHIBIT F**

# CITY OF OAKLAND



LIONEL J. WILSON BUILDING • 150 FRANK H. OGAWA PLAZA, SUITE 5342 • OAKLAND, CA 94612-2093

Finance and Management Agency
Citywide Collections

(510) 238-7317
FAX (510) 238-6431
TDD (510) 238-3254

March 7, 2008

**COLLECTION NOTICE**

Courtney Gordon

, 94501

Re: Account # M179390

Dear: Ms. Gordon

After unsuccessful attempts by the City of Oakland Police Department to secure remittance for the above referenced account, the matter has been referred to Citywide Collections Department. A description of your account follows:     Ex-employee owes City for prorated uniform allowance and raining costs per MOU and General Order

| | |
|---|---|
| Vacation- | < $1,295.57> |
| Training Costs | $6,400.00 |
| Uniform Allowance | $339.46 (prorated) |
| Compensatory Time | < $654.77> |
| Collection fee- | $834.28 |

We urge you to forward remittance of $5,268.03 by March 21, 2008 via cashiers check or credit card promptly **to City of Oakland, Citywide Collections, 150 Frank Ogawa Plaza, Ste. 5342 Oakland, CA 94612,** please reference your account number on your payment. If you would prefer to come in and make payment arrangements, you will find the procedures for requesting a promissory note enclosed with this letter. **If you do not respond to this letter by March 21, 2008 the City will initiate legal action against you.**

If you have any questions regarding this matter, please call Ms. Thurston in the Citywide Collections Department at (510) 238-7035.

Sincerely,

S. Thurston
Collection Officer

## CREDIT CARD AUTHORIZATION

CREDIT CARD: Type _____Visa                _____MasterCard

Credit card number: _____        Expiration Date: _____

Amount:_____                Security Code (3 digit)_____

Name as it appears on card: _____

Address: _____

Authorized Signature: _____
I authorized the City of Oakland to charge the credit card listed above for the amount listed above, regarding the account listed within this letter.

## PLEASE FAX LETTER AND AUTHORIZATION TO (510) 238-6431



## CITY OF OAKLAND
## CENTRAL COLLECTION SECTION

### PLEASE READ CAREFULLY BEFORE REQUESTING A PROMISSORY NOTE

#### PROMISSORY NOTE PROCEDURES **EXCLUDING PARKING CITATIONS**

**DEBTORS <u>MUST</u> PROVIDE THE FOLLOWING ITEMS:**

➢ Down Payment – **down payment may be paid by cash, cashiers check, money order, debit card w/ VISA or MasterCard logo, VISA, MasterCard or Discover**

   **\*No personal checks are accepted for the down payment;**

➢ Authentic document from referring section

➢ Valid Driver's License or CA ID;

➢ Social Security Card and/or Tax ID # ;

➢ Current tax return and/or current employment information and most recent check stub: and three month bank statements

♦ **FEE - $100.00 PROMISSORY NOTE ADMINISTRATION FEE IS ADDED TO TOTAL LIABILITY**

**IF PROMISSORY NOTE IS DEFAULTED, A COLLECTION FEE OF $150.00 OR 10%, WHICHEVER IS GREATER, WILL BE ASSESSED ON THE <u>UNPAID</u> BALANCE AND COLLECTION ACTION WILL BE TAKEN IMMEDIATELY.**

**PROMISSORY NOTES ARE ISSUED AS A COURTESY AT THE DISCRETION OF THE CITY. FAILURE TO MAKE PAYMENTS AS AGREED MAY RESULT IN ACTION IN SMALL CLAIMS COURT, REPORTING TO A CREDIT BUREAU, AS WELL AS LEVYING YOUR ASSETS.**

Please bring the required documents to City of Oakland, Central Collections Sections, 150 Frank H. Ogawa Plaza, 5th Fl. If you have any questions, please call (510) 238-7035

