JOHN A. RUSSO, City Atty., SBN 129729
RANDOLPH W. HALL, Asst. City Atty., SBN 080142
CHRISTOPHER KEE, Deputy City Atty., SBN 157758
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Phone: (510) 238-7686 Fax: (510) 238-6500
Email: ckee@oaklandcityattorney.org
X03161/45611

Attorneys for Defendant
CITY OF OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY GORDON, an individual, on behalf of herself and those similarly situated,<br><br>Plaintiff-Petitioner,<br><br>vs.<br><br>CITY OF OAKLAND, a Municipal Corporation,<br><br>Defendant-Respondent. | Case No. C08-01543 WHA<br><br>**DEFENDANT CITY OF OAKLAND'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**<br><br>Date:      July 10, 2008<br>Time:      8:00 a.m.<br>Courtroom:   9 |

## I.    INTRODUCTION

Plaintiff seeks leave to file an amended complaint limited to a single cause of action rising ostensibly under the Fair Labor Standards Act.   Plaintiff's proposed amended pleading fails to remedy the defects identified in this court's Order dismissing her original pleading and leave to amend should be denied. More specifically, leave to amend should be denied on the following grounds:

1.      Plaintiff has not shown and cannot show that the she did not receive at least a minimum wage in each pay period while employed by the Oakland Police Department;

2.      Plaintiff's claims brought under the ostensible authority of "29 U.S.C. § 207(c)(4)(B)" are unavailing since section 207(c) was repealed in 1974.

1    Should the court be inclined to grant leave to amend under the liberal standards

2    of Federal Rule of Civil Procedure (FRCP) 15, the City respectfully reserves the right to

3    respond to any amended pleading under FRCP 12.

4                              II.    __LEGAL ARGUMENT__

5    **A.    Plaintiff Has Failed To Allege A Violation Of The FLSA.**

6        As this court recognized in its prior order, there is no violation of the FLSA so

7    long as the employee receives the statutory minimum wage in each pay period of his or

8    her employment.   *See* Order Granting Defendant's Motion To Dismiss And Vacating

9    Hearing (Order) at pp.3-4. In her proposed amended pleading, there are no new

10   allegations suggesting that she was actually paid less than the minimum wage.  Indeed,

11   while the latest contentions border on the opaque, it appears that she is merely

12   repackaging the same claim already rejected by this court—that requiring repayment of

13   her training costs somehow brings her below the statutory threshold.  The argument

14   holds no more water the second time around than it did the first.[1]

15       Plaintiff also raises a new claim, under the ostensible authority of 29 U.S.C.

16   §207(c)(4)(B).   Section (c) was repealed in 1974, and obviously cannot support her

17   claims here.

18   / / /

19   / / /

20

21       [1] The City notes that the California Court of Appeal very recently rejected that theory
22   in *City of Oakland v. Hassey* (2008) ---Cal. Rptr. 3d---;2008 WL 2428205 (copy attached
     as Exhibit A), the case referenced in the City's prior motion to dismiss. *Hassey* held that
23   while withholding Hassey's <u>entire paycheck</u> may have violated the FLSA, simply
     requiring reimbursement did not, so long as the employee receives the statutory
24   minimum wage in each paycheck while employed. *Id.* at 1; 14-15. The Court of Appeal
     also rejected and/or distinguished plaintiff's reliance on the Department of Labor Letters
25   and *Arriaga v. Florida Pacific Farms* referenced in her latest pleading. (*See Hassey* at
     pp.9-11; proposed Amended Complaint at ¶ 24; Exhibits 2 and 3.)  While *Hassey* post-
26   dates plaintiff's motion for leave to amend, continued reliance on issues rejected in the
     state courts certainly has more than a whiff of forum shopping about it.

DEFENDANT CITY OF OAKLAND'S                      - 2 -                        C08-01543 WHA
OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO AMEND COMPLAINT

1

### III.   **CONCLUSION**

2    In its order dismissing the earlier pleading, this court urged plaintiff to "plead her

3 best case."  Presumably she has now done so.  The new allegations fail to remedy the

4 innate fatal flaw in her case, and leave to amend should be denied.  If the court is

5 inclined to grant leave to file the amended pleading under FRCP 15, as noted above,

6 the City respectfully reserves to right to file a motion under FRCP 12.

7 Dated:  June 19, 2008

8                              JOHN A. RUSSO, City Attorney
                             RANDOLPH W. HALL, Assistant City Attorney
9                              CHRISTOPHER KEE, Deputy City Attorney

10

11
            By:  _____/s/_____
12                              Attorneys for Defendant
13                              CITY OF OAKLAND

14

15

16

17

18

19

20

21

22

23

24

25

26

**PROOF OF SERVICE**
***Gordon vs. City of Oakland***
***Case No. C08-01543 WHA***

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is City Hall, One Frank H. Ogawa Plaza, 6th Floor, Oakland, California 94612.  On date shown below, I served the within documents:

# *NOTE:  PARTIES ARE E-FILE REGISTRANTS*

**DEFENDANT CITY OF OAKLAND'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Oakland, California, addressed as set forth below.

☐ by causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by causing such envelope to be sent by Federal Express/Express Mail

| | |
|---|---|
| **Jon Webster**<br>**Michael Devin**<br>**The Law Offices of Jon Webster**<br>**1985 Bonifacio Street, Suite 102**<br>**Concord, CA 94520-2264**<br><br>***Tel 925-686-8790  Fax 925-686-8795*** | **Attorney for Plaintiff** |

I am readily familiar with the City of Oakland's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

Executed on June 19, 2008, at Oakland, California.

_____ /S/ _____
Shavonda Early

# EXHIBIT A

Filed 6/17/08

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CITY OF OAKLAND,<br><br>　　Plaintiff, Cross-defendant and<br>Respondent,<br><br>v.<br><br>KENNY D. HASSEY,<br><br>　　Defendant, Cross-complainant and<br>Appellant;<br><br>RICHARD WORD,<br><br>　　Cross-defendant and Respondent. | A116360<br><br>(Alameda County<br>Super. Ct. No. 2001-027607) |

　　Respondent City of Oakland (Oakland) sued appellant Kenny D. Hassey for breach of contract after Hassey failed to reimburse the city (as agreed) for the costs of training him to become a police officer with the Oakland Police Department. Hassey filed a cross-complaint against Oakland and respondent Richard Word, the chief of the Oakland Police Department, alleging that the agreement to repay Oakland for training costs violated the Fair Labor Standards Act (29 U.S.C. §§ 201-219 (FLSA)) and various state laws. The trial court granted Oakland's motion for summary judgment on its complaint, granted respondents' motion for summary judgment on Hassey's cross-complaint, and denied Hassey's summary judgment motion on both complaints. We conclude that Hassey failed to establish that the agreement to reimburse Oakland for training costs violated the FLSA, although Oakland's withholding of Hassey's final paycheck to cover his debt did. We also agree with Hassey that the trial court erred in

1

concluding that some of the causes of action in his cross-complaint against Oakland were barred by the statute of limitations. We therefore affirm in part and reverse in part.

I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

The relevant facts are largely undisputed. Oakland owns and operates the Oakland Police Academy, which is certified by the Commission on Peace Officer Standards and Training (POST). (Cal. Code Regs., tit. 11, § 1005, subd. (a)(1) [minimum standards for training of entry level peace officers].) It is city policy to send police officer trainees to its own academy, even though there are other POST-certified academies in the state. Oakland found that it lost money when it trained officers who left its police department within a few years after receiving training. To encourage police officers to stay with the department longer, Oakland entered into a memorandum of understanding (MOU) with the Oakland Police Officers' Association in 1996 authorizing the city to require those who went through training at its academy to reimburse the city for training costs if the person left the police department before completing five years of service. The MOU also provided, "Repayment shall be due and payable at the time of separation and the City shall deduct any amounts owed under this provision from the employee's final paycheck. If said deduction does not fully reimburse the City for outstanding costs, the balance shall thereupon be due and owing."

