1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7
8                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   COURTNEY GORDON,                          No. C 08-01543 WHA
11              Plaintiff,
12      v.                                     **ORDER GRANTING IN PART**
                                               **AND DENYING IN PART**
13   CITY OF OAKLAND,                          **PLAINTIFF'S MOTION FOR**
                                               **LEAVE TO FILE AMENDED**
14              Defendant.                     **COMPLAINT**
15   _____/
16
                              **INTRODUCTION**
17
        In this putative class action, plaintiff moves for leave to amend her complaint.  For the
18
reasons stated below, plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.
19
                               **STATEMENT**
20
        In the fall of 2005, plaintiff Courtney Gordon applied to the City of Oakland to become
21
a police officer trainee.  Gordon soon received a letter from Lieutenant Michael Johnson of the
22
Oakland Police Department informing her that her application had been accepted subject to the
23
stated conditions of the letter (FAC at Exh. B):
24
            You must pass the required psychological test(s), medical
25          examination(s), the remainder of the background investigation, and
            accept the training reimbursement provisions as specified below.
26
            Reimbursement provisions.  You may be required to reimburse the
27          City of Oakland for training expenses.  Reimbursement would be
            required in the event you voluntarily terminate your employment
28          with the Oakland Police Department, according to the following
            schedule:

            Before the end of year 1 - 100% repayment of $8,000.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Before the end of year 2 - 80% repayment of $8,000.

2    Before the end of year 3 - 60% repayment of $8,000.

3    Before the end of year 4 - 40% repayment of $8,000.

4    Before the end of year 5 - 20% repayment of $8,000.

5    The letter included a signature block form that stated, "[p]lease advise whether you accept this

6    condition offer" (*ibid.*).  Gordon checked the "yes" box and signed the conditional offer of

7    employment on November 5, 2005.

8    Gordon was hired, successfully completed her police training, and was sworn in as a

9    police officer in June of 2006.  Before beginning her second year as a police officer, Gordon

10   resigned in January 2008.  Upon her resignation, Gordon was informed that she would be

11   required to reimburse the city $6,400 — *i.e.*, 80% of $8,000 — for part of her training expenses.

12   Gordon alleges the city then withheld $1,950.34 from her last paycheck as partial payment for

13   the $6,400.  While she was employed as a police officer, Gordon maintains she was paid at an

14   hourly rate of between $33.25 and $34.92.  During her time in training, her hourly rate was 10%

15   less than the base salary for a full-time police officer.

16   Gordon filed this putative class action on March 20, 2008, alleging violations of the Fair

17   Labor Standards Act, deprivation of civil rights under 42 U.S.C. Section 1983, and violations of

18   various state-law claims.  In particular, Gordon alleged that in her last week of work she was

19   deprived of the federal-minimum wage in violation of FLSA.  Gordon purports to represent all

20   other former police officers who have similarly been required to pay for their training expenses

21   after resigning before five years.  Defendant then moved to dismiss all claims.  The motion was

22   granted in its entirety.  The order granting defendant's motion found that plaintiff had failed to

23   show that in any single pay period she was paid below the federal-minimum wage.  Plaintiff,

24   however, was given the opportunity to move for leave to amend.  This motion now follows.

25

26

27

28

2

United States District Court

For the Northern District of California

1    Plaintiff's proposed first amended complaint has dropped all Section 1983 and state-law claims,

2    leaving only her FLSA claim.[*]

### ANALYSIS

4        Leave to amend a complaint "shall be freely given when justice so requires" under

5    Rule 15(a). This standard is applied liberally. "In the absence of any apparent or declared

6    reason — such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated

7    failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

8    party by virtue of allowance of the amendment, etc. — the leave sought should, as the rules

9    require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

10       The proposed complaint alleges two violations of FLSA. *First*, Gordon alleges that the

11   City's withholding of Gordon's check included withholding pay for compensatory time

12   resulting in a violation of 29 U.S.C. 207(o)(4)(B), which states:

13           An employee who has accrued compensatory time off . . . shall,
             upon termination of employment, be paid for the unused
14           compensatory time at a rate of compensation not less than the
             final regular rate received by such employee.

15   At the hearing, defense counsel conceded that this claim should survive. *Second*, Gordon

16   alleges that the City's training reimbursement agreement violated FLSA's minimum wage

17   requirement for Gordon's final work week.

18       The order granting defendant's motion to dismiss stated (Dkt.16):

19
20           Gordon has not shown any single pay period where she was
             paid below the federal-minimum wage. Her conclusory
21           statements of law are not enough. Significantly, Gordon does
             allege that $1,950 was deducted from her last pay check in
22           January 2008, but she does not show how she received
             anything below the minimum wage for this period. The
23           January 2008 pay check, which was attached to the complaint,
             shows that Gordon was paid a total of $1,269.78 for 120 total
24           hours worked, meaning she was paid an hourly rate of
             approximately $10.58. This is well above the minimum wage
             established by FLSA. Gordon has simply pled no facts
25

26       [*] In her proposed pleading, plaintiff erroneously cites 29 U.S.C. 207(c) and 29 U.S.C. 207(c)(4)(B) in
     support of her FLSA claim. But 29 U.S.C.207(c) was repealed in 1974. In her reply, plaintiff states that she
27   intended to cite to 29 U.S.C. 207(o) and 29 U.S.C. 207(o)(4)(B). In considering a motion for leave to amend at
     this early stage in the litigation, all ambiguities or doubts should be resolved in the plaintiff's favor. *See Jenkins*
28   *v. McKeithen*, 395 U.S. 411, 421 (1969). As such, this order will construe plaintiff's erroneous cites
     appropriately.