Revised 3/26/04

**EXHIBIT G**

05833
Office AU #        11-24
                  1210(8)

Purchaser:        COURTNEY E GORDON
Purchaser Account: 100269279A
Operator I.D.:    cu017847
                  cu017847

PAY TO THE ORDER OF        ***CITY OF OAKLAND***

***Five thousand two hundred sixty-eight dollars and 03 cents***

WELLS FARGO & COMPANY ISSUER
420 MONTGOMERY STREET
SAN FRANCISCO, CA 94163
PAYABLE AT WELLS FARGO BANK, N.A.
FOR INQUIRIES CALL (480) 394-3122

**OFFICIAL CHECK**

SERIAL #: 0583302558
ACCOUNT#:

May 29, 2008

**\*\*$5,268.03\*\***

NOTICE TO PURCHASER--IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $  5,268.03

**NON-NEGOTIABLE**

**Purchaser Copy**

FB-004    M4ex5   07325879

PRINTED ON LINEMARK PAPER - HOLD TO LIGHT TO VIEW - FOR ADDITIONAL SECURITY FEATURES SEE BACK

05833
Office AU #        11-24
                  1210(8)

Operator I.D.:    cu017847        cu017847

**OFFICIAL CHECK**

0583302558

PAY TO THE ORDER OF        ***CITY OF OAKLAND***

May 29, 2008

***Five thousand two hundred sixty-eight dollars and 03 cents***

**\*\*$5,268.03\*\***

WELLS FARGO & COMPANY ISSUER
420 MONTGOMERY STREET
SAN FRANCISCO, CA 94163
PAYABLE AT WELLS FARGO BANK, N.A.
FOR INQUIRIES CALL (480) 394-3122

VOID IF OVER US $  5,268.03

CONTROLLER
**\*\***

⑆0583302558⑆ ⑆121000248⑆1881 505345⑈

*Paid under protest reserving all legal remedy*

Security Features Included. ⊏⊐ Details on Back.

# EXHIBIT H

**City of Oakland**
**CASH RECEIPT**

**Cash Receipt Number**
**927985**

☐ CASH        ☐ DIRECT DEPOSIT
☒ CHECK - CASHIERS    ☐ LOCK BOX
☐ CREDIT CARD    ☐ WIRE TRANSFER

**DIRECT CASH CREDITS**    Gordon, Courtney

| ITEM | PAYER / DESCRIPTION | CHECK # | FUND | ORG | ACCOUNT | PROJECT | PROG | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 1 | N000179390 - C. FEE | | 10160 | 0841 | 43303 | C. FEE | | 478.91 |
| 2 | C - Police Personnel | | 16160 | 0841 | 46778 | PN1 | | 4,789.12 |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| 5 | | | | | | | | |
| | | | | | | SUBTOTAL | | 5,268.03 |

**SUPPLEMENTAL INFORMATION** (REFERENCE DATE, NAME, LOCATION, ADDRESS, EVENT)

BAL. PAID IN FULL - JULY 29, 2008

**ACCOUNTS RECEIVABLE**

| ITEM | CUSTOMER NAME | CHECK # | CUSTOMER NUMBER | INVOICE NUMBER | AMOUNT |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| | | | | SUBTOTAL | |
| | | | | TOTAL | 5,268.03 |

RECEIVING DEPARTMENT
C. MWILDE COURTCLERS

RECEIVED BY AND DATE
J. GILLESPIE    05/29/08

# EXHIBIT 2

Westlaw.

1999 WL 1788162                                                              Page 1

1999 WL 1788162 (DOL WAGE-HOUR)


Wage and Hour Division
United States Department of Labor

Opinion Letter
Fair Labor Standards Act (FLSA)
September 30, 1999

***

 This is in response to your letter requesting an opinion concerning the
application of the Fair Labor Standards Act (FLSA) to the compensability of time
spent on tests for promotion and the legality of training reimbursement
agreements. You represent a number of law enforcement labor organizations in ***

 As you know, the FLSA is the Federal law of most general application concerning
wages and hours of work. This law requires that all covered and nonexempt
employees be paid not less than the minimum wage, $5.15 an hour, effective
September 1, 1997, for all hours worked. Overtime pay of not less than one and
one-half times the regular rate of pay is required for all hours worked over 40 in
a workweek. Hours worked under the FLSA include required internal training time.
See Sections 785.27 through 785.32 of 29 CFR Part 785.

 The first issue of your client's concern relates to the compensability of time
spent on tests for promotion within a police department. Tests for promotion are
administered through the Civil Service Board which undertakes fairly exhaustive
testing including both written and oral assessment boards. The total testing
process, not including the study preparation time, may take several hours.
Officers who are scheduled for the normal work shifts may receive release time for
purposes of taking the test and, therefore, would receive their regular pay.
Otherwise, officers receive no compensation for taking the test. You advised a
member of my staff that while the State of Washington requires a testing process
for a police officer to become a commissioned police officer, each city/county
establishes and administers its own testing method. You also advised that
employees may or may not choose to take the test for promotion (i.e., the test is
strictly voluntary). For those employees who do not wish to be promoted and do not
take the test, they would remain in their current positions without any adverse
impact.

 Based on the information presented, it is our opinion that the time spent by
employees who voluntarily spend time on tests for promotion outside their regular
hours of work is for the benefit of these employees, and is not compensable hours
of work under the FLSA. See section 553.226 of 29 CFR Part 553.

 The second issue of your client's concern is the legality of any reimbursement
agreements under the FLSA by which employees who depart the department within

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1999 WL 1788162                                                                    Page 2

1999 WL 1788162 (DOL WAGE-HOUR)


three years of being hired are expected to pay back the employer for their
training.

    Wages cannot be considered to have been paid by the employer and received by the
employee unless they are paid finally and unconditionally or "free and clear". The
wage requirements of the FLSA will not be met where the employee ""kicks-back"
directly or indirectly to the employer or to another person for the employer's
benefit the whole or part of the wage delivered to the employee, if such payments
bring the employee's pay below the required minimum wage or overtime levels. See
section 531.35 of the 29 CFR Part 531.

    The United States Supreme Court has held that an employee may not waive his or
her rights to compensation due under the FLSA. Brooklyn Savings Bank v. O'Neil,
328 U.S. 697 (1945). Similarly, in Barrentine v. Arkansas-Best Freight System, 450
U.S. 728 (1981), the Supreme Court held that a labor organization may not
negotiate a provision that waives employees' statutory rights under the FLSA.
Consequently, the return to the employer of compensation due an employee under the
FLSA would violate the statute.

    It is our opinion that, where a reimbursement agreement would result in an
employee receiving less than the wages required by the FLSA, it would violate the
provisions of the FLSA.

    This opinion is based exclusively on the facts and circumstances described in
your request and is given on the basis of your representation, explicit or
implied, that you have provided a full and fair description of all the facts and
circumstances which would be pertinent to our consideration of the question
presented. Existence of any other factual or historical background not contained
in your request might require a different conclusion than the one expressed
herein. You have also represented that this opinion is not sought on behalf of a
client or firm which is under investigation by the Wage and Hour Division, or
which is in litigation with respect to, or subject to the terms of any agreement
or order applying, or requiring compliance with, the provisions of the FLSA.

    We trust that this information is responsive to your inquiry.

Sincerely,

Daniel F. Sweeney

Office of Enforcement Policy Fair Labor Standards Team

 1999 WL 1788162 (DOL WAGE-HOUR)

END OF DOCUMENT


© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 3**

Westlaw.

2005 WL 2086807                                                                    Page 1

2005 WL 2086807 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor

Opinion Letter
Fair Labor Standards Act (FLSA)
FLSA2005-18
May 31, 2005

\*\*\*

This is in response to your letter requesting an opinion on the application of
the Fair Labor Standards Act (FLSA) to required reimbursements for internal
training costs.

You state that a police officer employed by the City of \*\*\* (the City) on May
16, 2000, left employment on October 15, 2000, and has subsequently accepted a job
with the City of the \*\*\*. The officer attended required CLEET training (the basic
police course) from June 4, 2000, until August 4, 2000, and was paid $3,202.24 in
wages during the training period.

The applicable Oklahoma statute, Title 70 O.S., Section 3311(M) provides that if
an employing law enforcement agency has paid the salary of a person while
attending a basic police course approved by the Council, and if that person within
(1) year after certification resigns and is hired by another law enforcement
agency in the same state, the second employing agency or the person who received
the training must reimburse the original employment agency for the salary paid to
the person who completed the basic police course. You ask whether the second
employing agency or the officer is required to reimburse the City the full amount
of the salary he received while in training as required by state statute or only
the amount of the salary in excess of the applicable minimum wage.

The FLSA is the Federal law of most general application concerning wages and
hours of work. This law requires that all covered and nonexempt employees be paid
not less than the minimum wage for all hours worked and overtime pay for all hours
worked over 40 in a workweek. Hours worked under the FLSA include required basic
training time, such as the training hours in this case. See 29 CFR sections 785.27
through 785.32 and section 553.226 (copies enclosed).

Wages cannot be considered to have been paid by the employer and received by the
employee unless they are paid finally and unconditionally or "free and clear". The
wage requirements of the FLSA will not be met where the employee "kicks-back"
directly or indirectly to the employer or to another person for the employer's
benefit the whole or part of the wage delivered to the employee, if such payments
bring the employee's pay below the required minimum wage or overtime levels. See
Section 531.35 of the enclosed 29 CFR Part 531.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2086807 (DOL WAGE-HOUR)

The United States Supreme Court has held that an employee may not waive his or her rights to compensation due under the FLSA. Brooklyn Savings Bank v. O'Neil, 328 U.S. 697 (1945). Similarly, in Barrentine v. Arkansas-Best Freight System, 450 U.S. 728 (1981), the Supreme Court held that a labor organization may not negotiate a provision that waives employees' statutory rights under the FLSA. Consequently, the return from the employee to the employer of compensation due an employee pursuant to the FLSA minimum wage and/or overtime requirements would violate the statute.

It is thus our opinion that any reimbursement paid by the officer that will result in payment of less than the amount required by the applicable minimum wage and/or overtime requirements will violate the "free and clear" provisions of the FLSA. See opinion letters dated October 21, 1992 and September 30, 1999; Heder v. City of Two Rivers, 295 F.3d 777 (7th Cir. 2002). Because the FLSA establishes a floor for required compensation, state or local laws may require greater amounts but, pursuant to the Supremacy Clause, may not diminish the protections of the Act. See 29 U.S.C. § 218 (a); U.S. Constitution, Art. VI, Cl. 2. You asked whether, in the alternative, the second employing agency could be required to reimburse the City. The FLSA regulates employee wages, but it does not control this arrangement under state law between the two cities. Thus, the FLSA does not affect any state law remedy the City may have against the second agency. This opinion does not affect the ability of the City to pursue the recovery from the other agency of any unpaid amounts due for such cost based upon a state statute.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one expressed herein. You have represented that this opinion is not sought by a party to a pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor. This opinion letter is issued as an official ruling of the Wage and Hour Division for purposes of the Portal-to Portal Act, 29 U.S.C. 259. See 29 C.F.R. 790.17(d), 790.19; Hultgren v. County of Lancaster, Nebraska, 913 F.2d 498, 507 (8th Cir. 1990).

We trust that the above information is responsive to your inquiry.

Sincerely,

Alfred B. Robinson, Jr.

Deputy Administrator

Enclosures

Note: *** The actual name(s) was removed to preserve privacy.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.