On December 15, 1997, Hassey signed a "Conditional Offer of Position as a Police Officer Trainee" (conditional offer) with the Oakland Police Department. The conditional offer provided, consistent with the MOU, that Hassey's selection as a police officer trainee was subject to (among other things) the condition that he repay his $8,000 training expenses if he voluntarily terminated his employment with the police department

2

before the end of five years.[1]  The $8,000 represented the expenses associated with training a police officer at the academy; the figure did not include wages paid to police officer trainees while they attended the academy.  Hassey's repayment obligation was to decrease each year he remained with the police department, so that he would owe repayment of the entire $8,000 if he left after less than a year, 80 percent of the $8,000 if he left before the end of his second year, 60 percent if he left before the end of his third year, 40 percent if he left before the end of his fourth year, down to 20 percent of the $8,000 if he left before the end of his fifth year.

Oakland hired Hassey as a police officer trainee on March 16, 1998.  The same day, he signed a document titled "reimbursement of training expenses" (reimbursement agreement), which contained the same repayment provision that was set forth in the conditional offer.  Hassey attended the Oakland Police Academy from April to November

---

[1] The MOU in effect at the time Hassey signed the conditional offer provided: "Police Office[r] Trainee Training Costs.  The parties recognize that in the past a substantial number of persons have accepted the benefit of training at the Oakland Police Academy and then have voluntarily separated from service to join other safety agencies or have decided for personal reasons that police work is not their preference.  The purpose of this provision is to insure that the recruit either accept a commitment of service to the City or be responsible for costs associated with Academy training.  Thus the parties agree that any member who, prior to completing five years of service, voluntarily separates from service with the department shall be responsible for reimbursing the City, on a full or pro[]rata basis, for the $8000 cost of his or her training at the Police Academy. . . ."  (Fn. omitted.)  Oakland and the Police Officers' Association later entered into another MOU, which contained an identical provision.

3

1998, when he graduated.[2] That same month, he was promoted to police officer and was assigned to the police department's field training program to receive additional instruction.

According to Hassey's declaration in support of his summary judgment motion, his field training officer told him in February 1999 that he was "not performing to standards and that [he] should consider resigning in lieu of termination." Hassey resigned on February 10, 1999, based on his field training officer's representation. On February 16, 1999, Hassey signed a document titled "training costs repayment agreement" (repayment agreement), which acknowledged that Hassey owed repayment of $8,000 for his training costs, to be paid in 24 monthly installments of $333.34.

Oakland withheld Hassey's final paycheck dated February 25, 1999 (for $725.28) to cover some of the money owed under the repayment agreement. A check dated April 30, 1999 (for $654.80) to cash out Hassey's retirement balance also was withheld to cover money owed under the repayment agreement. That left a balance of $6,619.92 owed by Hassey under the repayment agreement. Oakland sent a series of collection notices to Hassey; Hassey apparently did not respond.

On October 17, 2001, Oakland filed a complaint against Hassey alleging breach of contract. Oakland sought the amount owed under the repayment agreement, plus a $100 collection fee, interest, attorney fees, and costs. Hassey's answer to the complaint included an affirmative defense that the contract was unenforceable because it violated

---

[2] Oakland acknowledged below that it was required by state law to send Hassey to a POST-certified police academy. (Pen. Code, §§ 832, subd. (a) [peace officers shall complete specified training], 13510 [adoption of minimum standards for recruitment and training].) Lateral hires who are already police officers do not go through the same training; Oakland sends them to a "mini academy." The trial court found that "[t]he record clearly establishes that the City's reimbursement provision only applies to applicants without the basic training required of all peace officers under state law," and that Hassey was free to seek training at another POST-certified academy before applying to work for Oakland in lieu of attending the city's academy.

4

the FLSA and various provisions of the California Labor and Business and Professions Codes (Lab. Code, §§ 221-223, 432.5, 450; Bus. & Prof. Code, §§ 16600, 17200).

On May 10, 2002, Hassey filed a cross-complaint against respondents Oakland and Word, the chief of the Oakland Police Department. Like Hassey's answer to Oakland's complaint, the cross-complaint alleged that the conditional offer that Hassey was "compelled" to sign violated the FLSA and various state laws. The cross-complaint alleged causes of action for deprivation of civil rights (42 U.S.C. § 1983); violation of the FLSA; violations of Labor Code sections 221, 223, 432.5, and 450; "unlawful contract" (Civ. Code, §§ 1667-1668); "void contract" (Bus. & Prof. Code, § 16600); and unfair competition (Bus. & Prof. Code, § 17200).[3]

Hassey and respondents filed summary judgment motions on the same day. Hassey argued that Oakland's lawsuit against him had no merit because the conditional offer and repayment agreement violated federal and state law. He sought summary judgment as a defendant on Oakland's complaint and as a cross-complainant on his cross-complaint. Oakland argued in its motion for summary judgment, among other things, that various causes of action in Hassey's cross-complaint were barred by the statute of limitations, and that requiring employees to reimburse Oakland for training costs did not violate the FLSA. Oakland also sought summary judgment on its complaint, arguing that there was no dispute that Hassey owed money under the repayment agreement.

The trial court granted respondents' motion for summary judgment. As to Oakland's complaint against Hassey, it concluded that there were no triable issues as to

---

[3] Two other former Oakland police officers, Matthew DeLorenzo and Chris Baker, later "opted in" to the cross-complaint pursuant to the FLSA. The trial court granted respondents' summary judgment motion as to DeLorenzo and Baker, and denied DeLorenzo's and Baker's summary judgment motion. DeLorenzo and Baker appealed; however, their counsel informed this court that they requested to withdraw from the appeal. We therefore do not consider those portions of the trial court's orders that were directed at DeLorenzo and Baker.

whether Hassey owed money under the repayment agreement, and concluded that Hassey owed Oakland $6,619.92. As to Hassey's cross-complaint, the trial court concluded that the causes of action were barred by the statute of limitations or failed for other reasons. The trial court also denied Hassey's motion for summary judgment. Hassey timely appealed the subsequent judgment.

## II.
### DISCUSSION

On appeal, the parties disagree over whether the conditional offer, reimbursement agreement, and repayment agreement violate the FLSA and various other laws, but do not always specify to which of the trial court's two orders (or to which of the two complaints at issue) they direct their arguments. We find it helpful to address the complaint and cross-complaint separately.

### A. Summary Judgment Proper on Oakland's Complaint.

1. Oakland's breach of contract cause of action.

A plaintiff is entitled to summary judgment on a contract cause of action where it establishes by competent evidence the existence of a contract, defendant's breach and damages, and defendant does not controvert such facts. (*Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1092 [29 Cal.Rptr.3d 499] (*Law Offices*); see also Code Civ. Proc., § 437c, subd. (p)(1).) Our review of the granting or denial of summary judgment is de novo. (*Law Offices*, at p. 1092.) Here, the trial court granted summary judgment on Oakland's complaint for breach of contract, ruling that Hassey owed $6,619.92 on the agreements he signed with Oakland to repay his training costs. We concur with this finding. (*Ibid.*) Indeed, Hassey admitted in his separate statement in response to Oakland's statement of undisputed facts (Code Civ. Proc., § 437c, subd. (b)(3)) that he signed the conditional offer, reimbursement agreement, and repayment agreement. Although he disputed whether he was legally obligated to repay his training costs, he did not otherwise dispute the accuracy of the amount that was due

6

under the repayment agreement. "Thus, putting aside any affirmative defenses (discussed below), [Oakland] was entitled to summary judgment." (*Law Offices*, at p. 1092.)

Hassey argued in his summary judgment motion as to Oakland's complaint against him that the conditional offer and reimbursement agreement were void and violated the FLSA and various other federal and state laws. The trial court rejected Hassey's arguments and denied his motion for summary judgment. "While an order denying summary judgment is not directly appealable, it is reviewable after entry of judgment." (*Law Offices, supra*, 129 Cal.App.4th at p. 1091.)

We first note that although the trial court's orders do not make this point, there are actually two distinct inquiries here. The first is whether the conditional offer, reimbursement agreement, or repayment agreement violate the FLSA (or other federal and state laws); the second is whether withholding Hassey's checks violated those same laws.

        2.    Reimbursement agreement valid.

As to the first inquiry, we conclude that Hassey failed to establish that the conditional offer, reimbursement agreement, and repayment agreement were unlawful. He first argues on appeal, as he did below, that the reimbursement agreement violates the FLSA. He notes that the FLSA mandates that Oakland pay its employees at least the minimum wage (29 U.S.C. § 206), that it pay them overtime (29 U.S.C. § 207(a)(1)), and that for this purpose, each workweek stands alone (29 C.F.R. § 778.104 (2007)). In other words, an employee who works 30 hours during one week but 50 hours the next must be paid overtime compensation for the overtime hours worked during the second week, even though the "average" number of hours worked over two weeks is 40. (29 C.F.R. § 778.104 (2007).) Hassey argues that Oakland violated these minimum wage and overtime mandates because even though it paid him "well above" the minimum wage during his tenure with the police department, he did not receive his wages "unconditionally" or " 'free and clear,' " as required by federal regulations. (29 C.F.R.

7

§ 531.35 (2007).) He claims that while he was working under the reimbursement agreement, he was being paid under the " 'condition' " that he repay his training costs should he leave before the end of five years.

The trial court rejected this argument, relying primarily on *Heder v. City of Two Rivers, Wisconsin* (7th Cir. 2002) 295 F.3d 777 (*Heder*), which we find persuasive. *Heder* involved a reimbursement agreement similar to the one at issue here. A city provided firefighters with paramedic training, with the understanding that firefighters who left within three years of receiving the training would reimburse the city for training costs. (*Id.* at p. 778.) A firefighter quit less than two years after beginning his training, and the city withheld all of his pay from his last two pay periods. (*Ibid.*) The firefighter sued, and the city filed a counterclaim for the remainder of the money it claimed the firefighter owed. (*Ibid.*)

*Heder* rejected the firefighter's argument that the repayment agreement violated a Wisconsin statute prohibiting covenants not to compete, concluding that the agreement did not restrict the firefighter's ability to compete against the city after leaving its employ. (*Heder, supra*, 295 F.3d at p. 780.) The court noted that even though the city's repayment obligation made it more costly to change jobs, that was not enough to invalidate the agreement. (*Ibid.*) The court likened the repayment agreement to other valid incentives that employers offer their workers to stay with them. (*Id.* at pp. 780-781.) The court also noted that residents of the city where the firefighters worked received the benefit of a more skilled fire department, and that the city might be less likely to provide that benefit if it feared that employees would leave the fire department, taking their new skills elsewhere. (*Id.* at p. 781.) Likewise here, Oakland was permitted to seek reimbursement from police officers who gained the benefit of its training program at the Oakland Police Academy but did not stay with the police department long enough for Oakland to benefit from that training.

Hassey directs us to no contrary authority in his appellate briefs. He relies
primarily on three opinion letters from the Wage and Hour Division of the United States
Department of Labor. Two of the opinion letters are easily distinguishable, because they
addressed whether employers were permitted under the FLSA to seek reimbursement for
an employee's *salary* paid while receiving training, as opposed to the cost of the training
itself. (Dept. Lab. Opn. Letter (May 31, 2005) 2005 WL 2086807; Dept. Lab. Opn.
Letter (Oct. 21, 1992) 1992 WL 845111.) As to the third letter, issued in 1999, we agree
with the trial court that it is unclear whether the opinion addressed reimbursement of
training costs, as opposed to salary paid during training. (Dept. Lab. Opn. Letter
(Sept. 30, 1999) 1999 WL 1788162.) In any event, we note that the subsequent 2005
opinion letter relied on by Hassey cites with approval *Heder, supra,* 295 F.3d 777 (albeit
for a different point), an indication that the Department of Labor would not disapprove of
the type of reimbursement agreement at issue there.[4] (2005 WL 2086807.)

Hassey does not address (or even cite) *Heder* in his opening brief. He argues in
his reply brief that the decision analyzed Wisconsin law and did not address whether the
reimbursement agreement violated the FLSA's "anti-kickback provision (29 C.F.R.
§ 531.35)." For the first time in this litigation, Hassey argued at oral argument in this
court that the reimbursement agreement violates the FLSA because his training was
provided primarily for the benefit of his employer, which brought it into the definition of

---

[4] We reject out of hand Hassey's argument that Oakland's breach of contract
cause of action is "preempted" by the FLSA, as he identifies no law subject to
"preemption."

"wages" under the statute.[5]  (29 U.S.C. § 203(m); 29 C.F.R. § 531.3(d)(1) (2007).)  The
FLSA defines wages to include the reasonable cost to an employer of furnishing an
employee with "board, lodging, or other facilities, if such board, lodging, or other
facilities are customarily furnished by such employer to his employees." (29 U.S.C.
§ 203(m); *Arriaga v. Florida Pacific Farms, L.L.C.* (11th Cir. 2002) 305 F.3d 1228,
1235.)  This means that when an employer pays for "board, lodging, or other facilities," it
may add the costs of those items to an employee's cash wage for purposes of complying
with the minimum set forth in the FLSA.  Department of Labor regulations state that an
employer may not count as "other facilities" things that are "primarily for the benefit or
convenience of the employer," such as tools of the trade or uniforms. (29 C.F.R.
§ 531.3(d)(1)-(2) (2007).)  Employers likewise may not pass along to employees the costs
of such facilities if to do so would cut into an employee's minimum wage. (29 C.F.R.
§ 531.35 (2007).)  In other words, if an employer passes along such an expense to the
employee, the expense is deducted from the cash wage to determine compliance with the
FLSA minimum. (*Arriaga v. Florida Pacific Farms, L.L.C.*, *supra*, 305 F.3d at p. 1236.)

---

[5]  This court sent notice to the parties on March 19, 2008, scheduling oral
argument.  After one continuance, oral argument was eventually set for May 13.  On
May 8, less than a week before oral argument and more that seven weeks after this court
sent oral argument notice, Hassey notified this court that he planned to rely at argument
on *Rivera v. Brickman Group, LTD.* (E.D.Pa., Jan. 7, 2008, No. 05-1518) 2008 WL
81570, which was decided after briefing was completed in this case but more than two
months before the parties received notice of oral argument.  On May 7, 2008 (again, less
than a week before oral argument), Hassey filed a request for judicial notice of a
Wisconsin statute and excerpts from an enforcement manual issued by California's
Division of Labor Standards Enforcement.  "An appellate court may properly decline
to take judicial notice under Evidence Code sections 452 and 459 of a matter which should
have been presented to the trial court for its consideration in the first instance."
(*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325-326 [48 Cal.Rptr.2d 87, 906 P.2d
1242] ; see also *People v. Preslie* (1977) 70 Cal.App.3d 486, 494 [138 Cal.Rptr. 828]
["desirable in the interest of orderly judicial procedure that [request for judicial notice] be
made *well before*" briefing stage], italics added.)  The Wisconsin statute and enforcement
manual are such matters, and we denied Hassey's request on May 19.

Not surprisingly, the parties disagreed at oral argument whether Hassey's training was "primarily for the benefit" of Oakland. It appears, however, that this is the first time in this litigation that they advanced their respective arguments with respect to the cited United States Code and Code of Federal Regulations provisions, as they did not brief this issue in the trial court or in this court. The trial court's order certainly did not analyze whether providing Hassey's training was primarily for the benefit of Oakland, or cite title 29 United States Code section 203(m) or 29 Code of Federal Regulations part 531.3(d) (2007).

Even assuming arguendo that providing training to Hassey was primarily for the benefit of Oakland, and that Oakland therefore could not deduct the cost of the training from Hassey's wages *if to do so would drive wages below the minimum wage*, Hassey has not established a violation of the FLSA here. As Hassey's counsel argued at oral argument, "[w]orkers must be reimbursed during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage." (*Arriaga v. Florida Pacific Farms, L.L.C.*, *supra*, 305 F.3d at p. 1237.) Here, however, Hassey received training *while he was an employee* of Oakland and was receiving wages; he thus incurred no "pre-employment expenses."

To the extent that an employer must reimburse an employee for expenses during employment that drive wages below minimum wage, "[i]f an expense is determined to be primarily for the benefit of the employer, the employer must reimburse the employee during the workweek in which the expense arose." (*Arriaga v. Florida Pacific Farms, L.L.C.*, *supra*, 305 F.3d at p. 1237.) The reimbursement agreement stated that the cost to train Hassey was $8,000. Hassey's final paycheck shows that he earned $23.39 per hour during the final pay period when he was employed for Oakland; Hassey acknowledged in briefing before the trial court that there was no evidence of how much he made during his training. Even assuming that Oakland had deducted the cost of training as he received it, it is unclear that such a hypothetical deduction would have driven Hassey's salary below

11

the minimum wage. Hassey emphasized at oral argument that each workweek stands alone (29 C.F.R. § 778.104 (2007)), presumably meaning that Oakland was not permitted to deduct the entire $8,000 cost of training from a single paycheck. While we certainly agree with *that* proposition (*post*, § II.A.3.), there is no evidence that deducting training costs from Hassey's paycheck as they were incurred would have reduced his wages below minimum wage.

The California statutes upon which Hassey relies likewise do not support his position. Three of the Labor Code provisions he cites address proper payment of wages, an issue not contemplated by the agreement to repay Oakland for training expenses. (Lab. Code, §§ 221 ["It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."], 222 [unlawful in case of wage agreement arrived at through collective bargaining "either willfully or unlawfully or with intent to defraud an employee . . . to withhold from said employee any part of the wage agreed upon"], 223 ["it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statue or by contract"].) Labor Code section 432.5, upon which Hassey also relies, prohibits employers from requiring employees or prospective employees "to agree, in writing, to any term or condition which is known by such employer . . . to be prohibited by law." Again, we conclude that there was nothing unlawful about requiring Hassey to repay his training costs if he left the police department before five years.[6] For this same reason, we

---

[6] We likewise reject Hassey's argument that requiring him to repay his training costs violates Labor Code section 450, which prohibits employers from coercing employees to patronize an employer or to purchase anything of value. As the trial court found, Hassey was free to seek employment with another law enforcement agency or obtain training at another academy before applying to work with the Oakland Police Department. (See *post*, § II.B.6.)

conclude that Civil Code sections 1667 and 1668,[7] and Business and Professions Code section 17200,[8] also relied on by Hassey, are inapplicable.

To the extent that Hassey argues that his agreement to repay Oakland was an impermissible covenant not to compete in violation of Business and Professions Code section 16600,[9] we note that an identical argument with respect to a Wisconsin anti-competition statute was specifically rejected in *Heder*. (*Heder*, *supra*, 295 F.3d at p. 780 [reimbursement agreement did not restrict employee's ability to compete with city after leaving its employ].) We recognize that in California, "the general rule is that covenants not to compete are void" (*Kelton v. Stravinski* (2006) 138 Cal.App.4th 941, 946 [41 Cal.Rptr.3d 877]), whereas under the Wisconsin law analyzed in *Heder*, restrictive covenants in employment contracts are permitted if they are "reasonably necessary for the protection of the employer or principal." (Wis. Stat. § 103.465; cf. *Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 900 [72 Cal.Rptr.2d 73] [Bus. & Prof. Code, § 16600 " 'has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when the employment has terminated, unless necessary to protect the employer's trade secrets. [Citation.]' "].) The fact remains, however, that nothing in the agreements Hassey signed

---

[7] Civil Code section 1667 defines unlawfulness as that which is "1. Contrary to an express provision of law; [¶] 2. Contrary to the policy of express law, though not expressly prohibited; or, [¶] 3. Otherwise contrary to good morals." Civil Code section 1668 provides, "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

[8] Business and Professions Code section 17200 defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice [or] unfair, deceptive, untrue or misleading advertising . . . ."

[9] Business and Professions Code section 16600 provides, "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

13

"restrained [him] from engaging in [his] lawful trade, business or profession." (*Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 407 [75 Cal.Rptr.2d 257] [analyzing Bus. & Prof. Code, § 16600].) Nothing prevented him from working for another police department, or anywhere else, for that matter.

> 3.    Oakland improperly withheld Hassey's final paycheck.

Although we have concluded that Oakland was permitted to seek reimbursement for training expenses, the question remains whether it was permitted to withhold Hassey's final paycheck in order satisfy Hassey's debt. We conclude that Oakland was not permitted to do so. As Hassey correctly notes, the FLSA mandates that employers such as Oakland pay their employees at least the statutory federal minimum wage. (29 U.S.C. § 206(a)(1); *Heder*, *supra*, 295 F.3d at p. 779.) An employee is "entitled to keep any compensation that the FLSA specifies as a statutory floor below which no contract may go." (*Heder*, at p. 779.) That means, quite simply, that Hassey was entitled to at least the statutory minimum wage for the final pay period he worked.[10] (*Ibid.*; see also 29 C.F.R. § 531.35 (2007) [wage requirements of FLSA will not be met where employee " 'kicks-back' " whole or part of the wage delivered to the employee].) *Heder* recognized this principle when it held that although the city was permitted to seek reimbursement of training costs from a firefighter, it had to pay that firefighter his or her

---

[10] This is consistent with a recent order granting Oakland's motion to dismiss (Fed. Rules Civ. Proc., rule 12(b)(6), 28 U.S.C.) a separate lawsuit in federal court involving the same reimbursement agreement at issue here. (*Gordon v. City of Oakland* (N.D.Cal. May 16, 2008, No. C08-01543 WHA) 2008 WL 2095510.) Respondents filed a request for judicial notice of the order, which we hereby grant. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) In *Gordon*, the plaintiff alleged that the withholding of *a portion* of her final paycheck violated the FLSA. The court rejected this argument, noting that the plaintiff still earned "well above the minimum wage established by FLSA" for her final pay period. Here, by contrast, it is undisputed that Oakland withheld Hassey's entire final paycheck, which, as he notes in his opening brief, left him with "a zero income" for the pay period covered by the check.

14

wages and then seek to collect any residue as an ordinary creditor. (*Heder*, at p. 779;[11] see also *Calderon v. Witvoet* (7th Cir. 1993) 999 F.2d 1101, 1107 [employer may not reduce wage below statutory minimum to collect a debt to the employer]; *Brennan v. Veterans Cleaning Service, Inc.* (5th Cir. 1973) 482 F.2d 1362, 1369-1370 [same].)

This conclusion is consistent with the rule in California that "an employer is not entitled to a setoff of debts owing it by an employee against any wages due that employee." (*Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 6 [177 Cal.Rptr. 803] (*Barnhill*) [employer not permitted to deduct from final paycheck balance due on a promissory note].) Such collection of a debt violates the absolute exemption that wages have from levies of attachment. (*Ibid.*, citing Code Civ. Proc., § 487.020, subd. (c); see also *California State Employees' Assn. v. State of California* (1988) 198 Cal.App.3d 374, 377 [243 Cal.Rptr. 602] [attachment and wage garnishment laws "provide substantial protection for wages against both pretrial attachments and enforcement of judgments"].) As the court explained in *Barnhill*, "fundamental due process considerations underlie the prejudgment exemption. Permitting [an employer] to reach [an employee's] wages by setoff would let it accomplish what neither it nor any other creditor could do by attachment and would defeat the legislative policy underlying that exemption." (*Barnhill*, *supra*, 125 Cal.App.3d at p. 6.) "Wages of workers in California have long been accorded a special status generally beyond the reach of claims by creditors including those of an employer." (*Kerr's Catering Service v. Department of Industrial Relations* (1962) 57 Cal.2d 319, 325 [19 Cal.Rptr. 492, 369 P.2d 20] (*Kerr's*

---

[11] Oakland points to language in *Heder* that employees may strike agreements with their employers to be paid less than " 'in full' " as required by Wisconsin law and claims that this authorized the city to withhold Hassey's entire final paycheck. (*Heder*, *supra*, 295 F.3d at p. 783.) Although *Heder* recognized that an employer may withhold *some* amount from a final paycheck by agreement, it specifically held that the amount withheld could not reduce an employee's paycheck so that he was being paid less than the federally mandated minimum wage. (*Id.* at pp. 782-783.)

15

*Catering*); see also *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 1112 [41 Cal.Rptr.2d 46] [employers not entitled to setoff of debts owed by employees against wages due to employees upon termination].)

Under the FLSA, the prohibition against withholding money due under a debt to an employer applies whether or not the employee agreed in writing to the withholding. (*Brennan v. Veterans Cleaning Service, Inc.*, *supra*, 482 F.2d at p. 1370, citing *Brooklyn Bank v. O'Neil* (1945) 324 U.S. 697 [impermissible to waive by agreement statutory protections of FLSA]; *Mayhue's Super Liquor Stores, Inc. v. Hodgson* (5th Cir. 1972) 464 F.2d 1196, 1197, 1199 [employee's agreement to repay employer shortages in money entrusted to him violates FLSA to the extent it reduces pay below minimum wage and is invalid].) "The voluntariness of an assignment of wages to the employer is inherently suspect. When the employer is the creditor, payment may not be made by paycheck deductions which reduce net pay below minimum wage, even where the employee apparently consents to such an arrangement." (*Brennan, supra,* at p. 1370.) The only evidence that Hassey "consented" to the withholding of any check was the provision in the MOU authorizing deductions from final paychecks to cover reimbursement for training costs. The conditional offer, reimbursement agreement, and repayment agreement signed by Hassey stated that he was obligated to repay training expenses if he left the police department before the end of five years, but they did not refer to deductions from his paycheck. In fact, the repayment agreement he signed when he left the police department stated, "The total amount owed to the City of Oakland is $8,000, minus the amount of my final paycheck *in the amount of $0*, leaving a balance of $8,000.00." (Italics added.) In short, we disagree with the trial court's conclusion that Hassey made no showing that Oakland effectively paid him less than minimum wage, at least with respect to the pay period covered by his final paycheck.

Although we have concluded that Oakland was not permitted to withhold Hassey's final paycheck, it does not follow that the trial court erred in denying Hassey's motion for

16

summary judgment on Oakland's complaint. It is true, as Hassey argues, that courts permit defendants to raise defenses that would be barred if raised as affirmative relief. (*Styne v. Stevens* (2001) 26 Cal.4th 42, 47, 51 [109 Cal.Rptr.2d 14, 26 P.3d 343].) "The rule applies in particular to contract actions. One sued *on a contract* may urge defenses that render the contract unenforceable, even if the same matters, alleged as grounds for restitution after rescission, would be untimely." (*Id.* at pp. 51-52, italics added.) Here, Oakland sued on the repayment agreement, in which Hassey agreed he would reimburse Oakland for training costs, an agreement we already have concluded was valid. Whether Hassey could seek affirmative relief for Oakland's withholding his check to collect on its otherwise valid agreement with Hassey is a separate inquiry, which we address below.

### B. Triable Issues As to Some Causes of Action in Cross-Complaint.

The trial court granted summary judgment as to Hassey's entire cross-complaint against respondents. We review the trial court's decision granting summary judgment de novo. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) We separately address the nine causes of action in the cross-complaint.

1. Summary adjudication proper as to first cause of action.

The first cause of action in Hassey's cross-complaint alleged that the conditional offer, as well as the seizure of his final check, deprived him of his civil rights, in violation of title 42 United States Code section 1983.[12] In their motion for summary judgment, respondents argued that this cause of action was barred by the one-year statute of limitations set forth in former Code of Civil Procedure section 340, subdivision (3).

---

[12] Title 42 United States code section 1983 provides in part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

(*McDougal v. County of Imperial* (9th Cir. 1991) 942 F.2d 668, 673 [statute of limitations in § 1983 actions filed in California is governed by limitations period that applies to personal injury actions (former Code Civ. Proc., § 340 subd. (3))].)[13]

In its order granting respondents' motion for summary judgment, the trial court stated that "all of the Causes of Action in the Complaint and the Cross-Complaint are disposed of on the grounds set forth herein." The trial court did not specifically address Hassey's first cause of action; however, the quote above clearly indicates that the court intended to grant summary judgment as to the first cause of action.

On appeal, neither side raises the trial court's failure to address Hassey's civil rights claim. Respondents renew their argument that the claim is barred by the statute of limitations, and we agree. The failure of the trial court to state reasons for granting summary judgment as to this cause of action (Code Civ. Proc., § 437c, subd. (g)) was harmless " 'since " '[i]t is the validity of the ruling which is reviewable and not the reasons therefore.' " ' [Citation.]" (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1146 [135 Cal.Rptr.2d 796] [trial court's failure to address cause of action on summary judgment was harmless error where appellant failed to present evidence to raise a triable issue of fact].) This is especially true in light of the fact that although Hassey argued in his opening brief that he had a valid claim under title 42 United States Code section 1983, he dropped this argument in his reply brief.

---

[13] On January 1, 2003, the statute of limitations period for personal injury actions was expanded to two years following the Legislature's enactment of Code of Civil Procedure section 335.1, which governs actions "for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another." (*Krupnick v. Duke Energy Morro Bay* (2004) 115 Cal.App.4th 1026, 1028 [9 Cal.Rptr.3d 767].) The expanded limitations period does not apply to claims that were already time-barred when the new law went into effect, which was the case here. (*Id.* at pp. 1028, 1030.)

18

2.    Trial court erred in granting summary adjudication on FLSA cause of action as to Oakland, but not Word.

Hassey's second cause of action in his cross-complaint was for violations of the FLSA; he alleged that the withholding of money owed to him violated the FLSA.[14] As we already have concluded, this contention has merit.[15] (*Ante*, § II.A.) Summary adjudication was therefore inappropriate as to this cause of action, assuming that it was timely. The trial court concluded, however, that Hassey's FLSA cause of action was barred by the two-year limitations period set forth in title 29 United States Code section 255(a),[16] because Hassey's May 10, 2002, cross-complaint was filed more than two years after Oakland's allegedly unauthorized deductions in February and April 1999. In reaching this conclusion, the trial court erroneously (at least with respect to Oakland) used the date of the filing of Hassey's *cross-complaint* to determine whether the statute of limitations had run. However, it is well settled that the statute of limitations " 'is a bar to the defendant's affirmative claim only if the period has already run when *the complaint is filed*. The filing of the complaint suspends the statute during the pendency of the action,

---

[14] The complaint did not distinguish between the withholding of Hassey's final paycheck and the withholding of the cash-out of his retirement. The parties likewise do not offer any legal argument on appeal as to whether there is a distinction between the withholding of retirement money (as opposed to wages), but they are free to do so on remand. We reach no conclusion as to whether the withholding of the retirement cash-out check violated any laws or regulations.

[15] We disagree with the allegations in Hassey's cross-complaint that his original agreement to reimburse Oakland for training costs violated the FLSA, for the reasons set forth above. (*Ante*, § II.A.)

[16] Title 29 United States Code section 255(a) provides that any action for unpaid minimum wages "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." Hassey therefore actually had up to three years to file an FLSA cause of action, depending on factors we discuss below.

19

and the defendant may set up his [or her] claim by appropriate pleading at any time.' "[17] (*Luna Records Corp., Inc., v. Alvarado* (1991) 232 Cal.App.3d 1023, 1026 [283 Cal.Rptr. 865], italics added; see also *Trindade v. Superior Court* (1973) 29 Cal.App.3d 857, 860 [106 Cal.Rptr. 48] ["It has consistently been held that the commencement of an action tolls the statute of limitations as to a defendant's then unbarred cause of action against the plaintiff."].) Hassey's cross-complaint was therefore timely if his FLSA cause of action was not time-barred when Oakland filed its original complaint on October 17, 2001.

The filing of Oakland's complaint against Hassey did not toll the statute of limitations with respect to respondent Word, however.[18] " 'The principle underlying the rule that a statute of limitations is suspended by the filing of the original complaint is that the plaintiff has thereby waived the claim and permitted the defendant to make all proper defenses to the cause of action pleaded. But, where the controversy is limited to cross-defendants, none of whom has done any act in the nature of a waiver the reason for the rule does not exist.' " (*Boyer v. Jensen* (2005) 129 Cal.App.4th 62, 70 [28 Cal.Rptr.3d

---

[17] Hassey raised this issue below in his opposition to respondents' summary judgment motion, as well as at the hearing on the motion. Inexplicably, Hassey does not address in his opening brief the trial court's conclusion regarding the statute of limitations as to *any* cause of action, instead waiting until his reply brief to address the issue. We recognize that we therefore have the discretion to deem the issue waived, as respondents urge. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 [67 Cal.Rptr.2d 350]; *Locke v. Warner Bros., Inc.* (1997) 57 Cal.App.4th 354, 368 [66 Cal.Rptr.2d 921] [points raised in reply brief for first time will not be considered absent good cause].) We decline to do so, in light of our de novo review and the trial court's error as to some causes of action (with respect to respondent Oakland). "[B]ecause the court may decide a case on any proper points or theories, whether urged by counsel or not, there is no reason why it cannot examine the record, do its own research on the law, or accept a belated presentation." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 595, p. 629.)

[18] Perhaps recognizing this, Hassey states in his reply brief that he no longer challenges the dismissal of Word from the cross-complaint.

124]; see also *Trindade v. Superior Court*, *supra*, 29 Cal.App.3d at p. 860.) Because Word was not a party to Oakland's original complaint against Hassey, the statute of limitations was not tolled. The filing of Hassey's cross-complaint against him more than three years after the withholding of his checks was therefore untimely, whether any FLSA violations were willful. (*Ibid.*) Summary judgment as to Word on this cause of action is therefore affirmed.

As to whether the claim was timely as to Oakland, the FLSA provides that an action may be commenced within two years after the cause of action accrued, except that a cause of action arising out of a "willful violation" may be commenced within three years after accrual. (29 U.S.C. § 255(a); see also *McLaughlin v. Richland Shoe Co.* (1988) 486 U.S. 128, 129.) We agree with the trial court that Hassey's causes of action began to run when he received his final checks in February and April 1999.[19] (*Biggs v. Wilson* (9th Cir. 1993) 1 F.3d 1537, 1540 [FLSA cause of action accrues on payday when minimum wages are unpaid].) Oakland filed its original complaint on October 17, 2001. That means that Hassey's FLSA cause of action was untimely if the two-year statute of limitations applied, but timely if the three-year statute of limitations applied. (*Hodgson v. Cactus Craft of Arizona* (9th Cir. 1973) 481 F.2d 464, 467.)

An employer has committed a "willful violation" of the FLSA (triggering the three-year statute of limitations) where it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited under the statute." (*McLaughlin v. Richland Shoe Co.*, *supra*, 486 U.S. at p. 133.) Hassey argued below in his opposition to respondents' motion for summary judgment that Oakland's conduct was willful, and that the three-year statute of limitations applied. The trial court's order granting respondents'

---

[19] We decline to address Hassey's arguments, raised for the first time in his reply brief, that Oakland's attempts to collect on its debt constitute a "continuing violation" of the FLSA that extend the statute of limitations, or that the statute of limitations should be equitably tolled. (*Campos v. Anderson*, *supra*, 57 Cal.App.4th at p. 794, fn. 3.)

motion for summary judgment stated, contrary to Hassey's opposition brief and a statement made by his attorney at the hearing on the summary judgment motions,[20] that Hassey "agreed that the two-year statute of limitations should be applied." The court applied the two-year statute of limitations, apparently based (at least in part) on the fact that respondents had not addressed whether Hassey had established a willful violation of the FLSA.[21] In other words, it apparently did not reach the issue of whether any violation of the FLSA was "willful." We presume that had it done so, it would have concluded that because there was *no* violation of the FLSA, there certainly was no *willful* violation of the statute.

Having reached the conclusion that withholding Hassey's final paycheck did, in fact, violate the FLSA, we must determine whether there is a question of fact that the violation was "willful," triggering the three-year statute of limitations. "[S]ummary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant "has met his or her burden of showing that a cause of action has no merit if that party has shown that . . . there is a

---

[20] Hassey's counsel argued at the hearing that the three-year statute of limitations applied, and that Oakland's complaint was filed within three years of the accrual of the FLSA cause of action. He later stated that he agreed with a statement by respondents' counsel that the two-year statute of limitations applied "*unless [he could] show that there was a willful violation.*" (Italics added.) Counsel did not agree that the two-year statute of limitations, in fact, applied.

[21] The trial court cited respondents' motion for summary judgment, which stated that respondents would not address whether Hassey had established a willful violation of the FLSA, because his cross-complaint was filed on May 15, 2002, more than three years after Oakland's alleged wrongful acts. Perhaps recognizing that the timeliness of Hassey's claim was tied to the date of the filing of *Oakland's complaint*, respondents in fact argued in their reply brief—as well as at the hearing on the motions for summary judgment—that there was no evidence of a willful violation of the FLSA that triggered the three-year limitations period.

complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Only

when that initial burden is met does the burden shift to plaintiff to show that a triable

issue of material fact exists as to that cause of action or a defense thereto. (*Ibid.*; see also

*Knight v. Hayward Unified School Dist.* (2005) 132 Cal.App.4th 121, 128

[33 Cal.Rptr.3d 287].) On appeal, Oakland argues that Hassey's complaint is barred by

the two-year statute of limitations, but does not address the alternative three-year statute

of limitations. Oakland argued below that there was no evidence of a willful FLSA

violation because the MOU training cost reimbursement provision was negotiated, and

any alleged violation thus "arose out of an open and fairly negotiated collective

bargaining process communicated to applicants, employees and departing employees, and

was at most negligent." In light of the fact that it is impermissible to waive by agreement

statutory protections of the FLSA (*Brennan v. Veterans Cleaning Service, Inc.*, *supra*,

482 F.2d at p. 1370; *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, *supra*, 464 F.2d at

pp. 1197, 1199), we are not persuaded that Oakland established that any violation of the

FLSA was not willful, and that there was therefore a complete defense to Hassey's FLSA

cause of action. (Code Civ. Proc., § 437c, subds. (c) & (p)(2).) Oakland submitted no

evidence about what steps, if any, it took to secure legal advice about its reimbursement

policy (cf. *Powell v. Carey Intern., Inc.* (S.D. Fla. 2007) 483 F.Supp.2d 1168, 1175

[summary judgment inappropriate for plaintiff where there was question of fact as to

whether defendant acted with knowledge or reckless disregard in not paying overtime]),

and no declarations about its state of mind when it instituted such a policy (cf. *Gonzalez

v. Rite Aid of New York, Inc.* (S.D.N.Y. 2002) 199 F.Supp.2d 122, 134). Oakland

similarly presented no evidence of whether it had notice of past FLSA violations (if any)

that would have put it on notice about FLSA requirements. (Cf. *Chao v. A-One Medical

Services, Inc.* (9th Cir. 2003) 346 F.3d 908, 919 [affirming summary judgment for

plaintiff where testimony of former employees, combined with evidence of past

violations, sufficient to show "willful" violation].) Because we cannot determine on the

record before us that Oakland was entitled to judgment as a matter of law (Code Civ. Proc., § 437c, subd. (c)), we reverse summary judgment on Hassey's second cause of action as to Oakland.

We conclude, however, that the trial court did not err in denying Hassey's motion for summary judgment on the cross-complaint. A "cross-complainant has met his . . . burden of showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on that cause of action." (Code Civ. Proc., § 437c, subd. (p)(1).) Hassey offered no evidence below that Oakland's violation of the FLSA was willful and that the statute of limitations therefore had not expired when he filed his cross-complaint; he simply provided argument in his opposition to respondents' motion for summary judgment. Some of this argument was directed at whether the underlying reimbursement agreement was lawful, an argument we have previously rejected. Given the factual questions that remain regarding the timeliness of Hassey's cross-complaint, we cannot conclude on this record that Hassey is entitled to judgment in his favor.

> 3.   Three-year statute of limitations did not apply to Hassey's statutory causes of action against Oakland.

Hassey's cross-complaint alleged that the reimbursement clause in the conditional offer, as well as the withholding of money he would have otherwise been paid, violated Labor Code sections 221 and 223 (Hassey's third and fourth causes of action). It also alleged that the conditional offer violated Labor Code sections 432.5 and 450 (Hassey's fifth and sixth causes of action). The trial court ruled that the three-year statute of limitations governing actions "upon a liability created by statute" (Code Civ. Proc., § 338, subd. (a)) barred these four causes of action. This was true with respect to respondent Word, and we therefore affirm summary adjudication as to all four causes of action against him. (*Boyer v. Jensen, supra,* 129 Cal.App.4th at p. 70; *Trindade v. Superior Court, supra,* 29 Cal.App.3d at p. 860.) As we explained above, however, a

three-year statute of limitations does not bar Hassey's claims against Oakland, because they were not time-barred as of the time Oakland filed its original complaint. (*Trindade v. Superior Court*, *supra*, 29 Cal.App.3d at p. 860.)

We next address whether we may affirm summary adjudciation as to these causes of action against Oakland for other reasons.

> 4.   Trial court erred in granting summary adjudication as to Hassey's third and fourth causes of action (Lab. Code, §§ 221 & 223) against Oakland.

As set forth above, Labor Code sections 221 and 223 prohibit an employer from receiving from an employee any part of wages previously paid, and from secretly paying a lower wage while purporting to pay the wage designated by statute or contract. As we concluded above, these sections do not prohibit Oakland from requiring that Hassey repay his training costs if he leaves the police department before the end five years. (*Ante*, § II.A.)

The withholding of Hassey's final paycheck is another matter. Labor Code section 221 "and related provisions in sections 222 through 223 were enacted in 1937 in response to secret deductions or 'kickbacks' that made it appear as if an employer was paying wages in accordance with an applicable contract or statute, whereas, in fact, the employer was paying less. . . . [T]he Legislature has recognized the employee's dependence on wages for the necessities of life and has, consequently, disapproved of unanticipated or unpredictable deductions because they impose a special hardship on employees." (*Hudgins v. Neiman Marcus Group, Inc.*, *supra*, 34 Cal.App.4th at pp. 1118-1119 [department store not permitted to deduct commissions previously paid for unidentified returns].) We therefore agree with Hassey insofar as he argues that summary

adjudication was inappropriate, since there was a triable issue as to whether the seizure of his final paycheck violated Labor Code sections 221 and 223.[22]

We disagree with the trial court's conclusion that *Kerr's Catering, supra,* 57 Cal.2d 319, is entirely distinguishable. *Kerr's Catering* held that an employer was precluded from reducing its employees' salaries in the amount of any cash shortages not attributable to employees' dishonesty or culpable negligence. (*Id.* at pp. 325-326.) Such withholding effectively amounted to "secret deductions or 'kick-backs' " prohibited by Labor Code sections 221-223. (*Kerr's Catering, supra,* at pp. 328-329.) Although the deductions at issue in *Kerr's Catering* were different from the ones made here, we agree with Hassey that the underlying policy of protecting an employee's wages is implicated here. (*Id.* at p. 326.)

Oakland points to the fact that Hassey agreed in writing to the repayment term set forth in the conditional offer, reimbursement agreement, and repayment agreement. They do not, however, point to anywhere in the record where Hassey agreed to the withholding of wages owed to him; indeed, the agreements he signed do not provide for such withholdings.

The question remains whether, as respondents argue, Oakland was authorized by the MOU to deduct amounts owed from Hassey's final paycheck. The MOU provided that repayment of training costs owed from departing employees "shall be due and payable at the time of separation and the City shall deduct any amounts owed under this provision from the employee's final paycheck." Citing Labor Code section 1126, which provides that "[a]ny collective bargaining agreement between an employer and a labor organization shall be enforceable at law or in equity," respondents argue that the

---

[22] Again, the parties do not address whether there is a distinction between the withholding of retirement money (as opposed to wages), but they are free to do so on remand. (*Ante,* fn. 14.) Our holding, however, is limited to the seizure of the paycheck.

paycheck deduction provision was bargained for and enforceable against Hassey. However, an employer may "withhold or divert any portion of an employee's wages" for the benefit of the employee only when such deduction is expressly requested and authorized by the employee in writing, provided that the deduction does not amount to a rebate or deduction from the standard wage arrived at by collective bargaining or pursuant to wage agreement or statute. (Lab. Code, § 224.) Deductions permitted by law to be made from wages pursuant to an employee's written request include insurance premiums, hospital and medical dues and other items that are for the benefit of the employee, not the employer.[23] (3 Ops.Cal.Atty.Gen. 178, 179 (1944).)

The trial court found two cases invalidating agreements that purportedly waived nonwaivable rights distinguishable. (*Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 94 [32 Cal.Rptr. 33, 383 P.2d 441] [hospital's release from liability for future negligence invalid as against the public interest]; *Benane v. Internat. Harvester Co.* (1956) 142 Cal.App.2d Supp. 874, 875-876, 878-879 [299 P.2d 750] [union's agreement that employees receive time off without pay invalid as conflicting with public policy set forth in Election Code's requirement that no pay be deducted for time spent voting].) We disagree that the cases are distinguishable, in light of the fact that " 'the prompt payment of wages due an employee is a fundamental public policy of this state.' [Citation.]" (*Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 571

---

[23] Hassey's counsel pointed to the "for the benefit of the employee, not the employer" language at oral argument and suggested for the first time in this appeal that state law differed from federal law with respect to determining whether the reimbursement agreement (as opposed to the withholding of money owed to Hassey) was lawful, because federal law looks to whether a facility is "*primarily* for the benefit" of an employer when determining whether an item may be included in the computation of wages. (Cf. 29 C.F.R. § 531.3(d)(1) (2007), italics added; see *ante*, § II.A.2.) We note that the cited language refers to authorized deductions from paychecks and does not address the definition of "wages," which is defined elsewhere in the Labor Code. (Lab. Code, § 200, subd. (a).)

27

[74 Cal.Rptr.2d 29].)  Indeed, it is questionable whether employees may enter into agreements authorizing unlawful deductions.  (*Hudgins v. Neiman Marcus Group, Inc., supra*, 34 Cal.App.4th at p. 1124, fn. 14 [because unidentified returns deduction was unlawful, court did not address the issue of whether employees actually entered into an enforceable agreement regarding the deductions].)

We conclude that Oakland failed to demonstrate that it was entitled to judgment as a matter of law on this issue.  We therefore reverse summary adjudication as to Hassey's third and fourth causes of action against Oakland and remand to the trial court.  We affirm, however, the trial court's denial of Hassey's summary judgment motion on these causes of action, because Hassey did not meet his burden to show that he was entitled to summary judgment.  (Code Civ. Proc., § 437c, subd. (p)(1).)  Again, there is a question of fact regarding whether Oakland was authorized by the MOU to deduct amounts owed from Hassey's final paycheck.

> 5. Summary adjudication proper as to Hassey's fifth cause of action (Lab. Code, § 432.5) against respondents.

The fifth cause of action in Hassey's cross-complaint alleged that the conditional offer (as opposed to the withholding of money owed to him) violated Labor Code section 432.5.  As set forth above, the statute prohibits employers from requiring employees to agree to any terms or conditions that are prohibited by law.  Again, because there was nothing unlawful about requiring Hassey to repay his training costs, there was no violation of this statute.  Summary adjudication was therefore appropriate as to Hassey's fifth cause of action against Oakland and Word.

> 6. Summary adjudication proper as to Hassey's sixth cause of action (Lab. Code, § 450) against respondents.

The sixth cause of action in Hassey's cross-complaint alleged that the conditional offer (as opposed to the withholding of money owed to him) violated Labor Code section 450.  Subdivision (a) of the statute provides that "[n]o employer . . . may compel

28

or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of any thing of value." We agree with the trial court's conclusion that *California State Restaurant Assn. v. Whitlow* (1976) 58 Cal.App.3d 340 [129 Cal.Rptr. 824], the only case upon which Hassey relies to support his argument regarding this cause of action, is distinguishable. *Whitlow* held that an employer is prohibited from requiring an employee who makes minimum wage to take meals as part of his compensation and to have the value of the meals deducted from the minimum wage *without the written consent of the employee.* (*Id.* at p. 343.)

Here, by contrast, Hassey agreed *in writing* to reimburse Oakland for his training costs if he left the police department in fewer than five years, and the MOU authorized such an agreement. "[T]he California Legislature did not intend by section 450 of the Labor Code to override the provisions of an otherwise lawful collective bargaining agreement . . . . A contrary interpretation would mean that employees are 'coerced' or 'compelled,' within the meaning of section 450, by the terms of a collective bargaining agreement between their employer and their duly authorized bargaining representative, in the absence of any claim that the representative has breached its duty of representing them fairly." (*Porter v. Quillin* (1981) 123 Cal.App.3d 869, 876 [177 Cal.Rptr. 45].) Summary adjudication as to Hassey's sixth cause of action is affirmed.

> 7.    Summary adjudication proper as to seventh and eighth causes of action against respondents.

The seventh cause of action in Hassey's cross-complaint alleged that the reimbursement clause contained in the conditional offer was an "unlawful contract," in violation of Civil Code sections 1667 and 1668. The eighth cause of action alleged that the conditional offer was an impermissible restraint on Hassey's ability to change jobs, in violation of Business and Professions Code section 16600. Again, as set forth above (§ II.A.2.), nothing "restrained [Hassey] from engaging in [his] lawful trade, business or

profession." (*Kolani v. Gluska, supra*, 64 Cal.App.4th at p. 407.)[24]  Because the seventh
and eighth causes of action were directed solely to the conditional offer, we need not
decide whether any agreement to deduct training costs from Hassey's checks violated any
statutes.

        8.    Summary adjudication proper as to ninth cause of action against
             respondents.

     The ninth cause of action in Hassey's cross-complaint alleged that the conditional
offer violated Business and Professions Code section 17200, because the repayment
provision was an unlawful, unfair or fraudulent business practice. The trial court granted
summary judgment as to Oakland, concluding that the city was not a " 'person' " as set
forth in Business and Professions Code section 17201.[25] The trial court granted summary
judgment as to respondent Word, concluding that he had been sued "solely in his official
capacity as the Chief of Police." On appeal, Hassey does not address these conclusions
in his opening brief, and he states in his reply brief that he "does not desire to contest on
appeal the applicability" of section 17200. Summary adjudication as to this cause of
action is affirmed.

     Finally, Hassey argues generally that public employment is held by statute and not
by contract, that the reimbursement agreement was never adopted by the city civil service
commission, and that Oakland cannot deal directly with represented employees. He
directs these arguments to no particular causes of action. Having stated only a vague
general legal principle without directing this court to the portion of the record which

---

[24] The trial court also found that the seventh cause of action was barred by a three-
year statute of limitations. We need not address whether the trial court erred on this
point, as the trial court relied on another, valid ground to grant summary adjudication.

[25] Business and Professions Code section 17201 provides, "As used in this
chapter, the term person shall mean and include natural persons, corporations, firms,
partnerships, joint stock companies, associations and other organizations of persons."

supports his contention, we treat this issue as waived. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [75 Cal.Rptr.2d 27].)

Respondents raised legal arguments below in support of their summary judgment motion that the trial court did not reach. They raise one of them in passing on appeal (with respect to Oakland) as an alternate ground to affirm. Citing Government Code section 818.2, which provides that "[a] public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law," respondents argue that "to the extent that the cross-claims arise out of alleged injuries resulting from the City's adoption (via resolution) and enforcement of the MOU between it and the [Oakland Police Officers' Association], it cannot be held liable." The cited statutory provision provides immunity only for " 'legislative or quasi-legislative action, and the discretion of law enforcement officers in carrying out their duties.' " (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 916-917 [136 Cal.Rptr.251, 559 P.2d 606], italics omitted.) Because we have focused on Oakland's potential liability with respect to withholding Hassey's final paycheck, and not on any legislative or quasi-legislative action by the city, Government Code section 818.2 does not provide Oakland with immunity.

Respondents also argue in passing that Hassey cannot represent individuals who were hired by Oakland as lateral-entry police officers, as he alleged in his cross-complaint. Although this may be true (and the argument may certainly be raised again on remand), this is not a valid alternate basis to affirm summary judgment, because it would not limit any relief Hassey would otherwise be entitled to in his position as a former police officer trainee. Our opinion does not preclude the filing of a future motion for summary judgment premised on additional facts or on legal arguments other than those rejected in this opinion.

III.
## DISPOSITION

The judgment is affirmed in part and reversed in part. Summary judgment in favor of Oakland on its complaint against Hassey is affirmed. The denial of Hassey's summary judgment motion on Oakland's complaint is affirmed. Summary judgment in favor of respondent Word on all of the causes of action in Hassey's cross-complaint is affirmed. Summary adjudication in favor of Oakland as to the first, fifth, sixth, seventh, eighth, and ninth causes of action in Hassey's cross-complaint is affirmed. Summary adjudication as to the second, third, and fourth causes of action in Hassey's cross-complaint against Oakland is reversed. The denial of Hassey's summary judgment motion on his cross-complaint is affirmed. The case is remanded to the trial court for proceedings consistent with the views expressed in this opinion. Each side shall bear its own costs incurred on appeal.

_____

Sepulveda, J.

We concur:

_____

Ruvolo, P. J.

_____

Rivera, J.

32

Trial Court:                        Alameda County Superior Court

Trial Judge:                        Honorable Winifred Y. Smith

Counsel for Appellant:              Law Offices of Jon Webster; Jon Webster,
                                    Alexandra Seldin and Michael Devin

Counsel for Respondents:            John A. Russo, City Attorney, Randolph W.
                                    Hall, Chief Assistant City Attorney, Kandis
                                    A. Westmore, Deputy City Attorney

33