United States District Court
For the Northern District of California

supporting any cognizable claim under FLSA.  Her FLSA claim must thus be dismissed.

Gordon's proposed amended complaint still does not allege that she was paid below the federal minimum wage for any given work week.  As stated by Gordon (Reply Br. 3):

> In the [proposed pleading], plaintiff has averred that in her final work week, she received a gross wage for her hours worked in the amount of $756.05.  Of this amount, $465.85 was that [sic] required to be paid under the FLSA.  However, to meet the requirements of the City's reimbursement agreement, plaintiff was required to pay the City $5,268.03. This was in addition to the sum taken by the City in the form of the plaintiff's compensatory time off check in the amount of $654.77.

The only fact that has changed since the last order issued dismissing Gordon's claims was that on May 29 – two weeks after the previous order granting defendant's motion to dismiss was issued — Gordon paid $5,268.03 back to the City for "reimbursement" and "collection" fees for the training program.  Gordon now maintains that after subtracting the cost she paid back to the City for the training program, she was actually paid a negative sum for her last week of work.  This argument is unavailing.

As was already noted in the order granting the City's motion to dismiss, the United States Department of Labor has adopted several regulations in regards to FLSA.  One such regulation is 29 C.F.R. 531.35, which provides in pertinent part:

> Whether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'  The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.  This is true whether the 'kick-back' is made in cash or in other than cash.

Because Gordon has not alleged that she was paid below the federal-minimum wage for any given week, the only way Gordon has stated a cognizable claim is if the City's reimbursement program for training expenses is found to be a "kick-back" payment as contemplated by FLSA. The Ninth Circuit has yet to specifically address this issue.  The Seventh Circuit, however, has expressly found that such reimbursement programs are valid and do not violate FLSA to the extent that they do not reduce an employee's income below the federal-minimum wage.  *See*

1    *Heder v. City of Two Rivers, Wisconsin*, 295 F.3d 777, 782–83 (7th Cir. 2002). *Heder* was

2    decided in the context of a somewhat similar reimbursement scheme for City firefighters. As

3    Judge Easterbrook stated there:

> Residents of [the City] received the benefit of a fire department
> more likely to save lives. Cities fearing that employees would
> take their new skills elsewhere would be less likely to provide
> these benefits. Or they might use other ways to acquire a
> workforce with better skills. They could, for example, require
> the employees to undergo and underwrite their own training,
> with none of the time compensated. This is what law firms do
> when they limit hiring to persons who already have law
> degrees, what school systems do when hiring only teachers
> who hold state certificates. The employer must pay indirectly,
> through a higher salary, but no court would dream of calling
> this system (under which employees finance their own
> training) 'involuntary servitude.' If an employer may require
> employees to pay up front, why can't the employer bear the
> expense but require reimbursement if an early departure
> deprives the employer of the benefit of its bargain? A middle
> ground also would be feasible (and lawful): The employer
> could require the worker to pay for his own training but lend
> the worker the money and forgive repayment if he sticks
> around. A worker who left before the loan had been forgiven
> would have to come up with the funds from his own sources,
> just as [the plaintiff] must do. If that system is lawful, as it is,
> then the economically equivalent system that [the City]
> adopted must be lawful. The cost of training equates to the
> loan, repayment of which is forgiven after three years.

17    *Id*. at 781–82. This order agrees. It is true that by accepting employment with the City, Gordon

18    took on an extra cost that she normally would not have. Most jobs, however, come with some

19    costs. Some workers must purchase business- casual clothing for work. Even more workers

20    pay to commute to work, either by car or by transit. Such expenses reduce an employee's

21    wages, but are not considered unlawful deductions and need not be reimbursed by employers.

22    In the same fashion, there is nothing inherently unlawful when an employer requires its

23    employees to pay the cost of training because the training itself is a condition to employment.

24    Any reimbursement for such training is *not* a kickback. In the end, it is still the employee's

25    ultimate decision as to whether or not they will accept employment. This result would be

26    different had the City made deductions to Gordon's pay check such that her weekly pay was

27    reduced below the federal-minimum wage. But this is not the case here.

28

**United States District Court**

For the Northern District of California

**CONCLUSION**

For the reasons stated above, Gordon's motion for leave to file an amended complaint is **GRANTED IN PART AND DENIED IN PART**. Plaintiff will be permitted to file her complaint in so far as it only alleges violations of 29 U.S.C. 207(o).

**IT IS SO ORDERED.**

Dated:  July 24, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE